TIMOTHY C. FOX
Montana Attorney General
ROB CAMERON
Deputy Attorney General
JEREMIAH LANGSTON
Assistant Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
rob.cameron@mt.gov
jeremiah.langston@mt.gov

COUNSEL FOR PROPOSED DEFENDANT-INTERVENOR
STATE OF MONTANA

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| NORTHERN PLAINS RESOURCE COUNCIL, BOLD ALLIANCE, NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, CENTER FOR BIOLOGICAL DIVERSITY, and FRIENDS OF THE EARTH,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS and LIEUTENANT GENERAL TODD T. SEMONITE (in his official capacity as U.S. Army Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers,<br><br>Defendants,<br><br>TC ENERGY CORPORATION and TRANSCANADA KEYSTONE PIPELINE LP,<br><br>Defendant-Intervenors. | Case No. CV 19-44-GF-BMM<br><br>**BRIEF IN SUPPORT OF STATE OF MONTANA'S UNOPPOSED MOTION TO INTERVENE** |

The State of Montana, by and through the Office of the Attorney General, has moved to intervene as a defendant-intervenor in this case as of right pursuant to Federal Rule of Civil Procedure 24(a) or alternatively, permissively pursuant to Rule 24(b). For the following reasons, Montana's motion should be granted.

## RELEVANT BACKGROUND

This case involves TC Energy's proposal to construct, maintain, and operate the Keystone XL Pipeline, a 1,980-mile oil pipeline project beginning in Hardisty, Alberta, and ending along the Texas Gulf Coast. As proposed, approximately 285 miles of the pipeline would pass through Montana, entering at the United States-Canada border crossing near the Port of Morgan, Montana and extending southeast, crossing into South Dakota about 35 miles southeast of Baker. The associated facilities in Montana would include six pump stations, three transmission lines, valves, and associated power supplies, temporary pipe storage areas, off right-of-way access roads, contractor yards, and temporary work areas.[1]

The Plaintiffs request the Court for an order vacating all Corps of Engineers (Corps) approvals of Keystone XL. Plaintiffs also request temporary and permanent injunctions prohibiting the Corps from using Nationwide Permit 12 to authorize pipeline construction, and generally enjoin any activities in furtherance of pipeline construction. (Doc. 36 at 88.)

---

[1] *See* https://deq.mt.gov/DEQAdmin/mfs/keystonexl/keystonexlcomprehensive

Montana's interest is significant in light of the relief Plaintiffs seek.

According to the Montana Department of Environmental Quality (MDEQ),

> Once constructed, the Project will generate long-term property tax revenues for the [Montana] counties traversed by the pipeline that will last for the life of the Project. The Project will generate approximately $63 million in annual property tax revenues in Montana, or about 151 percent of the property taxes collected in 2006 in the six counties crossed. The magnitude of the impact will vary from county to county. In some counties, property tax revenue collected will more than double as a result of the line.

MDEQ Findings Necessary for Certification and Determination, pp. 18–19 (Mar. 30, 2012)[2].

Moreover, in 2015 the Montana Legislature passed House Joint Resolution 11, urging prompt Congressional and Presidential approval for the Keystone XL Pipeline. The Legislature recognized the following:

> ▶ The State of Montana, counties, and school districts will benefit substantially by an increase in the property tax base when the Keystone XL Pipeline is approved and completed;
> ▶ The Certificate of Compliance granted by the Department of Environmental Quality states that the Project will generate long-term property tax revenues for the counties traversed by the pipeline that will last for the life of the Project. The Project will generate approximately $63 million in annual property tax revenues in Montana;
> ▶ The on-ramp at Baker, Montana, will allow 100,000 barrels of Bakken oil to be transported daily to Gulf Coast refineries; and

---

[2] *Available at* <http://deq.mt.gov/Portals/112/DEQAdmin/MFS/Documents/KXL_Cert_Final_Signed.PDF>.

> ▶ Significant infrastructure improvements, including powerlines and road and bridge improvements, will be built and paid for by TransCanada.

Montana HJR 11 (2015). All the foregoing are at risk in this litigation.

## ARGUMENT

### I. The State of Montana Is Entitled to Intervention as of Right.

A litigant seeking to intervene as of right under Fed. R. Civ. P. 24(a) bears the burden of establishing that the following criteria are satisfied: (1) the motion is timely; (2) the applicant has a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties in the lawsuit. *Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)); *DBSI/TRI IV Ltd. Partnership v. United States*, 465 F.3d 1031, 1037 (9th Cir. 2006).

