William W. Mercer
Brianne C. McClafferty
HOLLAND & HART LLP
401 North 31st Street, Suite 1500
Billings, MT 59101
(406) 252-2166
wwmercer@hollandhart.com
bcmcclafferty@hollandhart.com

Deidre G. Duncan (*Pro hac vice* motion pending)
Karma B. Brown (*Pro hac vice* motion pending)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 955-1500
dduncan@HuntonAK.com
kbbrown@HuntonAK.com

*Counsel for Defendant-Intervenors American Gas Association, American Petroleum Institute, Association of Oil Pipe Lines, Interstate Natural Gas Association of America, and National Rural Electric Cooperative Association*

FILED
NOV 07 2019
Clerk, U.S. Courts
District Of Montana
Billings Division

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| NORTHERN PLAINS RESOURCE COUNCIL, et al.,<br><br>    Plaintiffs,<br><br> v.<br><br>U.S. ARMY CORPS OF ENGINEERS, et al.,<br><br>    Defendants,<br><br>TRANSCANADA KEYSTONE PIPELINE, LP, et al.,<br><br>    Defendant-Intervenors. | Case No. 4:19-cv-00044-GF-BMM<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO INTERVENE BY AMERICAN GAS ASSOCIATION, AMERICAN PETROLEUM INSTITUTE, ASSOCIATION OF OIL PIPE LINES, INTERSTATE NATURAL GAS ASSOCIATION OF AMERICA, AND NATIONAL RURAL ELECTRIC COOPERATIVE ASSOCIATION** |

## Table of Contents

I. Introduction ................................................................................................ 1

II. The NWP 12 Coalition Has Significant Protectable Interests in
NWP 12. .................................................................................................... 3

III. The Coalition's Interests Are Not Adequately Represented by TC
Energy. ...................................................................................................... 5

IV. Permissive Intervention is Appropriate, and the Conditions
Proposed by Plaintiffs for the NWP 12 Coalition's Participation
Are Not Warranted. ................................................................................ 10

V. Conclusion. ............................................................................................. 13

## I. Introduction

This case will address Plaintiffs' erroneous claims that the U.S. Army Corps of Engineers ("Corps") violated the National Environmental Policy Act ("NEPA"), Clean Water Act ("CWA"), Endangered Species Act ("ESA") and the Administrative Procedure Act ("APA") by reissuing Nationwide Permit 12 ("NWP 12"), a general permit authorizing minor, and typically temporary, discharges associated with "the construction, maintenance, repair, and removal of utility lines and associated facilities." *See* 82 Fed. Reg. 1860, 1985 (Jan. 6, 2017); (Doc. 53 (Stipulation)).

The Parties have stipulated that the only claims at issue involve "the Corps' issuance of NWP 12 as a final permit authorizing ... *utility water crossings nationwide*...." (Doc. 53 at 2 (emphasis added)); (Doc. 56 (Order)).[1] The NWP 12 Coalition represents five diverse national trade associations comprising the key industry sectors whose members rely on NWP 12 authorizations to provide

---

[1] The Court granted the Parties' Stipulation to stay Plaintiffs' claims relating to the Corps' verifications for the Keystone XL Project (Doc. 56), which the Parties proposed "in the interests of judicial economy and to avoid unnecessary or premature litigation," because there are no "live" verifications appropriate for this Court's review. (Doc. 53 at 2). The Court has entered the Parties' proposed briefing schedule (Doc. 56) "to expeditiously resolve the remaining claims," which assert that the Corps violated the NEPA, CWA, and ESA when reissuing NWP 12. (Doc. 53 at 3-4).

1

reliable, safe, and affordable delivery of energy nationwide.² The Coalition seeks to intervene to protect its significant, protectable rights and interests in NWP 12, which are directly threatened by Plaintiffs' suit.

Yet Plaintiffs argue that the NWP 12 Coalition's protectable interest is adequately represented by Defendant-Intervenor TC Energy. Plaintiffs' assertion that TC Energy's interests are identical to the Coalition's and that TC Energy can and will make the same arguments as the Coalition on behalf of its nationwide members is patently false and fundamentally misunderstands both the relationship between an association and a member of that association and the issues at stake.

