Timothy M. Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, Montana 59807
(406) 721-1435
tim@bechtoldlaw.net
*Attorney for all Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| NORTHERN PLAINS RESOURCE COUNCIL, et al., | |
| Plaintiffs, | |
| v. | |
| U.S. ARMY CORPS OF ENGINEERS, et al., | CV 19-44-GF-BMM |
| Defendants, | **Plaintiffs' Memorandum in Support of Motion to Supplement the Administrative Record** |
| TC ENERGY CORPORATION, et al., | |
| Intervenor-Defendants, | |
| STATE OF MONTANA, | |
| Intervenor-Defendant, | |
| AMERICAN GAS ASSOCIATION, et al., | |
| Intervenor-Defendants. | |

# INTRODUCTION

Plaintiffs' motion for partial summary judgment challenges the U.S. Army Corps of Engineers' reissuance of Nationwide Permit 12—a general permit for approving pipelines and other utility projects under the Clean Water Act—and the application of Nationwide Permit 12 to oil pipelines, including Keystone XL. The attached documents are necessary to show that the Corps took these actions in violation of the law and without considering all relevant factors, and to explain technical and complex matters regarding the Corps' use of Nationwide Permit 12. Accordingly, Plaintiffs respectfully move the Court to supplement the administrative record with these documents.

# STANDARD OF REVIEW

In the Ninth Circuit, courts are "permitted to admit extra-record evidence: (1) if admission is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) if 'the agency has relied on documents not in the record,' (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'" *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)). These exceptions are "widely accepted" and "operate to identify and plug holes in the administrative record." *Id.*

# ARGUMENT

## I. The Court should supplement the administrative record with Exhibits A-H

Nationwide Permit 12 ("NWP 12") is a streamlined process by which the U.S. Army Corps of Engineers (the "Corps"), pursuant to Section 404(e) of the Clean Water Act ("CWA"), approves the construction of pipelines and other linear utility projects through waters and wetlands. *See* 33 U.S.C. § 1344(e)(1); 33 C.F.R. § 330.1(b); NWP000127. In most cases, projects meeting NWP 12's terms and conditions may be constructed without any notification to, or further review by, the Corps. *See* 33 C.F.R. § 330(c), (e)(1). In some cases, however, the applicant must submit a preconstruction notification ("PCN") to the Corps' district engineer and hold off on construction until the district engineer verifies that the project meets the NWP's terms and conditions. *See id.* §§ 330.1(e)(1), 330.6(a)(1).

Exhibits A-H consist of PCNs submitted by TC Energy in 2017 for Keystone XL's crossing of U.S. waters in Montana (Ex. A), South Dakota (Ex. B), and Nebraska (Ex. C);[1] the Corps' verifications and accompanying memorandums for the record for the Yellowstone River in Montana (Exs. D-E) and Cheyenne River in South Dakota (Exs. F-G); and the Corps' June 22, 2017 letter to TC

---

[1] Because Plaintiffs' copies of these PCNs included hundreds of pages of exhibits containing mostly redacted material, Plaintiffs have provided excerpts of the PCNs instead.

Energy stating that the water crossings in Nebraska do not require Section 404 approval (Ex. H).

These documents are "necessary to determine 'whether the agency has considered all relevant factors and has explained its decision.'" *Lands Council*, 395 F.3d at 1030 (quoting *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450). As explained in more detail in the memorandum in support of Plaintiffs' motion for partial summary judgment, the National Environmental Policy Act ("NEPA") and CWA required the Corps to analyze the direct, indirect, and cumulative effects of the projects authorized by NWP 12 and to ensure that these projects would, individually and cumulatively, have only minimal adverse effects on the environment. *See* Pls.' Mem. in Supp. of Mot. for Partial Summ. J. ("MSJ Br.") at 10-27, 38-44. The Corps, however, deferred much of this analysis to the project level.

That is unlawful. The Corps does not conduct further NEPA analysis for individual project verifications. *See* NWP000003. In fact, most projects are authorized under NWP 12 without any notification to, let alone review by, the Corps. *See* 33 C.F.R. § 330(c), (e)(1). Even when a project proponent submits a PCN to the Corps, the agency's ensuing review is extremely narrow; it generally focuses on the water crossing that triggered the PCN requirement and does not

3

include any cumulative effects analysis of the project's other water crossings (which must be listed in the PCN). *See* MSJ Br. at 8-9, 22-23, 40-41.

