William W. Mercer
Brianne C. McClafferty
HOLLAND & HART LLP
401 North 31st Street, Suite 1500
Billings, MT 59101
(406) 252-2166
wwmercer@hollandhart.com
bcmcclafferty@hollandhart.com

Deidre G. Duncan (*Pro hac vice*)
Karma B. Brown (*Pro hac vice*)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 955-1500
dduncan@HuntonAK.com
kbbrown@HuntonAK.com

*Counsel for Defendant-Intervenors American Gas Association,*
*American Petroleum Institute, Association of Oil Pipe Lines,*
*Interstate Natural Gas Association of America, and*
*National Rural Electric Cooperative Association*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| NORTHERN PLAINS RESOURCE COUNCIL, BOLD ALLIANCE, NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, CENTER FOR BIOLOGICAL DIVERSITY, and FRIENDS OF THE EARTH,<br><br>    Plaintiffs,<br><br> v.<br><br>U.S. ARMY CORPS OF ENGINEERS, and LIEUTENANT GENERAL TODD T. SEMONITE (in his official capacity as U.S. Army Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers),<br><br>    Defendants,<br><br> and | Case No. 4:19-cv-44-GF-BMM<br><br>**NWP 12 Coalition's Reply Brief in Support of Federal Defendants' Cross-Motion for Partial Summary Judgment** |

THE STATE OF MONTANA,
TRANSCANADA KEYSTONE
PIPELINE, LP, TC ENERGY
CORPORATION, AMERICAN GAS
ASSOCIATION, AMERICAN
PETROLEUM INSTITUTE,
ASSOCIATION OF OIL PIPE LINES,
INTERSTATE NATURAL GAS
ASSOCIATION OF AMERICA, and
NATIONAL RURAL ELECTRIC
COOPERATIVE ASSOCIATION,

                   Defendant-
                   Intervenors.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

I.    Plaintiffs Cannot Transform Their Facial Challenge to NWP 12
      into an As-Applied Challenge Regarding Moot and Irrelevant Pre-
      Construction Notifications for a Particular Project. ........................1

II.   The 2017 NWP 12 Is Consistent with the Prior NWP 12, Upheld
      by Numerous Courts. ......................................................................3

      A.    NWP 12 Has Authorized Minor Discharges Associated with
            "Utility Line" Activities, Including Pipelines, Since 1977. ..................4

      B.    Utility Line Activities Authorized by NWP 12 Are Subject
            to Detailed Review. ................................................................6

      C.    The Corps' Long-Standing "Single and Complete"
            Definition Was Codified in 1991, Upheld by *Bostick*, and
            Complies with §404(e). ..........................................................7

III.  The Corps' NEPA Review Properly Addressed Environmental
      Effects Proximately Caused by Minor Discharges of Dredged or
      Fill Material into WOTUS Authorized by NWP 12.......................9

      A.    Plaintiffs' NEPA Argument Rests on Inapplicable Cases
            Involving Corps Individual Permits. ......................................9

      B.    Future Operation or Failure of Pipelines Is Regulated by
            Other Agencies, and Not Within the Scope of the Corps'
            Regulatory Authority...........................................................11

      C.    The Corps Properly Considered Effects Associated with the
            Inadvertent Release of Drilling Fluid, Consistent with Its
            Jurisdiction. ......................................................................13

IV.   Conclusion. ..................................................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272 (D.C. Cir. 2005)........................................................................5

*Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846 (9th Cir. 2005)..............................................................................10

*Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872 (9th Cir. 2006)................12

*Ouachita Riverkeeper, Inc. v. Bostick*, 938 F. Supp. 2d 32 (D.D.C. 2013)....................................................................................6

*Palm Beach Cty. Envtl. Coal. v. Florida*, 651 F. Supp. 2d 1328 (S.D. Fla. 2009).....................................................................................6

*Sierra Club, Inc. v. Bostick*, No. CIV-12-742-R, 2012 WL 3230552 (W.D. Okla. Aug. 5, 2012), *aff'd*, 539 F. App'x 885 (10th Cir. 2013)......................................................................................5

