Jeffery J. Oven
Mark L. Stermitz
Jeffrey M. Roth
CROWLEY FLECK PLLP
490 North 31st Street, Ste. 500
Billings, MT 59103-2529
Telephone: 406-252-3441
Email: joven@crowleyfleck.com
        mstermitz@crowleyfleck.com
        jroth@crowleyfleck.com

Peter R. Steenland
Peter C. Whitfield
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: 202-736-8000
Email:  psteenland@sidley.com
        pwhitfield@sidley.com

*Counsel for TransCanada Keystone Pipeline, LP and TC Energy Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| NORTHERN PLAINS RESOURCE COUNCIL, BOLD ALLIANCE, NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, CENTER FOR BIOLOGICAL DIVERSITY, and FRIENDS OF THE EARTH,<br><br>      Plaintiffs,<br><br> vs.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS and LT. GENERAL TODD T. SEMONITE (in his official capacity as U.S. Army Chief of Engineers and Commanding General of the U.S. Army Chief of Engineers),<br><br>      Defendants.<br><br>TRANSCANADA KEYSTONE PIPELINE, LP, a Delaware limited partnership, and TC ENERGY CORPORATION, a Canadian Public company, THE STATE OF MONTANA, AMERICAN GAS | CV 19-44-GF-BMM<br><br>**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY TRANSCANADA KEYSTONE PIPELINE, LP AND TC ENERGY CORPORATION** |

ASSOCIATION, AMERICAN PETROLEUM
INSTITUTE, ASSOCIATION OF OIL
PIPELINES, INTERSTATE NATURAL GAS
ASSOCIATION OF AMERICA, and
NATIONAL RURAL ELECTRIC
COOPERATIVE ASSOCIATION

       Defendant-Intervenors.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................... ii

I.     Plaintiffs' Facial Challenge Cannot Target Keystone XL.............................1

II.    Plaintiffs' NEPA Claims Fail As A Matter of Law.........................................3

       A.    *Public Citizen* Limits the Corps' NEPA Obligation ............................3

       B.    Practical Realities Inform The Scope Of The Army Corps' NEPA Obligation ...............................................................................8

III.    The Army Corps Did Not Violate the ESA In Issuing NWP 12...................10

IV.    NPW 12 Complies With The Clean Water Act...........................................11

V.    CONCLUSION...............................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*,
    889 F.3d 584 (9th Cir. 2018) ................................................................14

*Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs*,
    941 F.3d 1288 (11th Cir. 2019) ............................................................6

*Ctr. for Biological Diversity v. U.S. Dep't of Hous. & Urban Dev.*,
    541 F. Supp. 2d 1091 (D. Ariz. 2008), *aff'd*, 359 F. App'x 781 (9th
    Cir. 2009) ............................................................................................7

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971), *abrogated on other grounds by Califano v.
    Sanders*, 430 U.S. 99 (1977) ...............................................................2

*Dep't of Transp. v. Public Citizen*,
    541 U.S. 752 (2004) ..............................................................................3

*Ka Makani 'O Kohala Ohana Inc. v. Water Supply*,
    295 F.3d 955 (9th Cir. 2002) ................................................................7

*Mobile Baykeeper, Inc. v. U.S. Army Corps of Eng'rs*,
    No. CIV.A. 14-0032-WS-M, 2014 WL 5307850 (S.D. Ala. Oct.
    16, 2014) ...............................................................................................9

*Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*,
    556 F.3d 177 (4th Cir. 2009) .........................................................5, 10

*Outdoor Media Grp., Inc. v. City of Beaumont*,
    506 F.3d 895 (9th Cir. 2007) ................................................................2

*Pit River Tribe v. U.S. Forest Serv.*,
    615 F.3d 1069 (9th Cir. 2010) ............................................................13

*Quechan Indian Tribe of Fort Yuma Indian Reservation v. U.S. Dep't
    of Interior*,
    547 F. Supp. 2d 1033 (D. Ariz. 2008) .................................................7

*Sierra Club, Inc. v. Bostick*,
787 F.3d 1043 (10th Cir. 2015) ..............................................6, 11, 12

