PRERAK SHAH
JEAN E. WILLIAMS
Deputy Assistant Attorneys General

BENJAMIN J. GRILLOT
BRIDGET KENNEDY MCNEIL
KRISTOFOR R. SWANSON
Environment & Natural Resources Division
U.S. Department of Justice

[contact information in signature block]
*Attorneys for Federal Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| **Northern Plains Resource Council**, et al., | Case No. 4:19-cv-44-BMM |
| Plaintiffs, | |
| v. | **Federal Defendants' Motion for Partial Stay Pending Appeal** |
| **U.S. Army Corps of Engineers**, et al., | |
| Defendants, | |
| and | |
| **TransCanada Keystone Pipeline, LP**, et al., | |
| Defendant-Intervenors. | |

# TABLE OF CONTENTS

Introduction ................................................................................................ 1

Standard .................................................................................................... 3

Factual Background .................................................................................... 3

    I.    Nationwide Permit 12 .................................................................. 3

    II.   Plaintiffs' Requested Relief ........................................................ 6

    III.  The Court's April 15 Order ......................................................... 8

Argument ................................................................................................... 8

    I.    Federal Defendants Are Likely to Prevail on Appeal of the
            Court's April 15 Order ................................................................ 9

    II.   The Public Interest Weighs Heavily in Favor a Stay ............... 16

    III.  The Corps Will Be Irreparably Harmed Absent a Stay. ........... 19

    IV.  A Partial Stay Will Not Harm Plaintiffs' Interests. ................. 20

Conclusion .............................................................................................. 21

## TABLE OF AUTHORITIES

**Cases**

*Albemarle Paper Co. v. Moody*,
  422 U.S. 405 (1975) ...........................................................................10

*Cal. Cmtys. Against Toxics v. U.S. Envtl. Prot. Agency*,
  688 F.3d 989 (9th Cir. 2012) ...........................................................11

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ...........................................................................13

*City & Cty. of San Francisco v. Trump*,
  897 F.3d (9th Cir. 2018) ............................................................. 15, 19

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*,
  789 F.3d 1075 (9th Cir. 2015) ...........................................................13

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ...........................................................................14

*Dept. of Homeland Sec. v. New York*,
  140 S. Ct. 599 (2020) ...........................................................................13

*East Bay Sanctuary Covenant v. Barr*,
  934 F.3d 1026 (9th Cir. 2019) ...........................................................13

*Fordyce v. City of Seattle*,
  55 F.3d 436 (9th Cir. 1995) ...........................................................10

*Friends of Santa Clara River v. U.S. Army Corps of Eng'rs*,
  887 F.3d 906 (9th Cir. 2018) ...........................................................1, 14

*Idaho Farm Bureau Fed. v. Babbitt*,
  58 F.3d 1392 (9th Cir. 1995) ...........................................................11

*Lair v. Bullock*,
  697 F.3d 1200 (9th Cir. 2012) ...........................................................3

*Lopez v. Heckler*,
  713 F.2d 1432 (9th Cir. 1983) ...........................................................3

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) ...........................................................................12

*Nat'l Wildlife Fed. v. Espy*,
 45 F.3d 1337 (9th Cir. 1995) ................................................................9

*Nat'l Wildlife Fed. v. Nat'l Marine Fisheries Serv.*,
 886 F.3d 803 (9th Cir. 2018) ........................................................ 12, 13

*Nken v. Holder*,
 556 U.S. 418 (2009) ............................................................................3

*Powell v. National Bd. of Medical Examiners*,
 364 F.3d 79 (2d Cir. 2004).................................................................10

*Price v. City of Stockton*,
 390 F.3d 1105 (9th Cir. 2004).............................................................13

*Qureshi v. United States*,
 600 F.3d 523 (5th Cir. 2010) ..............................................................10

*Rapanos v. United States*,
 547 U.S. 715 (2006) ............................................................................4

*Sierra Club v. Trump*,
 929 F.3d 670 (9th Cir. 2019) ................................................................3

*Town of Chester v. Laroe Estates, Inc.*,
 137 S. Ct. 1645 (2017) ...................................................................1, 14

*United States v. Midway Heights Cty. Water Dist.*,
 695 F. Supp. 1072 (E.D. Cal. 1988) .....................................................3

*Virginia Soc'y for Human Life v. Fed. Election Comm'n*,
 263 F.3d 379, 394 (4th Cir. 2001). .....................................................14

*Westlands Water Dist. v. U.S. Dep't of the Interior*,
 376 F.3d 853 (9th Cir. 2004) ................................................................9

