TIMOTHY C. FOX
Montana Attorney General
ROB CAMERON
Deputy Attorney General
JEREMIAH LANGSTON
Assistant Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
rob.cameron@mt.gov
jeremiah.langston@mt.gov

COUNSEL FOR DEFENDANT-INTERVENOR
STATE OF MONTANA

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| NORTHERN PLAINS RESOURCE COUNCIL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. ARMY CORPS OF ENGINEERS, et al., <br><br> Defendants, <br><br> TC ENERGY CORPORATION, et al., <br><br> Defendant-Intervenors, <br><br> STATE OF MONTANA, <br><br> Defendant-Intervenor, <br><br> AMERICAN GAS ASSOCIATION, et al., <br><br> Defendant-Intervenors. | CV-19-44-GF-BMM <br><br> **State of Montana's Brief in Support of Federal Defendants' Motion for Partial Stay Pending Appeal** |

# BACKGROUND

Montana's interests in a stay are two-fold: 1) Montana has a significant stake in the timely completion of the Keystone XL Pipeline itself; and 2) Nationwide Permit 12 ("NWP 12") is vital to enable completion of other linear infrastructure projects in the State. Thus, Montana requested intervention as a right in this proceeding, in part, because it anticipated that litigation might negatively impact critical infrastructure like electric transmission lines and rural broadband. (Doc. 43 at 8–10.) Montana specifically noted that as a State with a large geographic area with relatively low population density, it had elevated interest in ensuring linear infrastructure projects are built efficiently and economically. *Id*. at 9.

In opposing Montana's petition for intervention as of right, Plaintiffs stated, "this case would not limit Montana's ability to build or repair other types of utility projects, such as broadband cable, transmission lines, or wind energy projects" and "Plaintiffs have not sought to have NWP 12 broadly enjoined; rather, they seek narrowly tailored relief to ensure adequate environmental review of oil pipelines, especially Keystone XL." (Doc. 50 at 3.)

Based on Plaintiffs' argument and representations, this Court limited Montana's intervention to permissive finding,

> The action's disposition as currently pled by Plaintiffs proves unlikely to impair or impede Montana or the Coalition's abilities to rely on NWP 12. *Plaintiffs do not ask the Court to vacate NWP 12*. Plaintiffs seek instead declaratory relief as to NWP 12's legality. Montana and the Coalition could still prospectively rely on the permit until it expires on its own terms in March 2022, even if Plaintiffs prevail on the merits.

(Doc. 59 at 4–5 (citations omitted) (emphasis added).) This finding limited Montana's role in this proceeding "to filing briefs in support of Federal Defendants' and TC Energy's motions" and precluded the State from filing its own motions. *Id.* at 7.

## DISCUSSION

Contrary to its prior ruling on Montana's intervention, the Court entirely vacated NWP 12 and enjoined the Corps from authorizing any dredge or filling activities under NWP 12 pending completion of the consultation process. (Doc. 130 at 26.) As predicted, an order eliminating the streamlined regulatory process available within NWP 12 is already creating problems for Montana's critical infrastructure.

As of now, Montana is aware of at least 8 individual projects located in the State to be impacted by the unavailability of NWP 12. *See* Sullivan Decl. ¶ 5, Ex. 1. This inability to build these projects in a timely fashion impacts the reliability of the electric grid, safety of existing natural gas pipelines, and jeopardizes compliance with the regulations under the Pipeline and Hazardous Materials Safety Administration. *Id.* As a result of the Court's relief beyond that which Plaintiffs requested, Montana's citizens are unnecessarily subjected to additional risk while these important projects are stalled. *Id.*

The scope of the Court's Order also makes the already challenging task of building infrastructure in Montana even more difficult. In Montana, electric cooperatives have been established to address the challenges of providing electric service to rural Montana. *See* Mont. Code Ann. § 35-18-105(1) (allowing the incorporation of electric cooperatives "for the purpose of supplying electrical energy and promoting and extending the use of electrical energy in rural areas"). Although the members of the Montana Electric Cooperatives' Association have been unable to identify individual planned projects affected by the Court's Order in the short amount of time permitted

under the expedited briefing schedule,[1] one member estimates that its lines cross thousands of water bodies that ordinarily would be subject to NWP 12. Weins Decl. ¶ 3. Another member estimates 250 similar crossings within its service territory. *Id*. It is impossible to anticipate how many of these crossings would have relied upon NWP 12 in the event fires and severe storms require repairs of these lines. *Id*. ¶ 5.

Besides impacting the construction of utility lines, the Court's decision impacts Montana electric cooperatives' ability to plan for their future needs. *Id*. ¶ 6. If Keystone were built, some of these cooperatives would provide service to the pipeline, which would create a considerable increase in amount of electricity these cooperatives would need to provide their customers. *Id*. The uncertainty surrounding Keystone prevents them from making informed decisions on generation, transmission, and distribution planning. *Id*.

---

[1] Because of the exceedingly tight deadlines to file memoranda in support of the partial motion for stay and the resulting difficulties of coordinating with the affected entities, Montana may request leave to file supplemental declarations explaining the impact of the Court's Order on linear infrastructure no later than May 4, 2020, two days before memoranda in opposition to the partial stay are due.

In the same vein, the Montana Legislature passed a joint senate and house resolution recognizing the potential tax revenue and infrastructure benefits of the Keystone XL project. 2017 Mont. Laws 1808, S. J. Res. 10. The project is estimated to "generate approximately $63 million in annual property tax revenues in Montana" and bring "significant infrastructure improvements, including powerlines and road and bridge improvements, will be built and paid for by TransCanada." *Id.* In the six counties crossed by Keystone, the $63 million in property tax revenues equals about 151 percent of the property taxes collected in these counties in 2006. Mont. Dep't of Envtl. Quality, Keystone XL Certificate of Compliance 19 (Mar. 30, 2012).[2]

If a stay is not granted, Montanans will be harmed by the delayed construction and repair of infrastructure that would enhance safety and reliability. Additionally, Montanans will be deprived of other infrastructure improvements, increased tax revenues, and economic opportunities that would result from construction of Keystone XL

---

[2] *Available at* <https://deq.mt.gov/Portals/112/DEQAdmin/MFS/Documents/KXL_Cert_Final_Signed.PDF>

Pipeline. Thus, the public interest weighs heavily in favor of a stay. (Doc. 131 at 16–19.)

Respectfully submitted this 29th day of April, 2020.

>TIMOTHY C. FOX
>Montana Attorney General
>ROB CAMERON
>Deputy Attorney General
>215 North Sanders
>P.O. Box 201401
>Helena, MT 59620-1401
>
>By: */s/ Jeremiah Langston*
>   JEREMIAH LANGSTON
>   Assistant Attorney General
>   Counsel for Defendant-Intervenor

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 960 words, excluding tables, certificates, and exhibit index.

        */s/ Jeremiah Langston*
        JEREMIAH LANGSTON
        Assistant Attorney General
        Counsel for Defendant-Intervenor

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, using cm/ecf system.

Participants in the case who are registered cm/ecf users will be served by the cm/ecf system.

Dated: April 29, 2020    */s/ Jeremiah Langston*
        JEREMIAH LANGSTON
        Assistant Attorney General
        Counsel for Defendant-Intervenor

## INDEX OF EXHIBITS

Exhibit 1 ............................................ Declaration of Mary Gail Sullivan

Exhibit 2 .........................................Declaration of Gary Wiens