




# AOPL Affidavit Andrew J. Black.pdf

DocVerify ID: AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1
Created: April 29, 2020 06:26:16 -8:00
Pages: 10
Remote Notary: Yes / State: VA

This document is a DocVerify VeriVaulted protected version of the document named above. It was created by a notary or on the behalf of a notary, and it is also a DocVerify E-Sign document, which means this document was created for the purposes of Electronic Signatures and/or Electronic Notary. Tampered or altered documents can be easily verified and validated with the DocVerify veriCheck system. This remote online notarization involved the use of communication technology.

Go to www.docverify.com at any time to verify or validate the authenticity and integrity of this or any other DocVerify VeriVaulted document.

## E-Signature Summary

**E-Signature 1: Andrew Johnson Black (AJB)**
April 29, 2020 07:03:59 -8:00 [25C065C766C9] [108.28.97.108]
ablack@aopl.org (Principal) (ID Verified)

**E-Signature Notary: Rhonda Jo Piper (rjp)**
April 29, 2020 07:03:59 -8:00 [A71AB9087684] [74.217.93.166]
rpiper@hunton.com
I, Rhonda Jo Piper, did witness the participants named above electronically sign this document.



DocVerify documents cannot be altered or tampered with in any way once they are protected by the DocVerify VeriVault System. Best viewed with Adobe Reader or Adobe Acrobat. All visible electronic signatures contained in this document are symbolic representations of the persons signature, and not intended to be an accurate depiction of the persons actual signature as defined by various Acts and/or Laws.





**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

NORTHERN PLAINS RESOURCE COUNCIL, et al.,

Plaintiffs,

v.

U.S. ARMY CORPS OF ENGINEERS, et al.,

Defendants,

and

THE STATE OF MONTANA, TRANSCANADA KEYSTONE PIPELINE, LP, TC ENERGY CORPORATION, AMERICAN GAS ASSOCIATION, AMERICAN PETROLEUM INSTITUTE, ASSOCIATION OF OIL PIPE LINES, INTERSTATE NATURAL GAS ASSOCIATION OF AMERICA, and NATIONAL RURAL ELECTRIC COOPERATIVE ASSOCIATION,

Defendant-Intervenors.

Case No. 4:19-cv-00044-GF-BMM

**AFFIDAVIT OF ANDREW BLACK, FOR THE ASSOCIATION OF OIL PIPE LINES**

1. My name is Andrew Black. I am the President and Chief Executive Officer of the Association of Oil Pipe Lines ("AOPL"). My business address is 900 Seventeenth Street, NW, Suite 600, Washington, DC 20006.

AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1 --- 2020/04/29 06:26:16 -8:00 --- Remote Notary





2. I am offering this affidavit in support of the NWP 12 Coalition's Memorandum in Support of the Federal Defendants' Motion for Partial Stay Pending Appeal in the above captioned case. (Doc. 131).

3. AOPL is a national trade association that represents the interests of owners and operators of America's liquid pipelines. Liquid pipelines play a vital transportation role in the economy of the United States, its commerce, and its national defense. AOPL helps educate the public, policymakers, and the press about the vital role oil pipelines serve in the daily lives of Americans.

4. AOPL members transport approximately 97 percent of the crude oil and refined petroleum products shipped through pipelines in the United States. AOPL members bring crude oil to the nation's refineries, natural gas liquids such as ethane, butane, propane and carbon dioxide to manufacturers and industrial users, jet fuel to airports, and petroleum products to our communities, including all grades of gasoline, diesel, home heating oil, kerosene, propane and biofuels.

5. As of 2018, there were over 218,000 miles of liquid pipelines in the United States, including over 62,000 miles of refined petroleum product pipelines, 70,000 miles of highly volatile liquid pipelines and 80,000 miles of crude oil pipelines.[1]

---

[1] https://www.phmsa.dot.gov/data-and-statistics/pipeline/annual-report-mileage-hazardous-liquid-or-carbon-dioxide-systems.



AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1 --- 2020/04/29 06:26:16 -8:00 --- Remote Notary

DocVerify ID: AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1
www.docverify.com
Page 2 of 10 25FE48BC8D0A1

6. Pipelines have long been recognized as being essential for maintaining U.S. energy security, as they provide safe and reliable transportation of the energy that fuels our economy. Indeed, this Administration has declared that "it is the policy of the executive branch to streamline and expedite … approvals for all infrastructure projects, especially projects that are a high priority for the Nation, such as … repairing and upgrading critical … pipelines," among other infrastructure. Exec. Order No. 13,766 of January 24, 2017, *Expediting Environmental Reviews and Approvals for High Priority Infrastructure Projects*, 82 Fed. Reg. 8657, 8657 (Jan. 30, 2017). The Obama Administration also recognized the importance of pipelines: "rising production is outpacing the capacity of pipelines to deliver the oil to refineries," and the only option is therefore for new pipelines to be constructed or for existing pipelines to be reconfigured to meet that demand and "enhance our Nation's energy security." *See* Memorandum of March 22, 2012, *Expediting Review of Pipeline Projects from Cushing, Oklahoma, to Port Arthur, Texas, and Other Domestic Pipeline Infrastructure Projects*, 77 Fed. Reg. 18,891, 18,891 (Mar. 28, 2012).

