


# AGA Affidavit Michael Murray.pdf

| | |
|---|---|
| DocVerify ID: | 2872E909-3AA0-4EC9-86A8-951DD8F5B0A7 |
| Created: | April 29, 2020 08:19:27 -8:00 |
| Pages: | 10 |
| Remote Notary: | Yes / State: VA |

This document is a DocVerify VeriVaulted protected version of the document named above. It was created by a notary or on the behalf of a notary, and it is also a DocVerify E-Sign document, which means this document was created for the purposes of Electronic Signatures and/or Electronic Notary. Tampered or altered documents can be easily verified and validated with the DocVerify veriCheck system. This remote online notarization involved the use of communication technology.

Go to www.docverify.com at any time to verify or validate the authenticity and integrity of this or any other DocVerify VeriVaulted document.

### E-Signature Summary

**E-Signature 1: Michael Leonardo Murray (MLM)**
April 29, 2020 08:44:11 -8:00 [651F4B7D4246] [98.169.58.21]
mmurray@aga.org (Principal) (ID Verified)

**E-Signature Notary: Rhonda Jo Piper (rjp)**
April 29, 2020 08:44:11 -8:00 [6EAB07B78237] [74.217.93.166]
rpiper@hunton.com
I, Rhonda Jo Piper, did witness the participants named above electronically sign this document.



DocVerify documents cannot be altered or tampered with in any way once they are protected by the DocVerify VeriVault System. Best viewed with Adobe Reader or Adobe Acrobat. All visible electronic signatures contained in this document are symbolic representations of the persons signature, and not intended to be an accurate depiction of the persons actual signature as defined by various Acts and/or Laws.



# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| NORTHERN PLAINS RESOURCE COUNCIL, et al., | |
| Plaintiffs, | |
| v. | Case No. 4:19-cv-00044-GF-BMM |
| U.S. ARMY CORPS OF ENGINEERS, et al., | |
| Defendants, | |
| and | |
| THE STATE OF MONTANA, TRANSCANADA KEYSTONE PIPELINE, LP, TC ENERGY CORPORATION, AMERICAN GAS ASSOCIATION, AMERICAN PETROLEUM INSTITUTE, ASSOCIATION OF OIL PIPE LINES, INTERSTATE NATURAL GAS ASSOCIATION OF AMERICA, and NATIONAL RURAL ELECTRIC COOPERATIVE ASSOCIATION, | |
| Defendant-Intervenors. | |

## AFFIDAVIT OF MICHAEL L. MURRAY, FOR THE AMERICAN GAS ASSOCIATION

1.My name is Michael L. Murray.  I am the General Counsel of the American Gas Association ("AGA").  My business address is 400 North Capitol Street, NW, Washington, DC  20001.



2. I am offering this affidavit in support of the NWP 12 Coalition's Memorandum in Support of the Federal Defendants' Motion for Partial Stay Pending Appeal in the above captioned case. (Doc. 131).

3. The AGA, founded in 1918, is a national trade association that represents more than 200 local energy companies that deliver clean natural gas throughout the United States. There are more than 74 million residential, commercial and industrial natural gas customers in the U.S., of which 95 percent—more than 71 million customers—receive their gas from AGA members. AGA is an advocate for natural gas utility companies and their customers and provides a broad range of programs and services for member natural gas pipelines, marketers, gatherers, international natural gas companies and industry associates. Today, natural gas meets more than one-fourth of the United States' energy needs.

4. AGA members across the country rely on the U.S. Army Corps of Engineers' ("Corps") nationwide permit ("NWP") program under Clean Water Act ("CWA") section 404 to obtain streamlined approvals for gas pipe installation and maintenance projects. Natural gas utilities construct and maintain natural gas distribution lines and intra-state pipelines in communities across the United States. Such projects are essential for providing safe, reliable transportation of cleaner burning natural gas to businesses and residences. Gas distribution lines can cover many miles and often must cross streams, wetlands, or other waters of the United

States. Utilities take steps to avoid such stream and wetland crossings where feasible. However, it is not always feasible. When a new pipe must be laid to serve a community or power plant or commercial customer, there may be limited routes available to reach that community or customer. Projects to replace existing pipelines with new pipe must follow the existing route and utility right-of-way.

