


# API Affidavit Robin Rorick.pdf

| | |
|---|---|
| DocVerify ID: | FF89A04D-58D1-4BAE-85D4-D2F527E84226 |
| Created: | April 29, 2020 08:29:30 -8:00 |
| Pages: | 10 |
| Remote Notary: | Yes / State: VA |

This document is a DocVerify VeriVaulted protected version of the document named above. It was created by a notary or on the behalf of a notary, and it is also a DocVerify E-Sign document, which means this document was created for the purposes of Electronic Signatures and/or Electronic Notary. Tampered or altered documents can be easily verified and validated with the DocVerify veriCheck system. This remote online notarization involved the use of communication technology.

Go to www.docverify.com at any time to verify or validate the authenticity and integrity of this or any other DocVerify VeriVaulted document.

### E-Signature Summary

**E-Signature 1: Robin Russell Rorick (RR)**
April 29, 2020 09:45:59 -8:00 [2A22CAC65E54] [71.246.220.229]
rorickr@api.org (Principal) (ID Verified)

**E-Signature Notary: Rhonda Jo Piper (rjp)**
April 29, 2020 09:45:59 -8:00 [25D57CFEC0E4] [74.217.93.166]
rpiper@hunton.com
I, Rhonda Jo Piper, did witness the participants named above electronically sign this document.



DocVerify documents cannot be altered or tampered with in any way once they are protected by the DocVerify VeriVault System. Best viewed with Adobe Reader or Adobe Acrobat. All visible electronic signatures contained in this document are symbolic representations of the persons signature, and not intended to be an accurate depiction of the persons actual signature as defined by various Acts and/or Laws.



# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| NORTHERN PLAINS RESOURCE COUNCIL, et al.,<br><br>                Plaintiffs,<br><br>    v.<br><br>U.S. ARMY CORPS OF ENGINEERS, et al.,<br><br>                Defendants,<br>    and<br><br>THE STATE OF MONTANA, TRANSCANADA KEYSTONE PIPELINE, LP, TC ENERGY CORPORATION, AMERICAN GAS ASSOCIATION, AMERICAN PETROLEUM INSTITUTE, ASSOCIATION OF OIL PIPE LINES, INTERSTATE NATURAL GAS ASSOCIATION OF AMERICA, and NATIONAL RURAL ELECTRIC COOPERATIVE ASSOCIATION,<br><br>                Defendant-Intervenors. | Case No. 4:19-cv-00044-GF-BMM |

## AFFIDAVIT OF ROBIN RORICK, FOR THE AMERICAN PETROLEUM INSTITUTE

1. My name is Robin Rorick. I am Vice President of Midstream and Industry Operations for the American Petroleum Institute ("API"). My business address is 200 Massachusetts Ave., NW, Suite 1100, Washington, DC 20001.



2. I am offering this affidavit in support of the NWP 12 Coalition's Memorandum in Support of the Federal Defendants' Motion for Partial Stay Pending Appeal in the above captioned case. (Doc. 131).

3. API is a nationwide, non-profit trade association that represents all facets of the natural gas and oil industry, which supports 10.3 million U.S. jobs and nearly 8 percent of the U.S. economy. API's more than 600 member companies include large integrated companies, as well as exploration and production, refining, marketing, pipeline, and marine businesses, and service and supply firms. API's members provide most of the nation's energy. API was formed in 1919 as a standards-setting organization, and API has developed more than 700 standards to enhance operational and environmental safety, efficiency, and sustainability.

4. API's members engage in exploration, production, construction, and maintenance projects that often require compliance with both state and federal water permitting programs, including Clean Water Act ("CWA") section 404.

5. The safe and reliable supply of energy to consumers, at an affordable cost, requires the construction and maintenance of thousands of lines of linear pipelines. The need to deliver energy over long distances to neighborhoods and communities across the country often means that pipelines and linear structures must, at times, unavoidably cross wetlands and other waters of the United States as they extend from supply to market areas. API's members rely on an efficient and

2

reasonable permitting process, as provided by the nationwide permits ("NWPs"), including NWP 12, to obtain required CWA approvals for the construction and maintenance of these critical elements of our nation's energy supply infrastructure.