In evaluating these factors, "[c]ourts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). While "the party seeking to intervene bears the

burden of showing those four elements are met, 'the requirements for intervention are broadly interpreted in favor of intervention.'" *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)).

### A.     Timeliness

Montana's motion is timely. The timeliness of a motion to intervene depends on three criteria: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for the length of the delay." *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (internal quotation marks and citations omitted). First, these proceedings are at a preliminary stage. The existing defendants and defendant intervenors have yet to file answers and may do so up until October 1 and 8, 2019, respectively (Doc. 35 at 2.) The administrative record on which this case will be decided has not been filed. The Court has made no substantive ruling and a briefing schedule has not been set. Consequently, Montana's intervention would not prejudice any of the parties. Montana has not unreasonably delayed intervening in this case. Timeliness is thus conclusively established.

### B.     Significant Protectable Interest

"Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a practical, threshold inquiry, and [n]o specific legal or

equitable interest need be established." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (internal quotation marks and citations omitted). "To demonstrate a significant protectable interest, an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Id.*

In the present case, the pipeline would enter Montana at the United States-Canada border crossing near the Port of Morgan, Montana and extend southeast, crossing into South Dakota about 35 miles southeast of Baker, for approximately 285 miles. The associated facilities include but are not limited to, six pump stations, three transmission lines, valves, and associated power supplies, temporary pipe storage areas, off right-of-way access roads, contractor yards, and temporary work areas. As demonstrated above, the Project will generate approximately $63 million in annual property tax revenues in Montana, and in some counties, property tax revenue collected will more than double as a result of the pipeline.

Moreover, the relief Plaintiffs seeks undermines Montana's role in siting oil pipelines – a role traditionally played by States. *See* Alexandra B. Klass & Danielle Meinhardt, *Transporting Oil and Gas: U.S. Infrastructure Challenges*, 100 Iowa L. Rev. 947, 982-83, App. A (2015) (providing a 50-state survey of state oil pipeline siting laws). Plaintiffs' arguments, if accepted, would have the effect of intruding

upon the State's traditional province of oil pipeline siting in the domestic context. *See* Mont. Code Ann. §§ 75-20-101 to -411 (outlining the relevant portions of Montana's Major Facility Siting Act).

Indeed, the MDEQ has previously approved the Keystone XL project under Montana Environmental Procedure Act review; and Plaintiffs seek to subject this project to duplicative review under federal law. *See In re TransCanada Keystone Pipeline*, LP, MDEQ Findings, pp. 18–19. Accordingly, Montana has a protectable interest in preserving its traditional role in regulating oil pipeline siting. *See, e.g., Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (finding Texas had an interest in defending federal administrative decision-making affecting the state's statutory authority to regulate pumping of an aquifer); *Cal. v. BLM*, 2018 U.S. Dist. LEXIS 74632 (N.D. Cal. May 2, 2018) (finding Wyoming had an interest in defending federal administrative decision-making affecting the state's "regulatory program governing hydraulic fracturing").

Plaintiffs do not seek to invalidate the State Department's determination but instead seek to invalidate Nationwide Permit 12 ("NWP 12") and its application to the Keystone XL Pipeline. NWP 12 approves discharges of dredged or fill material into waters of the United States of utility line activities in certain circumstances. 33 U.S.C. § 1344(e). Plaintiffs' challenge to Keystone XL in this instance concerns an inherently domestic sphere of regulation. *See* ECF No. 36 at ¶ 11 (stating this

litigation concerns the Corps' determination to allow Keystone XL's crossing of waterways *within* Montana, South Dakota, and Nebraska).

Additionally, Montana has a protectable interest in ensuring that NWP 12 continues to provide streamlined regulatory approval of linear infrastructure. Plaintiffs are not just seeking to invalidate NWP 12's application to Keystone XL, but also NWP 12 in its entirety. NWP 12 is designed to make building linear infrastructure easier and more streamlined. 82 Fed. Reg. 1860,1,884 (2017). Plaintiffs' contentions with NWP 12 are not exclusive to oil pipelines, but instead apply to all type of utility line activities. Plaintiffs request this Court to declare all of NWP 12 in violation of federal law and remand the entire reissuance of NWP 12 back to the Corps. *See* ECF No. 36 at pp. 87-88. Plaintiffs' concerns about the alleged lack of public comment and NEPA compliance within NWP 12 are not unique to Keystone XL, *see id.* at ¶¶ 35-58, but instead apply to a whole array of utility line activities including electricity transmission lines and build out of rural broadband. 82 Fed. Reg. at 1,883.