The specific interests TC Energy seeks to protect are its Project-specific verifications, the claims pertaining to which have been stayed. The NWP 12 Coalition's interests, on the other hand, are far broader in light of their members' nationwide reliance on NWP 12 for covered utility line activities. The Coalition moves to intervene in this action to defend against Plaintiffs' wholesale challenge to NWP 12, the sole focus of this litigation at the present time. TC Energy is not positioned to, nor does it purport to, represent the interests of the full spectrum of NWP 12 permittees and project proponents across the country whose interests are

---

² The NWP 12 Coalition includes the American Gas Association, American Petroleum Institute, Association of Oil Pipe Lines, Interstate Natural Gas Association of America, and National Rural Electric Cooperative Association (collectively, the "NWP 12 Coalition" or "Coalition").

directly impeded by the disposition of this case. The Coalition represents these interests.

Moreover, the NWP 12 Coalition's participation will not delay or burden the litigation. The Court has entered a briefing schedule with deferred briefing deadlines to ensure a coordinated and non-duplicative approach. (Doc. 56).

The NWP 12 Coalition meets the standard for intervention as of right and, in the alternative, permissive intervention. Accordingly, the Coalition respectfully requests the Court grant its Motion to Intervene. (Doc. 48).

## II. The NWP 12 Coalition Has Significant Protectable Interests in NWP 12.

The Federal Defendants do not oppose permissive intervention for the Coalition, but argue that intervention as of right would not be appropriate because Plaintiffs do not seek to vacate NWP 12. (Doc. 51 (Fed. Defs.' Resp. to Mot. to Intervene) at 2). This position downplays the nature of Plaintiffs' claims, and the potential impacts of any relief that could be requested by Plaintiffs or entered by this Court. (*See, e.g.*, Doc. 36 (Pls.' Amended Compl.) ¶ 73 (citing APA standard for unlawful agency action)).

Plaintiffs' Prayer for Relief asks this Court to "[d]eclare the Corps' issuance of NWP 12 in violation of" the APA, CWA, NEPA, or ESA, and to "[r]emand NWP 12 to the Corps for compliance." (Doc. 36 at 87-88). Plaintiffs concede they seek declaratory relief and a remand of NWP 12. (Doc. 52 at 2). But Plaintiffs'

3

concession provides cold comfort because Plaintiffs further request the Court "[p]rovide for such other relief as the Court deems just and appropriate." (Doc. 36 at 88; *id.* ¶ 73 ("A reviewing court shall 'hold unlawful and set aside' any Corps action found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A).")).

The purported limited scope of Plaintiffs' requested relief does not assuage the Coalition's significant interests in this case. Plaintiffs have not stated they would agree NWP 12 could remain in force nationwide if the Court finds it unlawful under the APA, CWA, NEPA, or ESA, and their Complaint requests the Court provide any just and appropriate relief. Thus, contrary to the Federal Defendants' claim, there is no indication that should Plaintiffs prevail on the merits, the requested remedies, if granted, would keep NWP 12 in place until its expiration in March 2022.[3] (Doc. 51 at 3). And the Federal Defendants concede that the Corps might take independent administrative action limiting NWP 12's applicability in response to a court ruling. (Doc. 51 at 3).

Should the Court find NWP 12 to be unlawful, it may consider how to tailor relief in light of the violation, associated facts and circumstances. The Coalition's

---

[3] For example, if the Court held that the Corps was required, but failed to consult on NWP issuance, and if the Court remanded NWP 12 to the Corps, there may be some question about the availability of NWP 12 while the Corps engaged in consultation with the Services.

participation may be of particular import to the Court in that situation, to provide the real-world practical implications and ramifications regarding the scope of an appropriate remedy, including the disruption and costs that might be incurred by the Coalition's members.

For all of these reasons, while Plaintiffs did not specifically request vacatur of NWP 12 in their Complaint, and while the NWP 12 Coalition concurs with the Federal Defendants that vacatur of the permit or any part of it would not be appropriate given the permit's wide geographic scope (Doc. 51 at 3), there are circumstances under which the Coalition's interests may be significantly impaired or restricted even absent a request to vacate NWP 12.

### III. The Coalition's Interests Are Not Adequately Represented by TC Energy.

Plaintiffs assert that the NWP 12 Coalition's associational members are adequately represented by TC Energy because it is a member of some of the associations in the Coalition.[4] (Doc. 52 at 1). The mere fact that TC Energy is a member of some of the associations that comprise the NWP 12 Coalition does not mean that TC Energy "will undoubtedly make all of" the Coalition's arguments, or

---

[4] The burden for showing that existing parties represent the proposed intervenors' interests "should be treated as minimal," and is satisfied if the proposed intervenor shows that representation of its interests by an existing party "may be" inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); (Doc. 49 at 23).