Exhibits A-H show, in the context of Keystone XL, how this process plays out. The PCNs indicate that the pipeline will require 688 crossings of jurisdictional waterways, and demonstrate that many of them are located in close proximity to each other and/or on common waterways. *See generally* Exs. A-C. According to the Corps, however, roughly 685 of these waterways do not require a PCN under NWP 12's terms and conditions, and so are "already authorized [by NWP 12] without the need for any Corps verification or other project-level approval." Stipulation to Stay Claims ("Stipulation") at 2, ECF No. 53; *see also* Ex. A at 52-58 , Ex. B at 52-64, Ex. C at 57-63 (listing "non-PCN" water crossings). Consistent with its interpretation of NWP 12, the Corps issued verifications that were limited to just two rivers—the Yellowstone and Cheyenne—and failed to conduct any cumulative effects analysis of Keystone XL's hundreds of other water crossings. *See generally* Ex. D, Ex. F; *see also* Ex. E at 10, Ex. G at 10.

As a result, and as demonstrated by Exhibits A-H, TC Energy is currently authorized to begin construction through the vast majority of waterways along Keystone XL's route despite the fact that the Corps has prepared no project-level analysis that evaluates the cumulative effects of the project—much less NWP 12

4

generally—as mandated by NEPA or the CWA. And although the Corps has suspended its verifications for the Yellowstone and Cheyenne crossings, Exhibits A-H are nonetheless helpful to illustrate the narrow scope of the Corps' project-level review of Keystone XL and to provide evidence of the specific 685 "non-PCN" waters that *remain* approved under NWP 12 "without the need for any Corps verification or other project-level approval." Stipulation at 2.

In short, by providing a specific example of the Corps' practice of deferring the necessary cumulative effects reviews under NEPA and the CWA to the project level, Exhibits A-H demonstrate that the Corps' reissuance of NWP 12, and its use of NWP 12 to authorize Keystone XL's construction through hundreds of non-PCN waters, failed to consider all the relevant factors and violated the law. *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014) (explaining that the purpose of the first exception to the record review rule is "to help the court understand whether the agency complied with the [Administrative Procedure Act's] requirement that the agency's decision be neither arbitrary nor capricious"); *Asarco, Inc. v. U.S. Envtl. Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980) ("The court cannot adequately discharge its duty to engage in a 'substantial inquiry' if it is required to take the agency's word that it considered all relevant matters.").

Exhibits A-H are also "necessary to explain technical terms or complex

5

subject matter." *Lands Council*, 395 F.3d at 1030 (quoting *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450). The Corps justified its issuance of NWP 12 based on a complex, multi-step approval process where district engineers conduct a project-level review of all water crossings to ensure that the cumulative effects are minimal and that the crossings are located on "separate and distant" waterways. *See* MSJ Br. at 4-7, 30-31. Exhibits A-H are necessary to rebut that justification.

The three PCNs contain specific, technical data on Keystone XL's hundreds of non-PCN waters, including their distances from one another other (i.e., pipeline milepost), the name and classification of the waterbody, the length of pipeline crossing, and the type of impact based on the crossing method. *See* Ex. A at 52-58, Ex. B at 52-64, Ex. C at 57-63. Similarly, the Corps' verifications and memorandums for the record, as well as the Corps' Nebraska letter, demonstrate the narrow scope of the Corps' project-level review. *See generally* Exs. D-H. In sum, Exhibits A-H provide the necessary technical data contradicting the Corps' assertion that NWP 12 activities are located on "separate and distant" waterways and are adequately reviewed at the project level, thereby causing only minimal effects.

Finally, Exhibits A-H will almost certainly become part of the administrative record for this case anyway. Plaintiffs' Claims Three and Five challenge the Corps' verifications of the PCNs for the Yellowstone River and Cheyenne River, as well

6

as the Corps' disposition of the PCN for Nebraska crossings via the June 22, 2017 letter. First Am. Compl., ECF No. 36. On October 31, 2019, Plaintiffs agreed to stay Claims Three and Five in light of the Corps' suspension of those verifications. Stipulation at 2-3; Order on the Parties' Stipulation, ECF No. 56. Assuming that the Corps eventually lifts this suspension or otherwise verifies or approves Keystone XL's remaining water crossings, Plaintiffs will revive Claims Three and Five. At that point, Exhibits A-H will be part of the administrative record for those claims, along with any new approval documents.

Because Exhibits A-H satisfy the first and third exceptions from the *Lands Council* test—and because they will almost certainly be in front of this Court eventually anyway—the record should be supplemented to include them. *See Asarco*, 616 F.2d at 1160 ("It will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not.").