*Sierra Club, Inc. v. Bostick*, No. CIV-12-742-R, 2013 WL 6858685 (W.D. Okla. Dec. 30, 2013), *aff'd*, 787 F.3d 1043 (10th Cir. 2015)..................................................................................3, 4, 5

*Sierra Club, Inc. v. Bostick*, 787 F.3d 1043 (10th Cir. 2015) ...............8, 10, 12, 13

*Sierra Club v. MasTec N. Am.*, Nos. 03-1697-HO, 06-6071-HO, 2007 WL 4387428 (D. Or. Dec. 12, 2007)..................................................6

*Sierra Club v. Sigler*, 695 F.2d 957 (5th Cir. 1983)...............................10

*Stop the Pipeline v. White*, 233 F. Supp. 2d 957 (S.D. Ohio 2002) ........................7

## FEDERAL STATUTES

33 U.S.C. §1344(e), CWA §404(e) ........................................................1

## FEDERAL REGULATIONS

33 C.F.R. §330.2(i) ....................................................................................8

## FEDERAL REGISTER

42 Fed. Reg. 37,122 (July 19, 1977)............................................................5

47 Fed. Reg. 31,794 (July 22, 1982)............................................................5

51 Fed. Reg. 41,206 (Nov. 13, 1986) .......................................................4, 5

53 Fed. Reg. 3120 (Feb. 3, 1988) ..............................................................10

56 Fed. Reg. 59,110 (Nov. 22, 1991) ........................................................4, 8

61 Fed. Reg. 65,874 (Dec. 13, 1996)...........................................................4

67 Fed. Reg. 2019 (Jan. 15, 2002) ..............................................................4

72 Fed. Reg. 11,091 (Mar. 12, 2007)...........................................................4

77 Fed. Reg. 10,184 (Feb. 21, 2012) ...........................................................4

82 Fed. Reg. 1860 (Jan. 6, 2017)............................................1, 2, 4, 8, 12, 14

## I. Plaintiffs Cannot Transform Their Facial Challenge to NWP 12 into an As-Applied Challenge Regarding Moot and Irrelevant Pre-Construction Notifications for a Particular Project.

The claims subject to the partial cross-motions for summary judgment are facial challenges to the U.S. Army Corps of Engineers' ("Corps") 2017 reissuance of Nationwide Permit 12 ("NWP 12"). 82 Fed. Reg. 1860 (Jan. 6, 2017). Plaintiffs allege the Corps issued NWP 12 in violation of Clean Water Act ("CWA") §404(e), the National Environmental Policy Act ("NEPA"), and the Endangered Species Act ("ESA"). (Doc. 36, ¶¶ 191-205, 218-227).

Plaintiffs oppose the Keystone XL Pipeline, but they cannot transform their facial challenge to NWP 12 into an as-applied challenge by making extraneous and inflammatory assertions regarding TC Energy's suspended and moot preconstruction notifications ("PCNs") for the pipeline.[1] These arguments are a red herring.

TC Energy's 2017 PCNs were suspended by the Corps and have been replaced and mooted by TC Energy's submission of new PCNs in 2020. The 2017 PCNs are simply irrelevant to the Court's review of Plaintiffs' facial claims.

---

[1] Plaintiffs repeatedly flout the Court's instruction that the 2017 PCNs would be used by the Court solely for background purposes. (Doc. 99 at 6-7).

TC Energy's 2020 PCNs, which describe all water crossings, including non-PCN crossings, as required by NWP 12 Note 8, are still under review by the Corps, and thus, not ripe. 82 Fed. Reg. at 1986 (Note 8 to NWP 12, requiring evaluation of all crossings, including non-PCN waters). In accordance with the NWPs, the District Engineer will consider the entire PCN, including non-PCN water crossings, and evaluate the cumulative effects of all crossings of waters of the U.S. ("WOTUS") to determine whether the proposed discharge meets the terms and conditions of NWP 12, including resulting in no more than minimal adverse environmental effects. *Id.* at 2004-05 (describing District Engineer's review of PCN to determine whether the activity meets the minimal effects standard, including evaluation of direct, indirect, and cumulative effects of authorized activities). That process is underway, and it would be premature to predict how the Corps will conclude its review. The District Engineer may determine that an individual permit is necessary, or impose project-specific requirements, including mitigation. *Id.* at 2005.