*Sierra Club v. U.S. Army Corps of Eng'rs*,
803 F.3d 31 (D.C. Cir. 2015) ...............................................................6

**Statutes**

15 U.S.C. § 717f..................................................................................4

33 U.S.C. § 1344.............................................................................4, 12

49 U.S.C. § 60101, *et seq*....................................................................5

49 U.S.C. § 60102...............................................................................8

Mont. Code Ann. tit. 75, ch. 20 .........................................................10

S.D. Codified Laws ch. 49-41B .........................................................10

**Other Authorities**

18 C.F.R. § 157.14 ..............................................................................4

18 C.F.R. § 380.3 ................................................................................4

18 C.F.R. § 380.12 ..............................................................................4

49 C.F.R. § 190.1 ................................................................................8

49 C.F.R. § 195.248 ............................................................................8

Plaintiffs' reply brief largely reiterates the points raised in their opening brief in support of summary judgment. Their claims are premised on a reading of nationwide permit 12 (NWP 12) that ignores the limitations and conditions that exist to ensure qualifying uses have no more than a minimal effect on waters of the United States. Their claims require such an overly expansive reading of Clean Water Act § 404(e) as to effectively bestow upon the U.S. Army Corps of Engineers' (Army Corps) complete regulatory control over oil pipelines. TC Energy, Federal Defendants and Defendant-Intervenors demonstrated that Plaintiffs' facial challenge to NWP 12 is meritless. The points below, as well as those contained in the reply briefs filed by Federal Defendants and Defendant-Intervenors show that the Army Corps did not violate the National Environmental Policy Act (NEPA), Endangered Species Act (ESA), or the Clean Water Act (CWA) in reissuing NWP 12.

## I.  Plaintiffs' Facial Challenge Cannot Target Keystone XL

The partial summary judgment motions before this Court must be limited to facial legality of NWP 12, not whether Keystone XL's future use of NWP 12 is lawful. Plaintiffs continue to make Keystone XL-specific challenges in their briefing, but the Army Corps' processes they seek to challenge are ongoing. TC Energy submitted PCNs to the Army Corps on January 31, 2020. The submission included a full list of all crossings of waters of the United States (WOTUS), not

just those requiring preconstruction notification (PCN) verification. Because TC Energy will not commence construction through WOTUS without receiving PCN verifications,[1] the Army Corps will be able to evaluate all water crossings before construction commences. *See* Pls.' Opp'n at 6 (arguing that future analysis "of the non-PCN waterways will be futile if the pipeline has already been built through them"). There is no basis for Plaintiffs' suggestion that the Army Corps' review is predetermined because some construction activities do not require a PCN and Plaintiffs cannot overcome the presumption of regularity afforded federal agencies. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Finally, Plaintiffs cannot challenge the 2017 PCN verifications that TC Energy withdrew and the Army Corps suspended. Those previous decisions by the Army Corps have no legal effect and any challenges to those decisions are moot. *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). As noted above, TC Energy has submitted new PCNs and anticipates that the Army Corps will review them and issue its authorization decisions.

---

[1] *See Indigenous Envtl. Network v. Trump*, 4:19-cv-00028-BMM (D. Mont.), Declaration of G. Salsman (Doc. 86-1) ("TC Energy will not undertake any construction in any Waters of the United States authorized by Nationwide Permit 12 until it receives verifications of its preconstruction notifications from the Army Corps.")

## II.     Plaintiffs' NEPA Claims Fail As A Matter of Law

Plaintiffs make clear in their reply that their NEPA arguments hinge on a single legal assertion: NEPA commands the Army Corps to analyze the full scope of potential impacts of oil pipeline projects from initial siting through project operation despite a statute restricting the Army Corps' permitting authority to the regulation of dredge and fill material for activities with minimal impacts on waters. Unfortunately for plaintiffs, the Supreme Court has held that NEPA does not expand an agency's substantive, statutory authority.  Plaintiffs argue otherwise, but their claims fail as a matter of law.