*Woe v. Cuomo*,
 801 F.2d 627 (2d Cir. 1986)................................................................10

**Statutes**

5 U.S.C. § 703................................................................................14

5 U.S.C. § 705................................................................................14

5 U.S.C. § 706................................................................................14

33 U.S.C. § 1344(e) ...............................................................................................3

33 U.S.C. § 403 ...............................................................................................5, 18

**Rules**

Fed. R. Civ. P. 54(b) ..........................................................................................2

**Regulations**

33 C.F.R. § 330.1(e)(1) ....................................................................................18

33 C.F.R. § 330.2(b) ...........................................................................................4

82 Fed. Reg. 1860, 1868, 1985–86 (Jan. 6, 2017) ..........................................4

**Other Authorities**

1977 U.S.C.C.A.N. 4424 ...............................................................................4, 16

## INTRODUCTION

The Court should stay pending appeal those portions of its April 15, 2020, Order that vacate Nationwide Permit 12 ("NWP 12") and broadly enjoin the Corps from authorizing any dredge or fill activities under the Permit.  At the very least, the Court should stay its vacatur and injunction as they relate to anything other than the Keystone XL pipeline.

Federal Defendants are likely to prevail on their appeal.  The Court erred in issuing these broad remedies for several reasons.  For one, the Court enjoined thousands of projects undertaken across the country to provide needed and important services to innumerable segments of the public.  Neither the proponents of those projects, nor the members of the public they serve, are parties in this case. And the Court undertook no analysis of, and there is no record to support, those remedies.  Perhaps recognizing those potential implications, Plaintiffs explicitly disavowed such broad, far-reaching relief.  Indeed, the Court had earlier acknowledged that "Plaintiffs do not ask the Court to vacate NWP 12."  Nov. 7, 2019, Order 4, ECF No. 59.  Instead, Plaintiffs alleged injuries relating only to the Keystone XL pipeline.  As a result, even if they had requested it, Plaintiffs did not establish standing to receive the broad remedies that the Court ultimately issued. *See Friends of Santa Clara River v. U.S. Army Corps of Eng'rs*, 887 F.3d 906, 917 (9th Cir. 2018) (quoting *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017)).  For the reasons explained in Federal Defendants' summary

judgment papers, the Court also erred in ruling in Plaintiffs' favor on the Endangered Species Act claim.

Further, the balance of the harms weighs entirely in favor of a stay. The Court has eliminated Nationwide Permit 12 for use by any utility line project anywhere in the country, which has extraordinary and immediate implications for numerous projects. Plaintiffs, by contrast, alleged injuries relating to only a single project: the Keystone XL pipeline.

Of course, even putting aside granting a stay, the Court has the authority to *sua sponte* revise its remedy in light of the considerations set forth in this motion for a stay. *Cf.* Fed. R. Civ. P. 54(b) (recognizing that an interlocutory order like the one at issue "may be revised at any time before the entry of a [final] judgment"). In order to ensure that the Court retains the authority to do so and to give the Court the time to review this Motion and any related papers, Federal Defendants are not filing a notice of appeal at this time, though the Solicitor General has authorized such an appeal. Federal Defendants are concurrently moving to expedite consideration of this Motion to Stay, and respectfully request that the Court rule on this Motion or otherwise grant relief from the injunction no later than **May 11, 2020**. Absent relief, Federal Defendants will file a notice of appeal on the following day and will seek a stay pending appeal from the Court of Appeals.

We have conferred with counsel for the other parties regarding the stay pending appeal.  Plaintiffs oppose relief from Paragraphs 5 and 6 of the Court's April 15 Order.  Defendant-Intervenors support the motion.

## STANDARD

In determining whether to issue a stay pending appeal, courts apply a standard similar to that used to review a motion for a preliminary injunction.  *Lair v. Bullock*, 697 F.3d 1200, 1202, 1203 n.2 (9th Cir. 2012); *United States v. Midway Heights Cty. Water Dist.*, 695 F. Supp. 1072, 1076 (E.D. Cal. 1988).  On a motion to stay pending appeal, the Court considers

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Sierra Club v. Trump*, 929 F.3d 670, 687 (9th Cir. 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  In cases involving the Government, "the public interest is a factor to be strongly considered."  *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983).