7. While the existing United States liquid pipeline network is extensive, new construction is therefore required to transport energy liquids from new production areas across North America, to existing refining and processing locations. During the past five years, more than 19,000 miles of liquid pipelines

AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1 --- 2020/04/29 06:26:16 -8:00 --- Remote Notary



DocVerify ID: AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1
www.docverify.com
Page 3 of 10 35FE48BC8D0A1

have been added, an increase of approximately 9.5 percent in overall mileage. In addition, AOPL members have publicly announced over $8 billion in new construction projects with a completion date in 2020 or later. This new construction would add over 2,500 miles of pipeline into service.

8. Pipelines constructed by AOPL members almost invariably cross waters of the United States at some point. New pipeline construction projects can range from tens to hundreds of miles long, sometimes over 1,000 miles long, and often must cross areas deemed by the U.S. Army Corps of Engineers ("Corps") to be waters of the United States subject to Clean Water Act ("CWA") jurisdiction.

9. Nationwide Permits ("NWPs") are an important tool for authorizing activities the Corps has determined have only minimal adverse environmental effects on the aquatic environment. 33 U.S.C. § 1344(e). The Corps has issued a utility line general permit since 1977. Consistent with the CWA and Corps regulations, NWPs are reissued every five years.

10. AOPL members routinely rely upon NWP 12 to construct those portions of pipelines that cross waters of the United States when construction activity will have only minimal impacts on the environment. Activities may include temporary impacts associated with excavation, backfill or bedding for pipelines, with the areas then returned to normal pre-disturbance conditions (i.e., pre-construction contours). Pipeline activities undertaken in conformance with

AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1 --- 2020/04/29 06:26:16 -8:00 --- Remote Notary



DocVerify ID: AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1
www.docverify.com
Page 4 of 10 45FE48BC8D0A1

NWP 12 must meet the terms and conditions of NWP 12, including the ½ acre limit on loss of waters for each separate water body and each separate and distinct crossing, among numerous other requirements. AOPL members specifically design and conform their projects to meet the terms and conditions of NWP 12.

11. Due to the importance of NWP 12 for AOPL members nationwide, AOPL invested significant time and resources to join with the NWP 12 Coalition as Defendant-Intervenors in this proceeding. The NWP 12 Coalition's Motion to Intervene was granted by Order of this Court dated November 7, 2019. (Doc. 59).

12. The Court's Order, dated April 15, 2020 (Doc. 130) creates significant regulatory uncertainty for AOPL members. If AOPL members could not rely on NWP 12, as a result of this Court's Order, to undertake the construction, maintenance or repair of existing pipelines, in the absence of any other applicable general permit, they would need to obtain individual CWA section 404 permits for those activities. The process for obtaining those individual permits would likely stretch over multiple years. In addition to the significant expenditure of additional time and resources, this could lead to project delays and cancellations and also affect pipeline customers' supply and costs of obtaining crude oil and refined petroleum products.

13. For example, I am aware of an AOPL member with a pipeline project that was approximately one month from receiving NWP 12 verifications prior to

AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1 --- 2020/04/29 06:26:16 -8:00 --- Remote Notary



DocVerify ID: AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1
www.docverify.com
Page 5 of 10 55FE48BC8D0A1

this Court's Order. The member's project is designed to extend hundreds of miles across multiple states, and is expected to generate approximately 2,500 construction jobs and $25 million in local property tax revenue to local communities. If the member cannot rely on NWP 12 as a result of this Court's Order, the project is likely to incur significant delays and at least a million dollars in added costs to obtain necessary Corps approvals in multiple Corps districts.

14. Another AOPL member constructing a refined petroleum product pipeline that is near completion estimated that the inability to rely on NWP 12 for completion of the project would cost the company approximately $6 million per month in lost revenue and would increase the cost to permit another project by tens of thousands of dollars.

15. Another AOPL member identified 23 projects in seven states that will potentially be impacted by the Court's Order. The reach of those projects extends to 425 miles of pipeline. The potential impact of the Court's Order, however, is not limited to these projects, as the member explained that, on average, it relies on NWP 12 1,500 times each year for needed operations, maintenance, regulated pipeline work and capital projects.

16. Another member identified 18 specific projects for which it would likely need to obtain individual CWA authorizations if NWP 12 cannot be relied upon as a result of this Court's Order, ranging from new construction to



AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1 --- 2020/04/29 06:26:16 -8:00 --- Remote Notary

DocVerify ID: AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1
www.docverify.com
Page 6 of 10 65FE48BC8D0A1

maintenance work in various stages of regulatory review. The result could be project cancellations or delays of up to 24 months, costing millions of dollars in total. Delays would harm shippers wanting to transport crude oil and refined products over these pipelines and ultimately the many American consumers who would use these products. All of the above-mentioned projects are located outside of Montana.