5. The Corps has issued a utility line general permit for over forty years, in recognition of the fact that utility line activities, such as AGA members' natural gas transmission and distribution line projects, usually have limited, temporary impacts on aquatic resources. When the projects must cross a stream or wetland, the impact is typically limited because these long, narrow projects affect an area limited in width, some only a few yards wide, and each stream or wetland crossing is usually completed within a short time.

6. Natural gas utilities are allowed to use NWP 12 only if certain terms and conditions are met, including conditions designed to minimize sedimentation and other impacts of the activity. NWP 12 requires that natural, pre-construction contours be restored after crossings are completed and the revegetation of areas affected by temporary fills. Other federal and state regulatory programs often apply to these projects. For example, EPA and/or delegated States under CWA section 402 require construction storm water permits that require best management practices to control sediment from leaving the site of construction, and local

3

governments often impose additional requirements through their own construction storm water permitting ordinances.

7. AGA members have relied on NWP 12 authorizations for many years, back to the inception of the NWP program in 1977, to install natural gas transmission and distribution pipelines. AGA members are diligent in designing and implementing their natural gas transmission and distribution pipeline projects to conform to the requirements of NWP 12.

8. AGA's over 200-member local utility companies and millions of their customers in all 50 states are significantly and immediately impacted by this Court's Order issued April 15, 2020. (Doc. 130). If AGA members cannot rely on NWP 12, they will instead need to coordinate every planned utility line project with the Corps to find alternative CWA authorizations, or obtain hundreds of individual CWA section 404 permits. The delay is particularly concerning at a time when natural gas utilities' workforce and resources are already strained by response to the COVID-19 Pandemic ("Pandemic").

9. In AGA members' experience, the individual permit process can add approximately 9-18 months to a project. That processing time is highly likely to increase if NWP 12 cannot be relied on and the Corps must process tens of thousands of additional projects through individual permits. AGA members have significant concerns regarding the availability of sufficient staff at the Corps and

coordinating agencies to review these additional projects through the individual permit process.

10. For example, one of our member utilities with operations in several Midwestern and Southern states reports that if NWP 12 is unavailable, as a result of this Court's Order, there will be severe impacts on its current and projected workload. The member reports that it often needs to use NWP 12 for natural gas transmission pipeline projects and gas distribution main replacement work as it upgrades its systems to protect the safety of communities and the surrounding environment. It is critically important for the company to be able to continue that work in a timely manner to ensure its systems can provide a safe and reliable source of energy to hospitals, other Pandemic essential businesses and residential customers. The member has hundreds of such projects with minimal impacts that fall under the terms and conditions of NWP 12. This work would be seriously delayed if the member must coordinate every such utility project with the Corps to find alternative CWA coverage.

11. The company is working diligently to replace older vintage cast iron and unprotected steel pipe to improve safety and reliability and to reduce methane emissions to fulfill its commitments to the jurisdictional state utility commissions and the U.S. EPA's voluntary Methane Challenge program. If the member cannot rely on NWP 12 as a result of this Court's Order, there will be serious delays in

5

this pipe replacement process, jeopardizing safety, reliability and planned greenhouse gas reductions.  Increased costs due to construction delays will likely increase energy costs to residential and commercial customers, at a time when many of those customers have lost revenue or jobs and are struggling financially due to the Pandemic stay-at-home orders.  In addition, the company has many projects planned to install new lines to provide new natural gas service to customers and communities that have requested service, and these projects may now be delayed many more months.

12. An AGA member interstate natural gas pipeline company reports that the company routinely relies on NWP 12 for more than hundreds of minor interstate and smaller intrastate projects annually across several states.  These include projects authorized by the Federal Energy Regulatory Commission's ("FERC") Blanket Automatic Certificate and smaller intrastate expansion and operations and maintenance projects.  In reliance on its ability to utilize NWP 12 through its expiration date in March, 2022, the company planned to submit NWP 12 Pre-Construction Notifications ("PCNs") within the next few months in Corps Districts located in Texas, Mississippi and other states for:  (1) several projects to make existing lines "piggable" to allow pipeline safety integrity inspections and repairs using a robotic in-line inspection tool; and (2) projects to improve natural gas pipeline safety and reliability for customers by removing and replacing existing

6

pipe. These projects will be delayed if they instead require individual permits or other CWA authorizations as a result of this Court's Order.