6. NWPs are an important tool for authorizing critical and time-sensitive activities that the U.S. Army Corps of Engineers ("Corps") has determined have only minimal adverse environmental effects on the aquatic environment. 33 U.S.C. § 1344(e). The Corps has issued a utility line general permit since 1977. Consistent with the CWA and Corps regulations, NWPs are reissued every five years. The 2017 NWP 12 contains certain limits, thresholds, and other conditions to ensure compliance with the "minimal adverse environmental effects" statutory standard.

7. API's members conform their projects to meet the terms and conditions of the NWPs, including NWP 12. In particular, within the past five years, several of API's members have relied on NWP 12 authorizations to construct hundreds of miles of oil pipelines, natural gas pipelines, refined product pipelines, and natural gas liquids pipelines, which traverse the States of Montana, Oklahoma, Texas, Colorado, Louisiana, Missouri, Mississippi, Kansas, Wisconsin, Illinois, Utah, North Dakota, Arkansas and Minnesota. One API member reported relying on NWP 12 for an average of 50 projects per year. API members also rely

on NWP 12 authorizations to inspect, maintain, and repair existing pipelines to ensure the continued safety and reliability of the projects.

8. An API member has informed me that it has relied on NWP 12 for pipelines that support its liquefied natural gas ("LNG") terminals. This includes a 93-mile pipeline in Louisiana, a 23-mile pipeline in Texas, and a 200-mile pipeline in Oklahoma. The member has also relied on NWP 12 to construct several high-volume waterlines that are critical to supporting the overall infrastructure of its LNG terminal. The continued availability of NWP 12 is essential to its business of constructing pipelines to bring natural gas to the LNG terminals.

9. In reliance on the availability of the 2017 NWP 12, several API members have made plans to construct oil, gas, natural gas liquids, and refined product pipelines in Montana, Oklahoma, Colorado, Illinois, Indiana, Iowa, Kansas, Louisiana, Missouri, New Mexico, Ohio, Pennsylvania, South Dakota, Texas, Utah, West Virginia, and Wyoming. These members design and conform their projects to meet the terms and conditions of NWP 12, assuming they will be able to rely on the permit for projects that have commenced or are under contract to commence by March 2022. As a result of this Court's Order issued April 15, 2020 (Doc. 130), API members may be unable to rely on NWP 12 for these projects.

4

10. The Court's Order also raises a significant amount of uncertainty regarding the availability of NWP 12 for other API member utility line projects necessary to construct, repair, and maintain pipelines in a cost-effective and timely manner.  API members expect to rely on NWP 12 verifications for ongoing or scheduled work, and in anticipation of such activities have undertaken significant work in the planning or pre-planning construction stages.  If NWP 12 is not available for these projects, the API members may be forced to halt work mid-construction, which delays the project, increases costs, and increases risk to the environment.

11. If NWP 12 is not available, and in the absence of any other applicable general permit, API's members will likely be forced to apply for individual CWA permits for activities that the Corps has deemed to have only minimal environmental effects.  API's members could face years of delay and substantial additional costs as a result, without any commensurate benefit to the aquatic environment.

12. The process of applying for and obtaining an individual permit is time consuming, expensive, and subject to regulatory uncertainty.  The individual CWA permit process requires multiple state and federal agency coordination, as well as public involvement on each project.  In addition, water quality certification would be required from each state agency overseeing that particular resource.

13. Based on its experience, one API member estimates that the time for review and processing of an individual permit currently ranges from 9 to 24 months. That processing time is highly likely to increase if NWP 12 cannot be relied on and the Corps must process tens of thousands of additional projects through individual permits. API members have significant concerns regarding the availability of staff at the Corps and coordinating agencies to review these additional projects through the individual permit process.

14. The Corps' workload constraints are exacerbated by the current circumstances, where companies and agencies are dealing with working conditions caused by COVID-19. The ability to provide reliable energy is even more important now during this sensitive and challenging time brought on by COVID-19. The Court's Order could threaten API's members' ability to continue numerous energy and infrastructure projects, affecting the health of numerous companies and job security in an already-strained economy.