Plaintiffs' arguments, if accepted, would create a blueprint for any person or entity seeking to obstruct the construction of all linear infrastructure and not just oil pipelines. *See generally* James Coleman, *Pipelines & Power-Lines: Building the Energy Transport Future*, 80 Ohio St. L.J. 263, 296 (2019) ("there is no reason to think that subjecting each proposed [infrastructure] project to multiple veto gates

would improve overall economic and environmental results. Multiple veto gates just mean more opportunities to kill proposed investments--and that is true whether those investments are in oil, gas, or renewable power transport.").[3]

By seeking to invalidate NWP 12, Plaintiffs make it possible that it will be harder to repair and replace aging electric transmission lines putting Montana lands and citizens in danger of increased wildfire risk. *Defenders of Wildlife v. Johanns*, 2005 U.S. Dist. LEXIS 34455, *20, 2005 WL 3260986 (N.D. Cal. 2005) (finding states have a protectable interest in judicial review of federal agency decision-making affecting state own forests and fire danger to the public). Their arguments, if accepted, would make it more difficult for wind energy developers in Montana to transport the electricity produced by their projects to larger markets. 82 Fed. Reg. at 1,884; Coleman, 80 Ohio St. L.J. at 291 ("[O]pponents of wind and solar projects will use the same tactics employed in pipeline debates."). This form of obstructionism even makes it more difficult for Montanans living in the rural parts of the State to receive broadband service. 82 Fed. Reg. at 1985 (clarifying NWP 12 applies to utility lines carrying internet communication). Because Montana is so geographically large with a low population density, it—compared to other states— has an elevated interest in ensuring liner infrastructure projects are built efficiently and economically. *See* Montana State Council of the American Society of Civil

---

[3] *Available at* <https://scholar.smu.edu/law_faculty/40/>.

Engineers, *Montana's Report Card for Infrastructure*, p. 35 (2018) ("Public safety is one of the most important factors in the transportation and delivery of energy. Montana faces a unique challenge in the fact that the state covers an area of more than 147,000 square miles.").[4]

Finally, in 2012, the Montana Board of Land Commissioners granted 39 applications to TransCanada Keystone Pipeline, LP for pipeline easements across Montana State Trust Lands. These limited-term renewable easements have generated income, to date, of $726,752 for Montana public schools and $14,921 for the Montana Public Land Trust.

### C.  Impairment of Interest

A "prospective intervenor has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Wilderness Society v. United States Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011) (internal quotation marks and citation omitted). Here, Plaintiffs seek to void all Corps verifications and approvals of the Pipeline, and to enjoin any activities in furtherance of Pipeline construction, which necessarily includes the 285-mile portion on Montana lands. As demonstrated above, Montana's legal interests include both numerous benefits to the State, and

---

[4] *Available at* <https://www.infrastructurereportcard.org/wp-content/uploads/2018/12/FullReport-MT2018.pdf>.

Montana's concurrent regulatory authority with respect to pipelines within the State's borders. The Plaintiffs' claims not only threaten to impair these important interests, the claims threaten to extinguish them altogether.

### D. Inadequacy of Representation

A prospective intervenor "bears the burden of demonstrating that the existing parties may not adequately represent its interest." *Berg*, 268 F.3d at 822. The burden is minimal and is satisfied if the applicant can demonstrate that representation of its interests "may be" inadequate. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Courts are to consider:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Berg*, 268 F.3d at 823 (quoting *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996).

In the present case, the Corps has "no duty" to represent the interests of a single group or state. The Ninth Circuit has recognized that federal agencies are "required to represent a broader view than the more narrow, parochial interests of [a] State." *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995). Here, although it appears as though Montana and the

Corps share the objective of facilitating the construction and operation of the Keystone XL Project, they do not necessarily share the same reasons for ensuring this project commences.

The Corps will likely focus on defense of its authority and use of NWP 12 as an effective and efficient means of discharging its duties under federal law. Montana's interests are in defending its concurrent regulatory authority and protecting the additional benefits (discussed above) Montana will receive as the project goes forward. Simply put, it is not the Corps' responsibility to protect Montana's particular interests. Consequently, we cannot expect the Corps to adequately represent the interests of the State of Montana.

For the foregoing reasons, the State of Montana requests the Court to grant the State intervention as of right.

## II. In the Alternative, the State of Montana Should Be Granted Permissive Intervention.

If the Court denies Montana's request to intervene as of right, the State requests, in the alternative, to be allowed to intervene permissively under Fed. R. Civ. P. 24(b). The Court may grant permissive intervention pursuant to Rule 24(b)(1) when an applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely, and (3) the applicant's claim or defense, and the main action have a question of law or fact in common. *See* Fed. R. Civ. P.