5

"is capable and willing to make such arguments" and to advance the positions the Coalition would take, which are intended to provide the important perspective of the nationwide holders of NWP 12 and would otherwise be absent.[5] The inadequacy of the other parties' representation in this case easily exceeds the "minimal" burden to justify intervention.

First, Plaintiffs claim that "TC Energy[] has identical interests to the Industry Groups and therefore will make the same arguments." (Doc. 52 at 4). Plaintiffs have it backwards.

It should go without saying that TC Energy cannot (even if it so desired) represent the interests of the members of the five associations comprising the NWP 12 Coalition, which include not-for-profit rural electric cooperatives, local energy companies that deliver and distribute natural gas, refiners, marine businesses, service and supply firms, and owners and operators of oil pipelines and interstate natural gas transmission pipeline companies. (Doc. 49 at 4-14).

TC Energy represents itself, and its project-specific interests. TC Energy's interests in NWP 12 in this case (and *Bostick* before it), arise from the Company's

---

[5] Adequacy of representation examines whether: "(1) [] the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) [] the present party is capable and willing to make such arguments; and (3) [] a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

interest in defending the Corps' approval of NWP 12 verifications for the Project. (Doc. 19 (TC Energy Mem. in Support of Mot. to Intervene) at 1) (seeking intervention to "defend its substantial interests in completing the Keystone XL Pipeline"). The Company does not purport to have a broad, national interest in the use of NWP 12, nor does its motion to intervene cite any broader interests at stake in this case. Instead, TC Energy intervened because, "[i]f Plaintiffs prevail, this Court might enjoin construction of Keystone XL, thereby substantially jeopardizing the Project." (Doc. 19 at 9). TC Energy further explained that its interests were discrete from the Federal Defendants because TC Energy has a "more narrow and parochial interest in constructing and operating energy infrastructure." (Doc. 19 at 11). Thus, in every respect, TC Energy's defense will be informed by the Project and the Company's specific verifications, and will not fully represent the rights and interests of nationwide holders of NWP 12.[6]

The NWP 12 Coalition, on the other hand, seeks to defend the full scope of "utility line" activities authorized by NWP 12.[7] Plaintiffs' complaint is replete

---

[6] Of course, there are no NWP 12 verifications available for review. (Doc. 56). Even if such verifications are issued by the Corps, whether or not such verifications are flawed will not bear upon whether NWP 12 comports with the CWA, NEPA, or ESA – the facial claims the Coalition seeks to defend.

[7] NWP 12 defines "utility line" to include pipelines that transport natural gas and various types of liquids, including oil, water, or sewage, and utility lines that transmit electricity. 82 Fed. Reg. at 1985. The permit also authorizes minor

with specific allegations regarding the use of NWP for "utility line" activities, including electric transmission line operations and natural gas pipelines, of the sort undertaken by the NWP Coalition's members.[8] These assertions are far broader than any verifications that may be issued at a future date to authorize minor discharges of dredged or fill material to construct the Project. Plaintiffs' claims, thus, directly and concretely implicate activities undertaken by the Coalition's members pursuant to NWP 12 – which are not represented by TC Energy. Put simply, TC Energy's interests are *not* identical to the NWP 12 Coalition's interests.

Second, there is no evidence that TC Energy can or intends to make all of the NWP 12 Coalition's arguments or defenses. Indeed, contrary to Plaintiffs' claim, TC Energy is *not* capable of making all of the arguments the Coalition might make. (Doc. 52 at 5). This is so because NWPs are nationally applicable rules, and this challenge raises claims with national implications that go far beyond the Project, which is the focus of TC Energy's participation.

---

discharges associated with the construction of utility line substations, foundations for overhead utility lines, and access roads. *Id.*

[8] For example, Plaintiffs assert that use of NWP 12 by "[p]ipelines and power lines" harms "ecosystem functions." (Doc. 36 ¶ 105). *See also id.* ¶ 98 (discussing purported failure of EA to address "construction, maintenance, operation, or repair of utility projects such as crude oil or natural gas pipelines"); ¶ 205 (arguing that NWP 12 violates the CWA because it "permits linear projects to use the NWP numerous times along a pipeline or utility route"); ¶ 221 (asserting that NWP 12 allows activities that harm listed species from, *inter alia*, "power line collisions").

The associations that comprise the NWP 12 Coalition participated, on behalf of their members, in the rulemaking process leading up to the Corps' promulgation of the 2017 NWPs. (Doc. 49 at 9, 11). The claims before the Court are, at base, challenges to the sufficiency of the Corps' NWP rulemaking under the APA. *See Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272 (D.C. Cir. 2005) (NWPs are "rules" under the APA). Entities that participate in an APA rulemaking often participate in subsequent rulemaking challenges to defend their vested interests in the rulemaking process and any final rule.