**II.  The Court should supplement the administrative record with Exhibit I**

Exhibit I is a Biological Opinion released by the National Marine Fisheries Service ("NMFS") in 2012 for a prior version of NWP 12. While it is referenced in the record, *see, e.g.*, NWP030588, the document itself is not included. Supplementation is warranted because Exhibit I is relevant to Plaintiffs' argument

7

under the Endangered Species Act ("ESA") that the Corps failed to conduct programmatic consultation with NMFS and the U.S. Fish and Wildlife Service when it reissued NWP 12 in 2017.

The Biological Opinion, prepared following programmatic consultation between NMFS and the Corps, found that the Corps' implementation of the NWP program, including NWP 12, was jeopardizing the continued existence of endangered and threatened species under NMFS's jurisdiction. *See* MSJ Br. at 31. This conclusion led the Corps to reinitiate consultation and, ultimately, adopt modifications to the NWPs that allowed NMFS to determine that NWP 12 would not jeopardize threatened and endangered species within NMFS's jurisdiction. *Id*. The 2012 Biological Opinion, then, demonstrates that the Corps is aware of its obligation to undertake programmatic consultation under the ESA, as well as the value that such consultation has in protecting federally listed species. It further underscores the gravity of the Corps' failure to undertake programmatic consultation for its reissuance of NWP 12 in 2017, in violation of the ESA. Supplementation of the record with Exhibit I is therefore appropriate. *See Lands Council*, 395 F.3d at 1030.

Furthermore, because Plaintiffs' ESA claim against the Corps is brought under the ESA's citizen suit provision, it is not governed by the APA's record review rule. *See W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th

8

Cir. 2011). "Therefore, under *Washington Toxics Coalition*, [the court] may consider evidence outside the administrative record" when reviewing this claim. *Id.* (citing *Wash. Toxics Coal. v. Envtl. Prot. Agency*, 413 F.3d 1024, 1030, 1034 (9th Cir. 2005)) (allowing plaintiffs to submit extra-record material in support of their ESA citizen suit claim); *see also* Order, *Indigenous Envtl. Network v. U.S. Dep't of State*, No. 17-29-GF-BMM (D. Mont. Dec. 12, 2017) (holding that "ESA citizen-suit claims . . . are not limited to the administrative record").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court supplement the administrative record with Exhibits A through I.

Dated: November 22, 2019　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　/s/ Doug Hayes
　　　　　　　　　　　　　　　　　　Doug Hayes (*pro hac vice*)
　　　　　　　　　　　　　　　　　　/s/ Eric Huber
　　　　　　　　　　　　　　　　　　Eric Huber (*pro hac vice*)
　　　　　　　　　　　　　　　　　　Sierra Club Environmental Law Program
　　　　　　　　　　　　　　　　　　1650 38th Street, Suite 102W
　　　　　　　　　　　　　　　　　　Boulder, CO 80301
　　　　　　　　　　　　　　　　　　(303) 449-5595
　　　　　　　　　　　　　　　　　　doug.hayes@sierraclub.org
　　　　　　　　　　　　　　　　　　eric.huber@sierraclub.org
　　　　　　　　　　　　　　　　　　*Attorneys for Sierra Club and Northern Plains Resource Council*

/s/ Jaclyn H. Prange
Jaclyn H. Prange (*pro hac vice*)
/s/ Cecilia D. Segal
Cecilia D. Segal (*pro hac vice*)
Natural Resources Defense Council
111 Sutter Street, Floor 21
San Francisco, CA 94104
(415) 875-6100
jprange@nrdc.org
csegal@nrdc.org
*Attorneys for Bold Alliance and Natural Resources Defense Council*

/s/ Jared Margolis
Jared Margolis (*pro hac vice*)
/s/ Amy R. Atwood
Amy R. Atwood (*pro hac vice*)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
(503) 283-5474
jmargolis@biologicaldiversity.org
atwood@biologicaldiversity.org
*Attorneys for Center for Biological Diversity and Friends of the Earth*

/s/ Timothy M. Bechtold
Timothy M. Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net
*Attorney for all Plaintiffs*

## WORD COUNT CERTIFICATION

I certify that the foregoing brief contains 1,954 words, as counted with Microsoft Word's "word count" tool, and excluding material Local Civil Rule 7.1(d)(2)(E) omits from the word-count requirement.

/s/ Cecilia D. Segal

# CERTIFICATE OF SERVICE

I certify that I served the foregoing brief on all counsel of record via the Court's CM/ECF system.

<u>/s/ Cecilia D. Segal</u>