Plaintiffs' claim that "Keystone XL's non-PCN waters were authorized under NWP 12 upon its reissuance in 2017" (Doc. 107 at 6 n.1), is similarly misplaced. The Corps' 2017 reissuance of NWP 12 did not authorize Keystone XL, or any particular project. (Doc. 88 at 12).

Finally, as a practical matter, TC Energy does not intend to commence construction until all necessary permits are obtained. (Doc. 103). This is consistent with the nature of linear project construction, where the project developer will wait to commence construction until it has all its permits. (Doc. 93 at 15-17).

If TC Energy's 2020 PCNs are approved by the District Engineer, Plaintiffs may renew their project-specific claims. (Doc. 36, ¶¶ 206-217, 228-236). But that review must wait. The focal point for judicial review of the facial claims is the administrative record for promulgation of the 2017 NWPs -- not the moot 2017 PCNs, or the unripe 2020 PCNs. For the reasons explained in the NWP 12 Coalition's Memorandum (Doc. 93), and the arguments made herein, summary judgment should be granted in favor of the Federal Defendants (Doc. 87).

## II. The 2017 NWP 12 Is Consistent with the Prior NWP 12, Upheld by Numerous Courts.

Plaintiffs concede that "NWP 12 is not new." (Doc. 107 at 7). Yet they argue that the Corps began using NWP 12 "to fast-track major interstate crude oil pipelines only in 2012," and attempt to distinguish the Tenth Circuit's decision in *Bostick* through an attenuated line of argument that defies the long-standing regulatory history and case law. *Id.*; *Sierra Club, Inc. v. Bostick*, No. CIV-12-742-R, 2013 WL 6858685 (W.D. Okla.

Dec. 30, 2013), *aff'd*, 787 F.3d 1043 (10th Cir. 2015) ("*Bostick*")

(upholding the substance and structure of NWP 12).

A. **NWP 12 Has Authorized Minor Discharges Associated with "Utility Line" Activities, Including Pipelines, Since 1977.**

The 2017 NWP 12, like the 2012 NWP 12 and prior iterations,

authorizes minor, and typically temporary, discharges of dredged or fill

material into WOTUS for "the construction, maintenance, repair, and

removal of utility lines and associated features." 82 Fed. Reg. at 1985; 77

Fed. Reg. 10,184, 10,271 (Feb. 21, 2012) (2012 NWP 12) (same). Plaintiffs

contend the Corps did not use NWP 12 to authorize discharges associated

with construction of oil pipelines until 2012. (Doc. 107 at 8). This

argument is not borne out by the regulatory history or case law.

Since 1977, NWP 12 has consistently defined "utility line" to mean

"any pipe or pipeline for the transportation of any gaseous, liquid,

liquescent, or slurry substance, and any cable, line, or wire for the

transmission of energy, telephone, radio, or television communication." 82

Fed. Reg. at 1986 (2017 NWP 12); 77 Fed. Reg. at 10,271 (2012 NWP 12);

72 Fed. Reg. 11,091, 11,182 (Mar. 12, 2007) (2007 NWP 12); 67 Fed. Reg.

2019, 2080 (Jan. 15, 2002) (2002 NWP 12) (replacing "liquefiable" with

"liquescent"); 61 Fed. Reg. 65,874, 65,914 (Dec. 13, 1996) (1997 NWP 12);