### A.     *Public Citizen* Limits the Corps' NEPA Obligation

The Supreme Court reasonably limited a federal agency's obligation to consider effects from an action under NEPA to those arising from the agency's legal powers to cause such effect. *Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 770 (2004) (no obligation to consider effect "where an agency has no ability to prevent a certain effect due to its limited statutory authority over the relevant actions"). Though Plaintiffs do not dispute the holding, they challenge its applicability by suggesting that the Army Corps has veto authority over all oil pipelines that cross WOTUS just as the Federal Energy Regulatory Commission

(FERC) has over natural gas pipelines. But the two agencies' authorities could not be more different.

FERC has complete permitting authority over gas pipelines under section 7 of the Natural Gas Act, which prohibits the "construction or extension of any [natural gas] facilities" as well as the acquisition or operation of "any such facilities" unless the natural-gas company obtained from FERC "a certificate of public convenience and necessity." 15 U.S.C. § 717f(c)(1)(A). FERC's regulations governing the process for issuing a certificate of public convenience and necessity are substantial and itemize a host of factors an applicant must submit to inform the agency's decision. *See, e.g.,* 18 C.F.R. §§ 157.14, 380.3, 380.12. These items include 13 detailed resource reports. *Id.* § 380.12. FERC's issuance of a certificate is clearly the legally relevant cause of the effects of a natural gas pipeline because its authority covers the entire pipeline.

Clean Water Act § 404(e), conversely, does not grant the Army Corps siting authority over oil pipelines or authority over the transportation of crude oil through pipelines. Instead, the Corps' authority is limited to the issuance of general permits for discharges of dredged or fill material into the navigable waters for specific categories of activities with no more than minimal adverse environmental effect. 33 U.S.C. § 1344(e). The authority to approve the siting of oil pipelines rests with the states and the authority over oil pipeline safety and construction standards rests

with the Pipeline and Hazardous Materials Safety Administration (PHMSA), 49

U.S.C. § 60101, *et seq.*

Contrary to Plaintiffs' assertion, the fact that a small portion of an oil

pipeline project may need authorization under NWP 12 to cross WOTUS, does not

enlarge the scope of the Army Corps' NEPA review when reissuing NWP 12.

NWP005268 (Corps indicated the water crossings were 2.3% of a pipeline project).

The Corps' review of environmental effects under NEPA extends only to those

effects proximately related to "discharges" into WOTUS.

The Corps does not have jurisdiction over pipeline operation. The Army

Corps cannot, for example, mandate pipeline design standards, limit the flow rate

through a pipeline, or even control the process by which oil is extracted or

consumed. And it certainly cannot prohibit construction of the entire project.

Consequently, it cannot be said that the Army Corps is the legally relevant cause of

any effect Plaintiffs contend was overlooked. *See Ohio Valley Envtl. Coal. v.

Aracoma Coal Co.*, 556 F.3d 177, 197 (4th Cir. 2009) (When it is a state agency,

"and not the Corps, that has 'control and responsibility' over all aspects of [a

project] beyond the filling of jurisdictional waters," then Army Corps' decision not

to analyze impacts in uplands areas was reasonable).[2]

---

[2] A company could utilize HDD or other trenchless techniques to avoid discharges
into WOTUS altogether to avoid the need for a CWA § 404 permit. *See*

Plaintiffs point to some cases where the Army Corps has considered the impacts of oil spills from projects to suggest the Army Corps must do so for NWP 12. As Federal Defendants point out, however, each of those challenged projects could not be completed without an *individual* permit from the Army Corps because the project was wholly or substantially located in a WOTUS. Fed. Defs.' Reply at 12-13. Thus, the Army Corps' involvement in those projects was sufficient to federalize the entire project.