## FACTUAL BACKGROUND

### I.    Nationwide Permit 12

This case involves the U.S. Army Corps of Engineers' Nationwide Permit 12, a general permit under Section 404(e) of the Clean Water Act.  *See* 33 U.S.C. § 1344(e).  Section 404(e) authorizes the Corps to issue general permits "for any

category of activities involving discharges of dredged or fill material if the [Corps] determines that the activities in such category are similar in nature, will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effect on the environment." § 1344(e)(1). The provision is based upon Congress's conclusion that requiring individual Section 404 permits for routine activities imposes unnecessary delay and administrative burdens on the public and the Corps. H.R. Rep. No. 95-830, at 38, 98, 100 (1977) (Conf. Rep.), *reprinted in* 1977 U.S.C.C.A.N. 4424.

Nationwide permits are general permits that authorize activities on a nationwide basis. 33 C.F.R. § 330.2(b). They are aimed at advancing Congress's goal "to regulate with little, if any, delay or paperwork certain activities having minimal impacts." § 330.1(b). They uphold environmental protections while maximizing administrative efficiency.

"The burden of federal regulation on those who would deposit fill material in locations denominated 'waters of the United States' is not trivial." *Rapanos v. United States*, 547 U.S. 715 (2006). Since 1977, Nationwide Permit 12 has been designed to reduce what could otherwise be individual permit-based administrative burdens and delays associated with "the construction, maintenance, repair, and removal of utility lines and associated facilities in waters of the United States." Nationwide Permits, 82 Fed. Reg. 1,860, 1,868, 1,985–86 (Jan. 6, 2017). "Utility

line" is defined to include electric, telephone, internet, radio, and television cables, lines, and wires, as well as oil or gas pipelines.  *Id.* at 1,985.

The Permit authorizes an activity if it "does not result in the loss of greater than ½-acre of waters of the United States for each single and complete project." *Id.*  There also "must be no change in pre-construction contours of waters of the United States."  *Id.*  For linear projects like pipelines that cross "a single or multiple waterbodies[1] several times at separate and distant locations, each crossing is considered a single and complete project for purposes of [nationwide permit] authorization."  *Id.* at 2,007.  Nationwide Permit 12 requires a pre-construction notice to the Corps district engineer "prior to commencing the activity" if, among other reasons, the "discharges [will] result in the loss of greater than 1/10-acre of waters of the United States."  *Id.* at 1,986.  The Permit is also subject to thirty-two General Conditions.  *See id.* at 1,998–2,005.  Among those is General Condition 18, which relates to endangered and threatened species, which expressly provides, among other things, that "[n]o activity is authorized under any NWP which 'may affect' a listed species or critical habitat, unless ESA section 7

---

1 "For purposes of the [nationwide permits], a waterbody is a jurisdictional water of the United States."  82 Fed. Reg. at 2,008.  That is, one that is subject to regulation under CWA Section 404 or Section 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 403.  Nationwide Permit 12 could also authorize, with pre-construction notice and verification, crossing of navigable waters under Section 10.  82 Fed. Reg. at 1,985–86.  Plaintiffs, however, focused their case only on wetlands.

5

consultation addressing the effects of the proposed activity has been completed."
*Id.* at 1,999.

## II.     Plaintiffs' Requested Relief

Plaintiffs filed suit challenging the Corps' issuance of Nationwide Permit 12 as having violated the National Environmental Policy Act (Count One), the Clean Water Act (Count Two), and the Endangered Species Act (Count Four).  *See* Am. Compl. ¶¶ 191–205, 218–27, ECF No. 36.  The suit also challenges purported Corps verifications under Nationwide Permit 12 related to construction of the Keystone XL pipeline (Counts Three and Five).   *See* Am. Compl. ¶¶ 206–17, 228–36.  Counts Three and Five are stayed pending further action from the Corps.  *See* Order on Parties' Stipulation, ECF No. 56.

The Amended Complaint sought relief limited to the Keystone XL pipeline. In addition to declaratory relief and a remand of the Nationwide Permit to the Corps, Plaintiffs asked the Court to vacate only the "Corps verifications or other approval of Keystone XL under NWP 12." [2]  *See* Am. Compl. at 88.  The Amended Complaint's request for injunctive relief is limited to an "injunction enjoining the Corps from using NWP 12 to authorize the *construction of the Keystone XL pipeline* in waterbodies or wetlands, or otherwise verifying or approving *the*

---

[2] There are currently no Keystone-specific verifications.  TC Energy's February 2020 pre-construction notices are still pending before the Corps.  TC Energy had previously withdrawn its 2017 pre-construction notices and the Corps had suspended its 2017 verifications of those notices.  *See* Am. Compl. ¶¶ 189–90.

*Keystone XL pipeline* under NWP 12, and enjoin any activities in furtherance of pipeline construction." *Id.* (emphasis added).