17. Importantly, AOPL members also rely on NWP 12 authorizations to maintain the integrity and safety of their pipelines through maintenance and repair projects. The need for pipelines to cross waters of the United States means that maintenance and repair of pipelines must sometimes also occur at locations considered to be jurisdictional under the CWA. These critical and time-sensitive maintenance and repair projects may be impeded or delayed, if NWP 12 is not available as a result of this Court's Order.

18. AOPL members seeking to ensure the integrity and safety of their pipelines through maintenance and repair projects face significant uncertainty, delay, and additional costs as a result of this Court's Order. For example, an AOPL member explained that it conducts inspections and repairs in connection with hundreds of asset integrity projects annually across numerous states in order to comply with federal pipeline safety regulations, including horizontal directional drills, pipe removals or re-routes, line lowerings, rehabilitation digs, and right-of-

AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1 --- 2020/04/29 06:26:16 -8:00 --- Remote Notary



DocVerify ID: AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1
www.docverify.com
Page 7 of 10 75FE48BC8D0A1

way vegetation clearings, many of which are authorized under NWP 12. The member further notes that delays to obtain individual CWA authorizations would result in additional risk for the pipeline, the environment, personal property, and potentially human health, as the risk of pipeline releases would increase greatly. More specifically, the member pointed out a planned right-of-way clearing project that is needed to conduct biweekly line inspections to comply with federal pipeline safety regulatory requirements that would normally rely on NWP 12, but may instead require an individual permit as a result of the Court's Order. And a planned relocation of pipeline needed to allow a highway widening project to move forward that had already received an NWP 12 authorization may be delayed and incur significantly more costs as a result of this Court's Order.

19. Another AOPL member working on a repair and reroute project along 30 miles of existing pipeline, with an estimated cost of $150 million and expected to generate approximately 500 construction jobs, was planning to rely on NWP 12. But this Court's Order could cause the member to incur significant delays and added costs if the member is unable to rely on NWP 12 and must obtain an individual permit. The member also has a series of maintenance and repair projects across three states that are necessary to address identified pipeline anomalies, which must be repaired in a set timeframe under federal pipeline safety regulations, and could incur significant delays if NWP 12 is not available. Delays

AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1 --- 2020/04/29 06:26:16 -8:00 --- Remote Notary



DocVerify ID: AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1
www.docverify.com
Page 8 of 10 85FE48BC8D0A1

would affect the member's and association's efforts to further improve pipeline safety.

20. An AOPL member notes several projects currently in development or execution could be adversely impacted if NWP 12 cannot be relied upon. One example is a project initiated to replace an approximately 1,800-foot section of pipeline to address pipeline wall loss discovered during an inspection (the project was set to begin this Summer, with NWP 12 authorization expected soon). Such an anomaly may indicate areas that are at higher risk of pipeline failure. A delay in approval would likely not only delay safety improvements and increase project costs, but also impact pipeline operations and the resultant ability to deliver product to customers. Further, if regulatory deadlines are not met, then the pipeline must be de-rated, thus likely impacting the ability to serve customers. If the project is delayed further, into 2021, it may need to be shut down.

21. Another example the member provided is a pipeline maintenance project previously authorized under NWP 12. This project was initiated to address culvert failures resulting from water flows exceeding the capacity of the culverts, which led to adjacent slope erosion and subsequent undermining of the pipeline, which likely will lead to exposure and an unsupported pipeline span if the culverts and surrounding fill are not replaced soon. If the project is not allowed to proceed, the integrity of the pipeline could be compromised, and the

AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1 --- 2020/04/29 06:26:16 -8:00 --- Remote Notary



DocVerify ID: AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1
www.docverify.com
Page 9 of 10 95FE48BC8D0A1

erosion could propagate from an existing sink hole toward a public roadway, causing a potential public safety hazard.

22. Accordingly, AOPL members face immediate harm as a result of the regulatory uncertainty caused by this Court's Order. And, if AOPL members cannot rely on NWP 12 as a result of this Court's Order, they will likely face further significant harm in the form of delays and increased costs.

## CERTIFICATION

I certify that the foregoing statements made by me are true. I am aware that, if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Executed this 29th day of April, 2020.

[signature] Signed on 2020/04/29 07:03:59 -8:00
______________________________
Andrew Black

Commonwealth of Virginia

County of Chesterfield

Subscribed and sworn to before me this 29th day of April, 2020.

[signature] Signed on 2020/04/29 07:03:59 -8:00
______________________________
Notary Public

Rhonda Jo Piper
**Registration # 223328**
Electronic Notary Public
Commonwealth of Virginia
My commission expires the 31 day of Jul 2020
Notary Stamp 2020/04/29 07:03:59 PST A71AB9087684

My Commission Expires: 04/29/2020



AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1 --- 2020/04/29 06:26:16 -8:00 --- Remote Notary

DocVerify ID: AE2B8C4C-0D46-444A-93CF-5FE48BC8D0A1
www.docverify.com
Page 10 of 10 105FE48BC8D0A1