13. Another AGA member gas utility company operating outside Montana reports that almost every one of their natural gas transmission pipeline projects relies on NWP 12, and many of their larger local distribution gas main projects require NWP 12. This company and other AGA member companies report that the bulk of projects that rely on NWP 12 fall into one of three project categories, as described in the paragraphs below: (1) State Government-Required Relocation of Gas Lines; (2) Federal Gas Transmission Pipeline Safety Integrity Projects; and (3) Necessary System Infrastructure. In addition, they rely on NWP 12 for access to pipeline and utility rights-of-way ("ROW") for maintaining vegetation, as required by pipeline safety regulations of the U.S. Department of Transportation ("DOT") Pipeline and Hazardous Materials Administration ("PHMSA") under 49 C.F.R. Part 172.

14. NWP 12 is essential to facilitate numerous projects for AGA members across the country for relocating existing natural gas intrastate transmission pipelines and local distribution mains located within state DOT ROWs for road-widening projects. State DOTs across the country require AGA member companies to move gas lines before the state DOTs begin construction to widen state roads and highways. Therefore, state DOTs typically require AGA member

7

companies to meet strict deadlines for relocating gas lines within the state road ROWs. If these state government-required deadlines for relocating gas lines are not met, AGA member companies typically would incur penalty costs and the delays will increase the state DOT road project costs, thereby increasing costs for state taxpayers.

15. AGA members also rely on NWP 12 for projects necessary to meet PHMSA's Transmission Integrity Management Program ("TIMP") requirements under 40 C.F.R. Part 172. The TIMP regulations require that if such pipeline integrity projects cannot be completed by specific deadlines, then the operator is required by the PHMSA TIMP regulations to reduce line pressures or remove pipelines from service altogether until the integrity testing requirements can be met. If NWP 12 is unavailable for these projects as a result of the Court's Order, thousands of pipeline integrity testing projects will be subject to potential delays, triggering PHMSA requirements to reduce pressure or shut down service, and thereby reducing energy service to electric generating plants, residential, commercial and industrial customers across the country who rely on natural gas.

16. AGA members nationwide also rely on NWP 12 for System Infrastructure Projects necessary to meet customer demands in growing markets. As areas expand with new residential, commercial, and industrial developments, including hospitals and COVID-19 essential businesses, the demand for natural gas

has increased.  Existing pipelines need to be replaced with larger diameter pipelines or new pipelines need to be installed to increase capacity to serve customers who rely on natural gas.  Several AGA member companies also have U.S. military bases within their service territories that require natural gas system infrastructure upgrades to serve their mission readiness.  If NWP 12 is unavailable, these System Infrastructure Projects will be subject to potential delays—where individual permits are required—and energy service to these civilian and military customers across the country may be undermined.

DocVerify ID: 2872E909-3AA0-4EC9-86A8-951DD8F5B0A7
www.docverify.com
Page 9 of 10
9951DD8F5B0A7


2872E909-3AA0-4EC9-86A8-951DD8F5B0A7 --- 2020/04/29 08:19:27 -8:00 --- Remote Notary

## CERTIFICATION

I certify that the foregoing statements made by me are true. I am aware that, if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Executed this 29th day of April, 2020.

*Michael Leonardo Murray*
Signed on 2020/04/29 08:44:11 -8:00

Michael L. Murray

Commonwealth of Virginia

County of Chesterfield

Subscribed and sworn to before me this 29th day of April, 2020.


Signed on 2020/04/29 08:44:11 -8:00

Notary Public

**Rhonda Jo Piper**
**Registration # 223328**
Electronic Notary Public
Commonwealth of Virginia
My commission expires the 31 day of Jul 2020

Notary Stamp 2020/04/29 08:44:11 PST     6EAB07B78237

My Commission Expires: July 31, 2020

10