15. API member projects are developed in collaboration with customers, contractors, communities and commercial companies, in addition to lenders and investors. Significant delays to a project schedule can have negative implications, including commercial harm to the company, its shippers, the affected downstream customer, and, ultimately, the broader economy. The uncertainty in timing for CWA § 404 approvals, as a result of the Court's Order, may put API member

6

projects at risk for securing financing, construction contracts, and supply deals. The cost of providing these services to customers is likely to increase, if API's members can no longer rely on the efficient permitting approach of NWP 12. Accordingly, API members expect that many important activities associated with oil pipelines, natural gas pipelines, refined product pipelines, and natural gas liquids pipelines will be delayed or otherwise encumbered, if NWP 12 cannot be relied on as a result of this Court's Order. This would significantly harm API's members by impeding their ability to safely deliver natural gas, oil, and related products through pipelines.

16. For example, I am aware of an API member that recently entered into a 5-year contract that will require it to build a new pipeline in order to deliver propylene to the customer under a set delivery date premised on the use of NWP 12. The member was preparing the preconstruction notification ("PCN") to verify use of NWP 12 when this Court issued its Order. If the member is unable to rely on NWP 12, as a result of this Court's Order, the time required to obtain an individual permit will likely delay construction of the pipeline and may cause a breach of contract and loss of business opportunity.

17. Maintenance projects are similarly affected. An API member recently identified anomaly repairs that need to be completed on a pipeline in Louisiana. The repairs are typically completed under NWP 12 in order to meet required 60

7

and 180 day repair obligations. If the member is not able to rely on NWP 12, delaying the repairs could result in operating pressure reductions and decreased pipeline throughput. The Corps was processing another API member's application under NWP 12 for the installation of a vent on a pipeline. The project is likely to be delayed if the member is not able to rely on NWP 12.

18. In some areas of the country, the harm that would occur if API members could not rely on NWP 12 is exacerbated by time of year construction restrictions designed to provide environmental benefits, including protections to species. If API members cannot rely on NWP 12, the delay occasioned by the time consuming process of applying for individual permits may require projects to be postponed to the next construction season, resulting in even further delay and significant costs.

19. There are other practical impediments to schedules and construction. For example, the schedule for development activities in North Dakota is constrained by an extended severe cold weather season. If an API member cannot rely on NWP 12 as a result of this Court's Order, the project may be delayed until the next year's construction season to avoid development during unfavorable weather conditions that can result in potential safety and environmental risks.

20. If API members cannot rely on NWP 12, it may also cause delays late in project development or construction. Pipeline projects require right-of-way

8

agreements with individual landowners, and as a result of these negotiations, which often occur late in the project development or construction process, a project may be rerouted.  An API member has informed me that often the original route is designed to avoid wetlands or other water crossings, but if rerouting becomes necessary due to landowner negotiations, the member must rely on NWP 12 to move forward.  If NWP 12 is unavailable, the member would likely be forced to acquire an individual permit, which would significantly impact the cost of the project and result in lost royalty income for its mineral owners.

DocVerify ID: FF89A04D-58D1-4BAE-85D4-D2F527E84226
www.docverify.com
Page 9 of 10   9D2F527E84226
FF89A04D-58D1-4BAE-85D4-D2F527E84226 --- 2020/04/29 08:29:30 -8:00 --- Remote Notary

## CERTIFICATION

I certify that the foregoing statements made by me are true. I am aware that, if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Executed this 29th day of April, 2020.

_Robin Russell Rorick_
Signed on 2020/04/29 09:45:59 -8:00
_____
Robin Rorick

Commonwealth of Virginia

County of  Chesterfield
          _____

Subscribed and sworn to before me this  29th  day of  April , 2020.


_Rhonda Jo Piper_
Signed on 2020/04/29 09:45:59 -8:00
_____
Notary Public

My Commission Expires:  July 31, 2020
                       _____

> **Rhonda Jo Piper**
> **Registration # 223328**
> Electronic Notary Public
> Commonwealth of Virginia
> My commission expires the 31 day of Jul 2020
>
> Notary Stamp 2020/04/29 09:45:59 PST                 25D57CFEC0E4