24(b)(1); *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1109–11 (9th Cir. 2002).

First, Montana need not establish independent grounds for jurisdiction because federal-question jurisdiction under 28 U.S.C. § 1331 is established, and Montana raises no new claims. *See Freedom From Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843–44 (9th Cir. 2011) ("We therefore clarify that the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims.").

Second, as explained above, the State's motion is timely because it is at an early stage of the proceedings. *See Fund for Animals v. Norton*, 322 F.3d 728, 735 (9th Cir. 2003).

Third, the commonality requirement of Fed. R. Civ. P. 24(b)(1)(B) "does not specify any particular interest that will suffice for permissive intervention," and "it plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *Kootenai Tribe of Idaho*, 313 F.3d at 1108 (quoting 7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1911, 357–63 (2d. ed. 1986)).

Here, the State has a significant interest in litigation through promoting economic development. Additionally, Montana has an interest in protecting its

traditional role in oil pipeline siting and ensuring that NWP 12 remains a streamlined regulatory process. Plaintiffs' causes of action are directed to regulatory processes beyond Keystone XL and decrease the likelihood that linear infrastructure will be built efficiently and economically in the future. This demonstrates a legally protectable interest directly relating to the subject of the action and meets the "common question of law and fact" requirement for permissive intervention.

Finally, in exercising its discretion to allow permissive intervention under Fed. R. Civ. P. 24(b)(3), a court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Montana's motion is timely and will not prejudice any party or cause undue delay. Montana does not seek to modify the existing Scheduling Order due to its intervention. *See* ECF No. 35. No existing party objects to Montana's motion. Accordingly, Montana's participation will not unduly delay the case or prejudice the original parties.

## CONCLUSION

For the foregoing reasons, the State of Montana, by and through the Office of the Attorney General, requests the Court for leave to intervene as of right, or in the alternative, permission to intervene, pursuant to Federal Rules of Civil Procedure 24(a) and (b), respectively.

Dated this 7th day of October, 2019.

>TIMOTHY C. FOX
>Montana Attorney General
>215 North Sanders
>P.O. Box 201401
>Helena, MT 59620-1401
>
>By: /s/ Rob Cameron
>ROB CAMERON
>Deputy Attorney General
>
>Counsel for Proposed Defendant-Intervenor

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 2,900 words, excluding certificate of service and certificate of compliance.

_____
ROB CAMERON
Deputy Attorney General

# CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing to be mailed, first class postage paid, to:

Amy R. Atwood
Center for Biological Diversity – Portland
PO Box 11374
Portland, OR 97211-0374
atwood@biologicaldiversity.org

Timothy M. Bechtold
Bechtold Law Firm
PO Box 7051
Missoula, MT 59807-7051
tim@bechtoldlaw.net

Benjamin James Grillot
Kristofor R. Swanson
U.S. Department of Justice
PO Box 7611
Washington, DC 20044-7611
benjamin.grillot@usdoj.gov
kristofor.swanson@usdoj.gov

Douglas P. Hayes
Eric E. Huber
Sierra Club
1650 38th Street
Suite 102W
Boulder, CO 80301
doug.hayes@sierraclub.org
eric.huber@sierraclub.org

Jeffrey M. Roth
Crowley Fleck PLLP-Missoula
305 South 4th Street
Suite 100
PO Box 7099
Missoula, MT 59807
jroth@crowleyfleck.com

Jeffery J. Oven
Mark L. Stermitz
Crowley Fleck PLLP-Billings
490 North 31st Street, Suite 500
PO Box 2529
Billings, MT 59103-2529
joven@crowleyfleck.com
mstermitz@crowleyfleck.com

Jaclyn H. Prange
Cecilia D. Segal
Natural Resources Defense Council
San Francisco
111 Sutter Street, Floor 21
San Francisco, CA 94104
jprange@nrdc.org
csegal@nrdc.org

Jared Michael Margolis
Center for Biological Diversity
2852 Willamette St. #171
Eugene, OR 97405
jmargolis@biologicaldiversity.org

Peter R. Steenland
Peter Christopher Whitfield
Sidley Austin LLP – Washington DC
1501 K Street, N.W.
Washington, DC 20005
psteenland@sidley.com
pwhitfield@sidley.com

Dated: October 7, 2019

/s/ Rob Cameron
ROB CAMERON
Deputy Attorney General