The NWP 12 Coalition is uniquely positioned to present arguments to inform the Court's consideration of Plaintiffs' facial claims, as it did in *Bostick*, while TC Energy is not.[9] Indeed, the fact that TC Energy will be defending its legally protected property and commercial interests in Keystone XL (Doc. 19 at 8), versus the interests of all the members of all of the associations that comprise the NWP 12 Coalition, illustrates that TC Energy does not and cannot make all of the same arguments the Coalition may make. Defending the Project-specific claims

---

[9] In *Bostick*, for example, the Coalition's arguments were noted with approval by the district and appellate courts. *See, e.g., Sierra Club v. Bostick*, No. CIV-12-742-R, 2013 WL 6858685, at *9 & n.11, 10, 12 n.16, 13-14, 21 (W.D. Okla. Dec. 30, 2013) (upholding NWP 12 and granting the Federal Defendants' and Defendant-Intervenors' motions for summary judgment), *aff'd*, 787 F.3d 1043 (10th Cir. 2015) ("*Bostick*").

indeed may cause TC Energy to make arguments that are not representative of others.

Finally, intervention will allow the Coalition to defend its significant interests in NWP 12. The Coalition's members have historically relied, currently rely, and in the future intend to rely, on NWP 12 authorizations to, among other things, support their obligations to provide reliable energy to their customers at a reasonable cost. The Coalition has a unique perspective in light of its members' nationwide reliance on NWP 12 (a perspective not shared by any other party), and its longstanding involvement in the NWP program and defense of NWP 12. In particular, the Coalition's participation would likely aid the Court in understanding the history, development and purpose of NWP 12, as well as the merits and implications of Plaintiffs' claims and requested relief.

Given the genuine potential for divergence of interests, it is clear that representation by existing parties *may* be inadequate and, as a result, the Coalition is entitled to intervene as of right.

### IV. Permissive Intervention is Appropriate, and the Conditions Proposed by Plaintiffs for the NWP 12 Coalition's Participation Are Not Warranted.

Plaintiffs argue that permissive intervention is not appropriate because the Coalition's participation "will be duplicative and will delay the proceedings, to

Plaintiffs' prejudice." (Doc. 52 at 6).[10]

Plaintiffs' assertions to the contrary (Doc. 52 at 7), time is not of the essence. Plaintiffs make the audacious claim that timely resolution is necessary so "Plaintiffs are not forced to seek a preliminary injunction." (Doc. 52 at 7). But there are no verifications for this Court to review, much less for Plaintiffs to argue should be enjoined. (Doc. 56; Doc. 38-1 (Decl. of Norrie Ramsay) at 3).

Plaintiffs' facial claims to NWP 12 are similarly not time-sensitive. Plaintiffs could have challenged NWP 12 at any time following the Corps' January 6, 2017 promulgation of the 2017 NWPs. *See* 82 Fed. Reg. at 1860. But they waited more than two and a half years to file their complaint. Thus, Plaintiffs' argument that this case is time-sensitive rings hollow.

---

[10] Plaintiffs cite a number of inapposite cases. *Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 380 (1987), does not involve the merits of intervention, but rather the appealability of an order partially granting intervention. All but one of the remaining cases denied permissive intervention on a ground not argued here: that the State was presumed to adequately represent movant-intervenors because the State was acting on behalf of its constituency, and, in the absence of a very compelling showing otherwise, a State is presumed to adequately represent its citizens where they share the same interests. *See Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.,* 642 F.3d 728, 741-42 (9th Cir. 2011); *ACRA Turf Club, LLC v. Zanzuccki,* Civil Action No. 12-2775(MAS)(DEA), 2013 WL 776236 (D.N.J. Feb. 27, 2013), 561 F. App'x 219, 222 (3d Cir. 2014); *Lelsz v. Kavanagh,* 98 F.R.D. 11, 16, 26 (E.D. Tex. 1982). *Heffner v. Murphy,* No. 08cv990, 2010 WL 2606520, at *4 (M.D. Pa. June 25, 2010), is inapplicable because the interests of the NWP 12 Coalition and the other parties are not "perfectly aligned."