56 Fed. Reg. 59,110, 59,141 (Nov. 22, 1991) (1992 NWP 12); 51 Fed. Reg.

41,206, 41,255 (Nov. 13, 1986) (1987 NWP 12); 47 Fed. Reg. 31,794, 31,833 (July 22, 1982) (1982 NWP 12); 42 Fed. Reg. 37,122, 37,131 (July 19, 1977) (1977 NWP 12).[2]

Thus, the 2017 NWP 12, like the 2012 NWP and each prior iteration of NWP 12 dating back to 1977, has provided authorization for minor discharges for covered "utility line" activities, including, but not limited to, oil pipelines. Indeed, the district court in *Bostick* rejected Plaintiffs' prior attempts "to cast NWP 12 as solely applying to oil pipelines." *Bostick*, 2013 WL 6858685, at *9. The court further noted that:

> the procedures followed by the Corps and TransCanada have been in pertinent part unchanged for over twenty years. During that period the law mandated that the NWPs be reissued every five years, with opportunity for input and objection from the public. At least one Plaintiff, the Sierra Club, has been active over the years in making public comments and it has not been drawn to the Court's attention that it specifically objected to many of the processes it now calls an abuse of discretion.

*Sierra Club, Inc. v. Bostick*, No. CIV-12-742-R, 2012 WL 3230552, at *7 (W.D. Okla. Aug. 5, 2012), *aff'd*, 539 F. App'x 885 (10th Cir. 2013).

---

[2] Plaintiffs argue that NWP 12 "is not a regulation; it is a *final permit*." (Doc. 107 at 6). That is incorrect. NWPs are rules. *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,* 417 F.3d 1272, 1284-85 (D.C. Cir. 2005). At least once every five years, the Corps undertakes a rulemaking to ensure the NWPs meet CWA §404(e)'s minimal adverse environmental effects standard.

Moreover, prior challenges to NWP 12 verifications confirm Plaintiffs and others have been well aware of the Corps' reliance on NWP 12 to authorize minor discharges associated with utility line activities, including pipelines, prior to 2012. *See, e.g., Palm Beach Cty. Envtl. Coal. v. Florida*, 651 F. Supp. 2d 1328, 1333 (S.D. Fla. 2009) (discharges associated with construction of natural gas pipeline and power plant authorized by NWP 12); *Sierra Club v. MasTec N. Am.*, Nos. 03-1697-HO, 06-6071-HO, 2007 WL 4387428, at *1 (D. Or. Dec. 12, 2007) (NWP 12 authorization for construction of 60-mile natural gas pipeline and certain lateral pipelines); *Ouachita Riverkeeper, Inc. v. Bostick*, 938 F. Supp. 2d 32 (D.D.C. 2013) (verifying construction of wastewater pipeline under 2007 NWP 12).

Plaintiffs' attempt to distinguish *Bostick*, by arguing they could not have forecast NWP 12 would authorize discharges associated with construction of oil pipelines prior to 2012, must be ignored. No matter how they spin it, many of Plaintiffs' facial claims have already been reviewed and rejected by the courts, and those decisions are directly relevant to this Court's review of Plaintiffs' facial challenge. (Doc. 93 at 8-9).

## B. Utility Line Activities Authorized by NWP 12 Are Subject to Detailed Review.

Plaintiffs' claim that NWP 12 "fast-tracks" utility line discharges belies the specific and detailed procedures that ensure any uses of NWP 12

meet the "minimal adverse environmental effects" standard. Regardless of the type of "utility line" activity, the Corps undertakes a thorough and complete review, at the national, regional, and project-specific levels, to ensure covered utility line activities comply with §404(e).

*Stop the Pipeline v. White*, 233 F. Supp. 2d 957 (S.D. Ohio 2002), cited by Plaintiffs, is instructive. (Doc. 107 at 7). There, the Corps determined that the proposed pipeline did not meet the terms and conditions of NWP 12, and required the applicant to seek an individual §404 permit instead. *Stop the Pipeline*, 233 F. Supp. 2d at 963. That same process is underway with respect to the District Engineer's review of TC Energy's 2020 PCNs. *Stop the Pipeline* does not establish, as Plaintiffs assert (Doc. 107 at 7), that NWP 12 was not used for pipeline activities prior to 2012. Rather, it demonstrates that the Corps' review works as intended: where proposed discharges are not properly within the scope of, or do not meet the criteria for, NWP 12, the Corps requires an individual permit.