When courts have assessed the Army Corps obligations under NEPA for projects utilizing a nationwide permit or an individual permit where the agency's authorization relates to a small portion of the project, they have upheld the agency's limited NEPA review. *See Sierra Club, Inc. v. Bostick*, 787 F.3d 1043, 1055 (10th Cir. 2015); *Sierra Club v. U.S. Army Corps of Eng'rs*, 803 F.3d 31, 34 (D.C. Cir. 2015); *Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs*, 941 F.3d 1288 (11th Cir. 2019). This is because the Army Corps' limited role cannot federalize the entire project. Courts have reached the same outcome in analogous

---

NWPRC000406 ("The following activities normally do not usually involve a discharge of dredged or fill material and do not normally require a Section 404 permit: a. Utility line activities involving only directional drilling or boring under the waterway where the bed and banks of the waterway and wetlands are not disturbed."). This further undermines Plaintiffs' claim that the Army Corps has veto authority over an oil pipeline or would be a "but for" cause of the effects of an oil pipeline.

cases, finding that limited agency involvement in a larger project did not obligate the agency to analyze the project's impacts under NEPA. *See Ka Makani 'O Kohala Ohana Inc. v. Water Supply*, 295 F.3d 955, 960 (9th Cir. 2002) (2% federal funding of project was insufficient to trigger NEPA); *Ctr. for Biological Diversity v. U.S. Dep't of Hous. & Urban Dev.*, 541 F. Supp. 2d 1091, 1101–02 (D. Ariz. 2008), *aff'd*, 359 F. App'x 781 (9th Cir. 2009) (federal loan guarantees did not require expanded NEPA review where local "developers and planners are responsible for the number of physical structures that may have an actual effect on the watertable"); *Quechan Indian Tribe of Fort Yuma Indian Reservation v. U.S. Dep't of Interior*, 547 F. Supp. 2d 1033, 1043 (D. Ariz. 2008) (agency did not have to analyze impacts of future refinery to be constructed on land subject to federal land transfer).

Because the Army Corps' NWP 12 is not the legally relevant cause of oil pipeline authorization or construction, it did not violate NEPA by failing to consider in detail oil spill risks, climate impacts, drilling fluid releases, or related cumulative effects. Moreover, Plaintiffs have failed to identify any provision in Clean Water Act § 404(e) or the Army Corps' regulations that would permit the agency to deny the application of NWP 12 on the basis of potential climate change impacts. *See* Fed. Defs.' Reply at 9-10.

**B.**     **Practical Realities Inform The Scope Of The Army Corps' NEPA Obligation**

Plaintiffs contend Defendants are trying to "avoid reality" in highlighting that the Army Corps' authority pertains to the regulation of dredge and fill material as opposed to permitting oil pipelines through U.S. waters.  But, Plaintiffs fail to acknowledge that oil pipelines are placed well below the natural bed of a regulated water. Contrary to their representations, oil pipelines must be constructed so they are located underneath a WOTUS, not through or in the water. *See* Pls.' Opp'n at 3 (claiming that "NWP 12 is a Section 404 permit that . . . authorizes oil pipelines . . . to be built in U.S. waters"); *id.* at 10 ("NWP 12 authorizes the construction of oil pipelines *in U.S. waters*").  PHMSA regulations require a minimum cover of four feet from the top of a pipeline to the bottom of a riverbed for normal excavation. 49 C.F.R. § 195.248(a).  In the case of Keystone XL, for example, that burial depth has been increased to at least five feet below the stream bottom or wetland where trench excavation will be used and at least twenty-five feet where HDD will be used. FSEIS, Appx. G at 4 (https://2012-keystonepipeline-xl.state.gov/documents/organization/221222.pdf); 2019 Final SEIS at 2-11.[3]  Consequently, no portion of

---

[3] The purpose of PHMSA's regulations are to ensure pipeline safety, which include provisions to minimize the risk of damage to a pipeline that could result in a release to water. *See, e.g.,* 49 C.F.R. § 195.248; *see also* 49 C.F.R. § 190.1; 49 U.S.C. § 60102(a).

Keystone XL will be in a wetland or waterbody. This reality further supports the Army Corps' decision to analyze the impacts of temporary construction activities for linear utility projects in waters as opposed to the potential operational impacts of such projects.

The same reasoning applies to Plaintiffs' argument regarding the impacts of horizontal directional drilling.[4] Plaintiffs fail to acknowledge that HDD construction methods generally take place outside of jurisdictional waters, and thus outside the Army Corps' jurisdiction.[5] *See, e.g., Mobile Baykeeper, Inc. v. U.S. Army Corps of Eng'rs*, No. CIV.A. 14-0032-WS-M, 2014 WL 5307850, at *7 (S.D. Ala. Oct. 16, 2014) ("This Court cannot order the Corps to revisit the propriety of the pipeline's stream crossings in the Hamilton Creek watershed using

---

[4] TC Energy's assertions here with respect to the scope of CWA § 404(e) and HDD activities should not be confused with the separate standalone obligation of the Army Corps under CWA § 408 where the Corps is charged with making a separate determination as to whether HDD activities impair federal facilities.