In opposing intervention sought by the State of the Montana, Plaintiffs argued that the case would not impact the State's interest in building or repairing utility projects because the case "concerns only" the application of Nationwide Permit 12 to oil pipelines.  Pls.' Resp. to State of Montana Mot. to Intervene 3, ECF No. 50.  Plaintiffs explicitly stated that they "have *not* sought to have NWP 12 broadly enjoined; rather, they seek narrowly tailored relief to ensure adequate environmental review of oil pipelines, especially Keystone XL." *Id.* (emphasis added).

Recognizing the limited and narrow nature of Plaintiffs' requested relief, the Court denied intervention as of right for the State of Montana and a coalition of interest groups, expressly noting that "Plaintiffs do not ask the Court to vacate NWP 12.  (See Doc. 36 at 87-88.)  Plaintiffs seek instead declaratory relief as to NWP 12's legality. (Id.)  Montana and the Coalition could still prospectively rely on the permit until it expires on its own terms in March 2022, even if Plaintiffs prevail on the merits."  Nov. 7, 2019, Order at 4–5.

Plaintiffs reiterated in their summary judgment papers that they only "asked the Court to declare that the Corps' issuance of NWP 12 violated the CWA, NEPA, and the ESA; remand NWP 12 to the Corps for compliance with these laws; declare unlawful and vacate the Corps' use of NWP 12 *to approve Keystone XL*;

and enjoin activities *in furtherance of Keystone XL's construction*."  *See* Pls.'

Reply in Supp. of Partial Summ. J. 56–57 (emphasis added), ECF No. 107.

Plaintiffs expressly underscored that their case "is *not meant to affect other uses of*

*NWP 12* that provide a public benefit and would have only minimal environmental

impacts."  *Id.* at 57 (emphasis added).  When the State of Montana again presented

the possibility that Plaintiffs were seeking something more, Plaintiffs responded:

"Not so."  *Id.* at 56.

## III.    The Court's April 15 Order

On April 15, 2020, the Court resolved the Parties' cross-motions for

summary judgment on Counts One, Two, and Four.  *See* April 15, 2020, Order,

ECF No. 130.  After finding a violation of the Endangered Species Act—and

despite Plaintiffs' clear statements for only their previously requested and narrowly

tailored relief—the Court remanded the Permit to the Corps; vacated the Permit;

and enjoined the Corps "from [authorizing] *any* dredge or fill activities under NWP

12" until completion of the remand.  *See* Order at 26 (emphasis added).

## ARGUMENT

The Court should stay pending appeal those portions of its Order that vacate

Nationwide Permit 12 and broadly enjoin the Corps from authorizing any dredge

or fill activities under the Permit.  Specifically, Paragraphs 5 and 6 at the end of the

Court's opinion provide unjustified and overbroad relief.  *See* Order at 26.  Federal

Defendants are likely to prevail on their appeal because the Court provided no

meaningful opportunity to oppose—and undertook no analysis supporting the issuance of—either remedy.  (Indeed, on the express rationale that Plaintiffs had not sought vacatur of Nationwide Permit 12, the Court denied intervention of right as to the State of Montana and other entities concerned that broad relief might be entered.)  The Court's remedies have nationwide effect, are extremely disruptive, and are contrary to the public interest.  Plaintiffs, by contrast, have alleged injuries emanating from only the Keystone XL pipeline.  Thus, though a stay of the Court's vacatur and injunction on the whole is appropriate, a stay of, at a minimum, any non-Keystone-related remedy would not harm Plaintiffs' interests, as they themselves have defined them.

## I.     Federal Defendants Are Likely to Prevail on Appeal of the Court's April 15 Order.

Federal Defendants are likely to prevail on their appeal.  Vacatur and permanent injunctions are equitable remedies that the Ninth Circuit reviews for abuse of discretion.  *See Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995).  The Court's ruling on the merits of Plaintiffs' claims would be reviewed de novo.  *Westlands Water Dist. v. U.S. Dep't of the Interior*, 376 F.3d 853, 865 (9th Cir. 2004).  Federal Defendants are likely to prevail on appeal for four reasons.