11

Even assuming, *arguendo*, that this case is time-sensitive, the Coalition's participation will not delay adjudication of the facial claims. The Coalition was granted intervention before on a similar as-applied and facial challenge, and participated in that litigation without causing any of the delays or problems Plaintiffs allege. In fact, the Coalition provided unique value in *Bostick*, and many of the arguments the Coalition advanced were cited by the district court and Tenth Circuit in upholding NWP 12. *See supra* p.9 n.9.

Ironically, to the extent any party is raising duplicative claims, it is the Plaintiffs, who raised many of the same arguments regarding the lawfulness of NWP 12 in *Bostick*, where they were rejected.[11] Rather than accept those decisions, however, Plaintiffs have simply sought a new venue to bring their challenge.

Finally, Plaintiffs argue that, if the Court allows the NWP 12 Coalition to participate, a number of attendant conditions should be imposed. (Doc. 52 at 8).

---

[11] For example, in *Bostick*, as well as here, Plaintiffs challenge: the Corps' failure to consider cumulative impacts of pipelines, a claim rejected by the district court, 2013 WL 6858685, at *8-9, Doc. 36 ¶ 194(d) (raising same claim); the Corps' analysis of forested wetlands, upheld by the district court, 2013 WL 6858685, at *11-12, Doc. 36 ¶ 194(b) (raising same claim); the definition of "single and complete project," upheld by the district court and court of appeals, 2013 WL 6858685, at *20, *aff'd* 787 F.3d 1055-56, Doc. 36 ¶¶ 200-201 (raising same claim); whether NWP 12 complies with the CWA's § 404(e) standard, upheld by the district court and court of appeals, 2013 WL 6858685, at *23, *aff'd* 787 F.3d at 1055-60, Doc. 36 ¶¶ 202-205 (raising same claim).

These conditions are not necessary because the Court has entered a staggered briefing schedule, with the Defendant-Intervenors' briefs to follow the Federal Defendants' brief, to avoid duplication. (Doc. 56). This schedule addresses Plaintiffs' concern that the Coalition's participation would delay or duplicate proceedings.

There is no reason for the Court to address the remaining limitations proposed by Plaintiffs at this early juncture. The Coalition will participate in an efficient and cooperative manner. The Court can, in the interest of judicial economy, address any conditions it deems necessary at the appropriate time.

## V. Conclusion.

The NWP 12 Coalition and respectfully requests the Court grant its Motion to Intervene as of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B).

Dated this 7th day of November, 2019

/s/ William W. Mercer
William W. Mercer
Brianne C. McClafferty
HOLLAND & HART LLP
401 North 31st Street, Suite 1500
Billings, MT 59101
(406) 252-2166
wwmercer@hollandhart.com
bcmcclafferty@hollandhart.com

Deidre G. Duncan
Karma B. Brown
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 955-1500
dduncan@HuntonAK.com
kbbrown@HuntonAK.com
*Pro hac vice* motions pending

*Counsel for Defendant-Intervenors American Gas Association, American Petroleum Institute, Association of Oil Pipe Lines, Interstate Natural Gas Association of America, and National Rural Electric Cooperative Association*

# CERTIFICATION OF COMPLIANCE

I certify that this Reply Brief in Support of Motion to Intervene by American Gas Association, American Petroleum Institute, Association of Oil Pipe Lines, Interstate Natural Gas Association of America, and National Rural Electric Cooperative Association complies with the requirements of Local Rule 7.1(d)(2)(B) and contains 3,218 words, excluding the parts exempted by Local Rule 7.1(d)(2)(E), according to the word count calculated by Microsoft Word 2016.

William W. Mercer

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)

*****

I hereby certify that, on November 7, 2019, a copy of the foregoing document was served on the following persons by the following means:

\_\_\_\_\_ CM/ECF

__1__ Hand Delivery

__2-4__ Mail

\_\_\_\_\_ Overnight Delivery Service

\_\_\_\_\_ Fax

\_\_\_\_\_ E-Mail

1. Clerk, U.S. District Court

2. Robert Thomas Cameron
   Montana Attorney General
   215 North Sanders
   P.O. Box 201401
   Helena, MT 59620-1401

3. Timothy C. Fox
   Montana Attorney General
   215 North Sanders
   P.O. Box 201401
   Helena, MT 59620-1401

4. Jeremiah R. Langston
   Montana Public Service Commission
   1701 Prospect
   P.O. Box 202601
   Helena, MT 59601

All other parties were served via the court's electronic filing system.



William W. Mercer  
Holland & Hart LLP  
401 North 31st Street  
Suite 1500  
P.O. Box 639  
Billings, MT 59103-0639

13804380_v1