**C. The Corps' Long-Standing "Single and Complete" Definition Was Codified in 1991, Upheld by *Bostick*, and Complies with §404(e).**

Plaintiffs attempt to re-litigate the long-standing definition of "single and complete," arguing that it is not "actually applied on the ground in any meaningful way," and suggesting their comments to the Corps during the 2017 NWP reissuance were ignored. (Doc. 107 at 49).

But Plaintiffs have already lost this argument. *Bostick* upheld the structure and substance of NWP 12 and the "single and complete linear project" definition. (Doc. 93 at 17). *Bostick* found that "[t]he Corps' use of the 'separate and distant' test was not arbitrary or capricious." *Sierra Club, Inc. v. Bostick*, 787 F.3d 1043, 1056 (10th Cir. 2015).

The Corps has consistently stated that "[f]or linear projects crossing a single or multiple waterbodies several times at separate and distant locations, each crossing is considered a single and complete project for purposes of NWP authorization." 82 Fed. Reg. at 2007 (definition of "single and complete linear project"). The "single and complete" definition was first adopted in 1988 regulatory guidance and then codified through notice and comment rulemaking. 56 Fed. Reg. at 59,114; 33 C.F.R. §330.2(i). The 2017 NWPs reflect the Corps' long-standing practice to calculate impacts for purposes of satisfying the ½-acre threshold separately for each separate and distant crossing. 82 Fed. Reg. at 1883. When the District Engineer evaluates the PCN for a linear project, he considers the individual crossings of WOTUS to determine whether they individually satisfy the terms and conditions of NWP 12, as well as the cumulative effects caused by all crossings that require Corps authorization. *Id.* at 1885; *see also id.* at 2004-05 (Paragraph 1 of Section D, "District Engineer's

Decision"). Finally, the Decision Document for NWP 12 reflects the Corps' consideration of Plaintiffs' comments. *See, e.g.,* NWP005272.

In sum, the Corps' regulation defining "single and complete project" has been in place since 1991, upheld by *Bostick*, and complies with §404(e). Plaintiffs' stale attempt to re-litigate this long-standing regulatory principle must fail.

## III. The Corps' NEPA Review Properly Addressed Environmental Effects Proximately Caused by Minor Discharges of Dredged or Fill Material into WOTUS Authorized by NWP 12.

Plaintiffs argue that NEPA requires the Corps to examine all potential aspects of oil pipelines, including the effects of inadvertent returns of drilling fluid, before it reissues NWP 12. (Doc. 107 at 9-21). In making this argument, Plaintiffs disregard key principles regarding the scope of NEPA review repeatedly confirmed by the courts. (Doc. 93 at 11-12).

### A. Plaintiffs' NEPA Argument Rests on Inapplicable Cases Involving Corps Individual Permits.

In arguing for a broader scope of NEPA review, Plaintiffs turn to cases involving §404 individual permits. As explained by the Federal Defendants, Plaintiffs' reliance on these cases, and the NEPA procedures set forth in Corps' Appendix B regulations, is misplaced. (Doc. 110 at 11-13).

First, the Corps' Appendix B regulations address NEPA implementation procedures for individual CWA §404 permits, but these

procedures do not apply for NWPs or verifications.  *Bostick*, 787 F.3d at 1054; Environmental Quality; Procedures for Implementing the National Environmental Policy Act, 53 Fed. Reg. 3120, 3121, 3126 (Feb. 3, 1988) (in adopting Appendix B, Corps indicated it would not apply to NWPs or verifications).