[5] Plaintiffs also misstate the risks associated with drilling fluid returns. They claim each HDD location for Keystone XL poses a "substantial risk of frac-out," Pls.' Opp'n at 18, but this is not true and not supported by the record. Fed. Defs.' Reply at 13-14. They also suggest drilling mud is toxic. Pls.' Opp'n at 20. However, the Army Corps indicates that drilling fluid is "not a toxic or hazardous substance," NWP005274, and general condition 6 mandates that construction material must be free from toxic pollutants in toxic amounts. NWP005318. For Keystone XL, TC Energy committed to the use of "non-toxic drilling fluids and additives during HDD activities." 2019 Final SEIS at 4-25.

HDD methods because, again, those activities fall outside the Corps' jurisdiction conferred by § 404 of the CWA. . . .”). *See* NWP005959 (“HDD crossings avoid any discharge of dredged or fill material into waters of the U.S. and therefore do not trigger our Clean Water Act section 404 authority.”). In fact, the purpose of such a technique is to avoid impacts to waters altogether. In the absence of Army Corps jurisdiction, state and local agencies can assess HDD activities.[6] Regulation by state authorities also relieves the Army Corps from having to consider such impacts under NEPA. *See Ohio Valley Envtl. Coal.*, 556 F.3d at 197.

## III. The Army Corps Did Not Violate the ESA In Issuing NWP 12

Plaintiffs continue to ignore the protections built into NWP 12 for ESA protected species, claiming that NWP 12 clearly affects listed species. This is not so. TC Energy explained in its opening brief that NWP 12 does not exempt any activity from the ESA – it does not authorize activity that would jeopardize a protected species or adversely modify critical habitat and it does not permit any activity that may affect a listed species or critical habitat “unless ESA section 7 consultation addressing the effects of the proposed activity has been completed.”

---

[6] For example, in Montana, authorization of HDD activities resides with the Montana Department of Environmental Quality pursuant to the Major Facilities Siting Act in Title 75, Chapter 20 of the Montana Code. The South Dakota Public Utility Commission assesses HDD activity in accordance with the Energy Conversion and Transmission Facilities Act, SDCL 49-41B.

NWP000141; TC Energy Br. at 20-22. Plaintiffs contend otherwise, but the only authority they offer in support relates to previous versions of NWP 12 and statements from wildlife agencies that have since been adequately addressed. *See* Fed. Defs.' Reply at 18-19. Consequently, their argument relies on their own supposition that NWP 12 authorized activities must impact protected species. This is insufficient to overcome their legal burden.

## IV.    NPW 12 Complies With The Clean Water Act

Plaintiffs claim that NWP 12 "violates Section 404(e)'s minimal effects threshold" because a linear utility project may use NWP 12 for multiple water crossings if the crossings are "separate and distant." Pls.' Opp'n at 47-48. But as Defendants showed, the Tenth Circuit held that it is reasonable and consistent with the statute for the Corps to allow the use of NWP 12 for "separate and distant" crossings. *Bostick*, 787 F.3d at 1055-56; *see also* TC Energy Br. at 24-35 and Fed. Defs.' Reply at 5-6. Plaintiffs apparently now concede that point and do not challenge the Corps' "legal interpretation of Section 404." Pls.' Opp'n at 48-49, n.17. Instead, their current claim is that the Corps "ignored" commenters in the rulemaking who complained that there is "no definition of 'separate and distant'"

that can be applied "in any meaningful way." Pls.' Opp'n at 49. This claim, too, fails.