First, the Court vacated the Permit and broadly enjoined the Corps without any notice or meaningful opportunity for the Corps to provide facts or argument in opposition to those remedies.  Plaintiffs explicitly sought to vacate only "the

Corps' use of NWP *to approve Keystone XL*."  Pls.' Reply in Supp. of Partial Summ. J. at 56 (emphasis added); Am. Compl. at 88.  The Court previously acknowledged that "Plaintiffs do not ask the Court to vacate NWP 12."  Nov. 7, 2019, Order at 4.  Similarly, Plaintiffs explicitly stated that they "have *not* sought to have NWP 12 broadly enjoined."  Pls.' Resp. to State of Montana Mot. to Intervene at 3 (emphasis added).  Instead, they sought to enjoin only "activities *in furtherance of Keystone XL's construction*."  Pls.' Reply in Supp. of Partial Summ. J. at 57 (emphasis added); Am. Compl. at 88.  Thus, no party could reasonably have expected vacatur and a broad injunction as possible remedies on summary judgment.  The granting of unrequested, overbroad relief without providing the opposing party any notice was clear error.  *See Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir. 2004) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424 (1975)), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004).  Those portions of the Court's Order vacating the Permit and broadly enjoining the Corps were therefore an abuse of discretion.  *See Fordyce v. City of Seattle*, 55 F.3d 436, 441–42 (9th Cir. 1995) (abuse of discretion in granting unrequested relief without opportunity to be heard); *Qureshi v. United States*, 600 F.3d 523, 526 (5th Cir. 2010) (permanent injunction without notice); *Woe by Woe v. Cuomo*, 801 F.2d 627, 629 (2d Cir. 1986) (same).

The lack of fair notice regarding vacatur is significant because "[w]hether agency action should be vacated depends on [1] how serious the agency's errors

are and [2] the disruptive consequences of an interim change that may itself be changed." *Cal. Cmtys. Against Toxics v. U.S. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (internal quotation marks and citation omitted).  Where "'equity demands, [a] regulation can be left in place while the agency follows the necessary procedures' to correct its action." *Id.*; *see also* Order, *Upper Mo. Waterkeeper v. U.S. EPA*, No.16-52-GF-BMM, ECF No. 184 (D. Mont. July 16, 2019) (Morris, J.) (weighing equities, remanding, and staying vacatur).  Even serious errors have been remanded without vacatur when the consequences of vacatur—whether environmental, economic, or practical—would be significant.  *See Cal. Cmtys. Against Toxics*, 688 F.3d at 993–94 (vacatur would have delayed building a power plant and disrupted local power supply); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405–06 (9th Cir. 1995) (vacatur would have potentially "wiped out" a snail species listed as endangered).

Had the Corps been given the opportunity, it would have explained why the Court should not vacate Nationwide Permit 12.  For one, the error that the Court identified is not serious enough to require vacatur.  After a voluntary programmatic consultation on an earlier iteration of Nationwide Permit 12, the Corps received a "no jeopardy" biological opinion from the National Marine Fisheries Service in 2014.  NWP030588.  For the 2017 Permit, the Corps carried forward all of the monitoring and mitigation measures recommended in that opinion, except three

11

that National Marine Fisheries Service had itself determined were infeasible. NWP026529, NWP026555.  Nationwide Permit 12 is also structured to ensure site-specific consultation for activities that may affect listed species (such as the detailed ESA Section 7 consultation done for the Keystone XL pipeline), and there are many regional and local protections already in place for listed species.  *See, e.g.* NWP005326–27, NWPRC00055; Decl. of Jennifer Moyer ("Moyer Decl.") ¶ 6 (noting consultations undertaken for activities authorized under the Permit) (attached to this motion).  As to the equities—and as explained further below— vacatur of Nationwide Permit 12 is extremely disruptive to the Corps and to governmental and private entities constructing and repairing critical utility line projects across the country, regardless of whether those project occur anywhere close to protected species.  *See infra* at 16–20.

Second, Federal Defendants are likely to prevail on appeal because the Court undertook no analysis to support its broad-reaching injunction, or any other.  The Supreme Court has held that an "injunction should issue only if the traditional four-factor test is satisfied."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010).  The Ninth Circuit has curtailed that inquiry somewhat in Endangered Species Act cases.  *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886

12

F.3d 803, 817–18 (9th Cir. 2018).[3]  Even then, however, there is no automatic entitlement to an injunction for Endangered Species Act violations.  *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1090–91 (9th Cir. 2015). Rather, a plaintiff must still show likely irreparable harm to justify imposition of an injunction.  *Id.*  Likewise, principles of equity require that an injunction be "no more burdensome to the defendant than necessary."  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).  Injunctions must be "narrowly tailored . . . to remedy only the specific harms shown by the plaintiffs, rather than 'to enjoin all possible breaches of the law.'"  *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (citation omitted); *Nat'l Wildlife Fed'n*, 886 F.3d at 823 (acknowledging in the ESA context that injunctions must be narrowly tailored and that an overly broad injunction is an abuse of discretion).  And the Ninth Circuit has indicated that nationwide injunctions are appropriate only where necessary to remedy a plaintiff's asserted harm.  *See E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1028 n.4, 1029 (9th Cir. 2019); *cf. Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J. concurring) ("Universal injunctions have little basis in traditional equitable practice.").