Second, with an individual permit, the Corps' role may be more significant, as in the cases cited by Plaintiffs, which involved water dependent activities.  (Doc. 107 at 13, citing *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 867-88 (9th Cir. 2005) (individual permit for expansion of oil refinery dock located entirely in WOTUS) and *Sierra Club v. Sigler*, 695 F.2d 957 (5th Cir. 1983) (individual permit to extend and deepen shipping channel)).  Because the Corps' §404 authority was more extensive and critical to the entire project, the Corps determined there was a closer, causal relationship between the §404 permit and the larger project, leading to a broader NEPA review.

These individual permit cases are plainly distinguishable.  By direction of CWA §404(e), the authorized federal permitting under NWP 12 is for minimal discharges.  The Corps fully met its NEPA obligations in evaluating the effects associated with reissuance of NWP 12.

**B.    Future Operation or Failure of Pipelines Is Regulated by Other Agencies, and Not Within the Scope of the Corps' Regulatory Authority.**

The Corps does not approve "pipelines," or operation of oil pipelines through NWP 12.  In undertaking its NEPA review for NWP 12, the Corps properly focused on effects associated with discharges into WOTUS from utility line activities.  (Doc. 93 at 18-20).

The Corps' Decision Document confirms that "[f]or oil pipelines and other utility lines, the activities that are subject to the Corps' regulatory authorities and require [Corps] authorization are crossings of jurisdictional waters and wetlands and [associated infrastructure] … that involve discharges of dredged or fill material into [WOTUS]."  NWP005279. Because the Corps "do[es] not have the authority to regulate the operation of oil and gas pipelines," nor "the authority to address spills or leaks from oil and gas pipelines," NWP005268, it appropriately determined that oil spills are not caused by the minimal discharges of dredged or fill material into WOTUS associated with the construction of pipelines, and thus oil spills are not proximately related to reissuance of NWP 12.

Oil spills, to the extent they occur, are operational impacts caused by a failure of an oil pipeline.  The Corps does not have jurisdiction over pipeline operation and spills, or leaks of substances from pipelines.  Rather,

these operational impacts are addressed by other regulatory agencies. For example, the Environmental Protection Agency and the Coast Guard address oil spills through the Oil Pollution Act. 82 Fed. Reg. at 1884. The Department of Transportation ("DOT") extensively regulates the safety of oil and natural gas pipeline transportation and facilities (including design, installation, construction, and maintenance) and the siting and construction of interstate natural gas pipelines are regulated by the Federal Energy Regulatory Commission under the Natural Gas Act. *Id.* Specific to oil pipelines, DOT regulates pipeline transportation of hazardous liquids, including crude oil and petroleum products, and the Pipeline and Hazardous Materials Safety Administration ("PHMSA") reviews oil spill response plans for, and comprehensively regulates the integrity of, onshore oil pipelines, among other things. NWP005269. *See, e.g., Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 874 (9th Cir. 2006) (discussing PHMSA's comprehensive regulation of pipeline safety).

Indeed, Plaintiffs previously recognized that regulation of oil spills falls under PHMSA's jurisdiction. As noted in *Bostick*, Plaintiffs raised their concerns regarding potential oil spills from the Gulf Coast pipeline with PHMSA. 787 F.3d at 1050. Plaintiffs' comments to the Corps during the 2012 NWP reissuance, on the other hand, did not "question[] the Corps'

focus on environmental risks from the activities authorized under the nationwide permits (rather than the environmental risks from future operations)." *Id.* Thus, in addressing Plaintiffs' failure to comment on oil spills during the 2012 NWP reissuance, the Tenth Circuit noted that even if

> the Corps knew that issuance of the nationwide permit could lead to installation of oil pipelines, which in turn could create environmental risks from oil spills. How would that knowledge have mattered to the Corps? It considered that risk to fall within another agency's responsibility.

*Id.*

That is still the case. The Corps' NEPA analysis for the 2017 NWP 12 properly addressed effects proximately caused by the authorized discharges associated with covered utility line activities. But it would be beyond the Corps' purview under NEPA to consider effects from upland construction or pipeline operations.