The Corps *did* acknowledge that some commenters wanted "thresholds for determining when crossings … are 'separate and distant,'" but it declined to set "national thresholds" because they vary depending on "topography, geology, hydrology, soils, and the characteristics of wetlands, streams and other aquatic resources." NWP005277-NWP005278. The Corps added that district offices may establish local guidelines based on local conditions. NWP005278. That decision is not arbitrary and capricious, and Plaintiffs' argument that it is "counter to the evidence in the record" is makeweight. Pls.' Opp'n at 50-51. Plaintiffs' supposed "evidence" that the absence of national thresholds has permitted the misuse of NWP 12 by linear utility projects with significant adverse effects is "the Corps' 2012 verifications of TC Energy's Gulf Coast pipeline," Pls.' Opp'n at 49—the very application of NWP 12 that the Tenth Circuit *upheld* in *Bostick*. *See* 787 F.3d at 1055-56.

Plaintiffs also suggest that NWP 12 cannot be used for oil pipelines because the CWA, 33 U.S.C. § 1344(e), prohibits use of nationwide permits for a category of activities that are "too harmful to the environment." Pls.' Opp'n at 12. As TC Energy explained in its opening brief, there is no basis for concluding oil pipelines pose a significant impact to water resources or are too harmful to the environment.

NWP005297-98 ("[m]ost causes and sources of impairment are not due to activities regulated under Section 404 of the Clean Water Act or Section 10 of the Rivers and Harbors Act of 1899"). For rivers and streams, the "top 10 causes were pathogens, sediment, nutrients, mercury, organic enrichment/oxygen depletion, polychlorinated biphenyls, metals (other than mercury), temperature, habitat alterations, and flow alteration(s)." *Id.*

Finally, Plaintiffs reprise their claim that NWP 12 is facially invalid because "in most cases there is no project-level review" of whether the water crossings of a linear utility project are "separate and distant" or have more than minimal cumulative effects. Pls.' Opp'n at 50-51. But once again, they fail to identify any major utility projects that have escaped PCN review, and they nowhere refute (or even acknowledge) the Corps' explanation that the "PCN thresholds have been effective in identifying the proposed NWP 12 activities that should be reviewed by district engineers on a case-by-case basis." NWP005276; *see also* TC Energy Br. at 25-26.

Instead, Plaintiffs spend pages speculating that the "district engineers' purported project-wide cumulative effects analysis" of the Keystone XL water crossings will be "entirely fictional." Pls.' Opp'n at 50-54. That speculation is improper. *See Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1082 (9th Cir. 2010) ("we presume that agencies will follow the law"). And it cannot establish

that NWP 12 is facially invalid, because a facial challenge can succeed only if there are "no set of circumstances" under which the regulation would be valid. *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 599 (9th Cir. 2018) (citing *Reno v. Flores*, 507 U.S. 292, 301 (1993)).

As explained above an in our Opening Brief, Plaintiffs have not and cannot show that NWP 12 is invalid in all of its applications. Accordingly, Defendants are entitled to summary judgment on Counts 1, 2, and 4.

## V. CONCLUSION

For the reasons stated above, TC Energy requests the Court grant its partial motion for summary judgment and deny Plaintiffs' motion.

Dated: February 19, 2020            Respectfully Submitted,

CROWLEY FLECK PLLP          SIDLEY AUSTIN LLP

*/s/ Jeffery J. Oven*             */s/ Peter R. Steenland, Jr.*
Jeffery J. Oven                Peter R. Steenland, Jr.
Mark L. Stermitz              Peter C. Whitfield
Jeffrey M. Roth               1501 K Street, N.W.
490 North 31st Street, Ste. 500    Washington, DC 20005
Billings, MT 59103-2529        Telephone: 202-736-8000
Telephone: 406-252-3441        Email:  psteenland@sidley.com
Email:   joven@crowleyfleck.com           pwhitfield@sidley.com
         mstermitz@crowleyfleck.com
         jroth@jcrowleyfleck.com

*Counsel for TransCanada Keystone Pipeline LP and TC Energy Corporation*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2)(E), I certify this brief contains 3,248 words, excluding the caption, pertinent tables, and the certificates of service and compliance.

*/s/ Jeffery J. Oven*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served today via the Court's

CM/ECF system on all counsel of record.

*/s/ Jeffery J. Oven*