Similarly, "[n]othing in the language of the [Administrative Procedure Act]" requires an unlawful regulation be "set[ ] aside . . . for the entire country."  *Virginia*

---

[3] The United States reserves its rights to seek further review of that decision's holding in this regard, as may prove necessary.

*Soc'y for Human Life v. FEC*, 263 F.3d 379 (4th Cir. 2001). That position is grounded in the APA's text, structure, and history. Section 703, which governs the "form of proceeding for judicial review," contemplates "form[s] of legal action, including . . . writs of prohibitory or mandatory injunction," that have long been limited to the parties. 5 U.S.C. § 703. Section 705, which permits preliminary injunctions, incorporates the traditional standard that such relief be limited as "necessary to prevent irreparable injury," which necessarily applies only to the parties. 5 U.S.C. § 705. And Section 706, where the "set aside" language is found, does not address the scope of remedial orders at all. *See* 5 U.S.C. § 706.

Third, even if the Court had applied the appropriate injunction and vacatur standards, Plaintiffs did not allege an injury that would have entitled them to nationwide relief. "'[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Town of Chester*, 137 S. Ct. at 1650 (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 724 (2008)); *Friends of Santa Clara River*, 887 F.3d at 917. Standing, in turn, requires a plaintiff to show, among other things, an injury-in-fact. *Friends of Santa Clara River*, 887 F.3d at 918. Here, however, Plaintiffs only alleged harms emanating from the Keystone XL pipeline. *See* Am. Compl. ¶¶ 23–29*; see also, e.g.,* Decl. of Kenneth R. Midkiff ¶¶ 9–12, ECF No. 73-7. Plaintiffs could not have established standing for an injunction applying to thousands of other unidentified utility projects, even if they had sought one. The Court's injunction was therefore an

14

abuse of discretion.  *See City & Cty. of San Francisco v. Trump*, 897 F.3d at 1231, 1244–45 (9th Cir. 2018) (district court abused its discretion in issuing a nationwide injunction because the plaintiffs' "tendered evidence is limited to the effect of the Order on their governments and the State of California" and because "the record is not sufficiently developed on the nationwide impact of the Executive Order").

Fourth, the Court erred in concluding that the Corps' "no effect" determination was arbitrary and capricious.  The Court disregarded key elements Nationwide Permit 12's structure that the Corps reasonably found would ensure that the Permit does not authorize any activity that may affect protected species or critical habitat.  These elements include General Condition 18, which the Court incorrectly determined delegated the Corps' Endangered Species Act responsibilities to applicants; in fact, the condition is purposefully set at a much lower threshold to ensure the Corps is notified of every project that "might affect" a species in the vicinity of the planned work, and allows the Corps to evaluate which of those activities "may affect" protected species or habitat.  The Court also unreasonably ignored the additional protections imposed through regional conditions and regional consultations already conducted between Corps districts on protected species in their respective jurisdictions.  Federal Defendants are likely to prevail on appeal.

15

## II.     The Public Interest Weighs Heavily in Favor a Stay.

A stay of the Court's vacatur and injunction would also be in the public interest.  By its terms, the Court's remedy currently forbids any use of Nationwide Permit 12 for any possible project anywhere in the country.

Nationwide Permit 12 applies to more than just activities associated with the construction of new oil pipelines.  *See* Moyer Decl. ¶¶ 2, 5, 11, 17.  The Permit authorizes minimal fill of waters of the United States associated with the construction, maintenance, repair, or removal of any utility line, including electric, internet, and cable lines and wires.  82 Fed. Reg. at 1,985–86.  For example, under the 2017 Permit, the Corps has verified authorization for work associated with a fiber optic cable upgrade project in Valley County, Montana, and for work associated with improvements to a wastewater management system in Chouteau County.  Moyer Decl. ¶ 5.  A prior version of the Permit was relied upon for work associated with laying fiber optic cable to serve the Butte school district, and for work associated with removal of a tree from an exposed and leaking water line along the Tongue River.  Moyer Decl. ¶ 17.