### C. The Corps Properly Considered Effects Associated with the Inadvertent Release of Drilling Fluid, Consistent with Its Jurisdiction.

Plaintiffs argue the Corps should have analyzed the inadvertent release of drilling fluid when reissuing NWP 12. (Doc. 107 at 16-21).

As an initial matter, in most instances, horizontal directional drilling ("HDD") crossings under WOTUS do not require Corps CWA §404 authorization, because HDD crossings avoid any discharge of dredged or fill

material into WOTUS and thus do not trigger the Corps' CWA jurisdiction. The avoidance of discharges into WOTUS is beneficial to the environment. NWP005275 (HDD "for utility line installation and replacement is an important technique for avoiding and minimizing adverse effects to jurisdictional waters … during the construction of utility lines."). Moreover, if an HDD crossing has an inadvertent return of drilling fluid during installation of the pipeline, that inadvertent release is regulated by other agencies under CWA §402, and is outside the scope of the Corps' §404 authority because drilling fluid is not dredged or fill material. 82 Fed. Reg. at 1891.

In the event of an inadvertent release of drilling fluid, other regulatory agencies will respond and work with the permittee to develop a remediation plan to contain the release and repair any damage. If the remediation plan includes activities that involve discharges into WOTUS, to ensure the remediation plan can be efficiently and effectively authorized and to minimize impacts to aquatic resources, the Corps modified NWP 12 to allow for any necessary remediation activities in WOTUS. *Id.*

In addition, District Engineers may add conditions to an NWP 12 verification, where there is the possibility of inadvertent returns, requiring activity-specific remediation plans to address these situations, should they

occur during the installation or maintenance of the utility line. NWP005274. This approach ensures appropriate mechanisms are in place should an inadvertent release of drilling fluid occur.

Plaintiffs point to a PowerPoint presentation in the record, submitted by the Corps to the Office of Management and Budget ("OMB") during interagency review. (Doc. 107 at 19). As Plaintiffs note, the presentation was provided to OMB as background and an "overview" regarding inadvertent returns, so that OMB could better understand the issue and respond to questions. *Id.*; citing NWP006778. The Corps concluded that inadvertent drilling releases are not proximately caused by discharges associated with utility line activities authorized by NWP 12. And, importantly, OMB concurred with the Corps' conclusion that inadvertent returns of drilling fluid are "outside [the Corps'] jurisdiction." NWP006779.

## IV. Conclusion.

The Corps fully complied with NEPA, the CWA, and the ESA when reissuing NWP 12 in 2017. The Court should grant the Federal Defendants' Cross-Motion for Partial Summary Judgment.

Dated: February 19, 2020      Respectfully submitted,

/s/ *Karma B. Brown*
Deidre G. Duncan (*pro hac vice*)
Karma B. Brown (*pro hac vice*)
HUNTON ANDREWS KURTH LLP

2200 Pennsylvania Avenue, NW
Washington, DC  20037
(202) 955-1500
dduncan @HuntonAK.com
kbbrown@HuntonAK.com

/s/ *Brianne C. McClafferty*
William W. Mercer
Brianne C. McClafferty
HOLLAND & HART LLP
401 North 31st Street, Suite 1500
Billings, MT  59101
(406) 252-2166
wwmercer@hollandhart.com
bcmcclafferty@hollandhart.com

*Counsel for Defendant-Intervenors American Gas Association, American Petroleum Institute, Association of Oil Pipe Lines, Interstate Natural Gas Association of America, and National Rural Electric Cooperative Association*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing NWP 12 Coalition's Reply Brief in Support of Federal Defendants' Cross-Motion for Partial Summary Judgment complies with the requirements of Local Rule 7.1(d)(2) and contains 3,237 words, excluding the parts exempted by Local Rule 7.1(d)(2)(E), according to the word count calculated by Microsoft Word 2016.

/s/ *Karma B. Brown*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2020, I filed the above pleading with the Court's electronic case management system, which caused notice to be sent to counsel for all parties.

/s/ *Karma B. Brown*