The Corps estimates that there are approximately 5,500 pre-construction notices currently before its various district offices awaiting verifications.  Moyer Decl. ¶ 7.  Many likely have nothing to do with oil and gas pipelines at all.  *See* Moyer Decl. ¶ 17.  And it is likely only a small percentage implicate potential harms to listed species.  *See* Moyer Decl. ¶ 6.  Because of the Court's April 15

Order, the Corps will not be able to verify those pre-construction notices and work cannot be authorized under the Permit.

Nationwide Permit 12 also authorizes some 2,500 activities per year without requiring any notification to the Corps.  Moyer Decl. ¶ 3.  Under the Permit's terms, these would be ones for which any impacts to waters of the United States would be less than 1/10 of an acre, and would not be ones that "might affect" a listed species or meet any of the other of the Permit's or General Conditions' notification requirements.  *See* 82 Fed. Reg. at 1,986, 1,998–2,005.  As it currently stands, the Court's vacatur of Nationwide Permit 12 prevents private parties from relying on the Permit for those activities, without regard to the type of utility line at issue or whether the project at issue is opposed by Plaintiffs or anyone else.

Without Nationwide Permit 12, and in the absence of any other applicable general permit, the prospective permittees for those projects will likely need to apply for an individual permit.  The injunction thus operates to require a cumbersome individualized permitting process for thousands of similar projects, in contravention of the statutory design.  Congress enacted Section 404(e) based upon its conclusion that requiring individual Section 404 permits for routine activities imposes unnecessary delay and administrative burdens on the public and the Corps.  H.R. Rep. No. 95-830, at 38, 98, 100 (1977) (Conf. Rep.), *reprinted in* 1977 U.S.C.C.A.N. 4424.  But, as a result of the April 15 Order, any utility line project impacting even less than 1/10 of an acre of waters of the United States over

17

the entirety of the line may now require an individual Section 404 permit.  *See* Moyer Decl. ¶ 8.  The Corps estimates that each of those permits—of which there could now be thousands per year—costs the applicant, on average, $26,000 and takes the Corps, on average, 264 days to process.  Moyer Decl. ¶¶ 12, 13.  Other studies have estimated the costs to be higher.  Moyer Decl. ¶ 12; *see Rapanos*, 547 U.S. at 721.  The Corps estimates it would take its 1,250 regulatory project managers 1.5 years just to process (as standard individual permits) all the Nationwide Permit 12 pre-construction notices currently pending before the Corps or otherwise expected during the remainder of 2020.  Moyer Decl. ¶¶ 14, 15.  The impacts of that additional time on the nation's utility line infrastructure are significant.  *See* Moyer Decl. ¶¶ 9–11.

Relatedly—and in addition to the prospective unavailability of the Permit— the Court's Order creates a significant amount of legal uncertainty for the regulated community and the public regarding existing or pending projects.  For example, Nationwide Permit 12 also authorized utility line crossings of navigable waters under Section 10 of the Rivers and Harbors Act.  *See* 82 Fed. Reg. at 1,986; 33 U.S.C. § 403.  Absent the Permit, those crossings are now likely without a valid authorization under the statute.  *See* Moyer Decl. ¶ 18.  For similar reasons, the Court's vacatur of the entire Permit makes it unclear whether the Corps maintains the ability to enforce any environmental protections in the special conditions contained in verifications the Corps has issued under the 2017 Permit.  *See* Moyer

Decl. ¶ 19.  As of April 15, there were more than 38,000 of these verifications. Moyer Decl. ¶ 4.

In addition, the Corps has, pursuant to its regulations, forty-five days within which to act on a completed pre-construction notice submission.  *See* 33 C.F.R. § 330.1(e)(1).  With no Corps action within those forty-days, the activity is presumed to be authorized under the Nationwide Permit.  *Id.*  The effect of the Court's Order on that normal regulatory process is unclear.  Some regulated parties may reasonably interpret the absence of action by the Corps as authorization under Nationwide Permit 12, when in fact the Court's injunction appears to forbid the Corps from granting such authorization.  And this is to say nothing of governmental or private entities (big or small) that, in the days following April 15 (and unaware of the Court's order), commenced work that would not have required any prior notification to the Corps under Nationwide Permit 12.  Those legal uncertainties, and the other harms discussed above, warrant a stay.

### III.   The Corps Will Be Irreparably Harmed Absent a Stay.

The Corps will also be directly and irreparably harmed absent a stay. Because Nationwide Permit 12 is now likely unavailable, any applications for discharges of dredge or fill material in waters of the United States associated with the construction of a utility line will likely need to be processed under the more labor-intensive and time-consuming requirements for individual permits.  *See* Moyer Decl. ¶ 8.  The Corps estimates, based upon Permit verifications since

19

March 2017, that this could amount to 2,800 individual permit applications per year—seven per day—until the Permit's expiration in March 2022.  *See* Moyer Decl. ¶ 15.  The Corps, however, only employs about 1,250 regulatory project managers across the country.  Moyer Decl. ¶ 14.  And each is already expected to be able to maintain a portfolio of up to sixty active permitting applications.  Moyer Decl. ¶ 14.  The burden on the Corps that would result from having to process all of those permit applications is precisely what Congress sought to avoid in enacting Section 404(e).

**IV.    A Partial Stay Will Not Harm Plaintiffs' Interests**.

Finally, a balance of the harms weighs heavily in favor of a stay of the April 15 Order's vacatur and injunction.  The Court has (perhaps unintentionally) eliminated any potential use of Nationwide Permit 12, for any purpose, anywhere in the country.  The harms Plaintiffs alleged in this case, by contrast, emanate solely from the Keystone XL pipeline.  *See* Am. Compl. ¶¶ 23–29 (allegations of harm to members' interests limited to impacts of the Keystone XL pipeline); *see also, e.g.,* Decl. of Kenneth R. Midkiff ¶¶ 9–12.  Thus, Plaintiffs did not allege any interest that could be harmed by a stay as to all the other potential uses of Nationwide Permit 12 and it is only speculative that they could have done so.

Nor would a stay of the vacatur and injunction with respect to the Keystone XL pipeline harm Plaintiffs' interest.  As the Court is aware, an extensive Endangered Species Act Section 7 consultation process has been conducted to

20

analyze Keystone XL's impacts on protected species and habitat, addressing the very species in which Plaintiffs' members are interested. *See* TC Energy Mem. in Support of Mot. for Summ. J. 20 n.5, ECF No. 91. To date, Plaintiffs have not identified any species-specific and personalized harm emanating from an intended use of Nationwide Permit 12 for Keystone XL that has not already been thoroughly analyzed under this Endangered Species Act consultation process. Thus, any lack of programmatic consultation on Nationwide Permit 12 does not harm Plaintiffs' alleged interests in species potentially impacted by the project.[4] The Court's vacatur and injunction should therefore be stayed in their entirety.

## CONCLUSION

The Court abused its discretion in vacating Nationwide Permit 12 and in broadly enjoining any Corps verifications under the Permit, and erred in ruling in Plaintiffs' favor on the Endangered Species Act claim. Federal Defendants are therefore likely to prevail on appeal. As to the balance of the harms, the injuries to the public and the Corps from such a broad remedy are significant and extend nationwide and across multiple industries. Plaintiffs' asserted harms, by contrast, relate only to the Keystone XL pipeline. Federal Defendants' motion for stay should be granted.

---

[4] We understand that TC Energy will be further addressing the balance of the harms with respect to any Keystone-specific portions of the Court's remedy.

21

Date:  April 27, 2020

MARK STEGER SMITH
Assistant U.S. Attorney
Office of the United States Attorney
2601 Second Ave. North, Suite 3200
Billings, MT 59101
Tel: (406) 247-4667
Fax: (406) 657-6058
mark.smith3@usdoj.gov

PRERAK SHAH
JEAN E. WILLIAMS
Deputy Assistant Attorneys General

___*s/ Kristofor R. Swanson*_____
KRISTOFOR R. SWANSON
(Colo. Bar No. 39378)
Senior Attorney
Natural Resources Section
Envt. & Natural Resources Div.
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0248
Fax: (202) 305-0506
kristofor.swanson@usdoj.gov

*s/ Benjamin J. Grillot*_____
BENJAMIN J. GRILLOT
(D.C. Bar No. 982114)
Environmental Defense Section
Envt. & Natural Resources Div.
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0303
Fax: (202) 305-0506
benjamin.grillot@usdoj.gov

__*s/ Bridget Kennedy McNeil*_____
BRIDGET KENNEDY MCNEIL
Senior Trial Attorney
Wildlife & Marine Resources Section
Envt. & Natural Resources Div.
U.S. Department of Justice
999 18th Street
South Terrace, Suite 370

22

Denver, CO 80202
303-844-1484
bridget.mcneil@usdoj.gov

### CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 7.1(d)(2)(E), the above motion is proportionately spaced, has a typeface of 14 points, and contains 5,235 words, excluding the caption, signature blocks, and certificates of service and compliance.

*Kristofor R. Swanson*
Kristofor R. Swanson

### CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2020, I filed the above pleading with the Court's electronic case management system, which caused notice to be sent to all parties.

*Kristofor R. Swanson*
Kristofor R. Swanson

23