Leo Berry
Brian P. Thompson
BROWNING, KALECZYC,
BERRY & HOVEN, P.C.
800 North Last Chance
Gulch, Ste. 101
PO Box 1697
Helena, MT 59624
Tel. (406) 443-6820
Fax (406) 443-6883
leo@bkbh.com
brian@bkbh.com

Thomas C. Jackson (*pro hac vice*
application forthcoming)
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, DC 20001
Tel. (202) 639-7000
Fax (202) 639-7890
thomas.jackson@bakerbotts.com

*Counsel for Amicus Curiae Essential
Infrastructure Coalition*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| NORTHERN PLAINS RESOURCE COUNCIL, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>U.S. ARMY CORPS OF ENGINEERS, *et al.*,<br>          Defendants,<br><br>TC ENERGY CORPORATION, *et al.*,<br><br>          Intervenor-Defendants. | Case No. CV 19-44-GF-BMM<br><br><br>**UNOPPOSED MOTION FOR LEAVE FOR ESSENTIAL INFRASTRUCTURE COALITION TO FILE AN AMICUS BRIEF PURSUANT TO LOCAL RULE 7.5** |

## INTRODUCTION

In accordance with Local Rule 7.5, the Essential Infrastructure Coalition ("EIC" or "Amici")—which includes The Dayton Power and Light Company; Indianapolis Power & Light Company; Dominion Energy, Inc.; Trinity River Authority of Texas; Lower Neches Valley Authority of Texas; CenterPoint Energy, Inc.; and Idaho Power Company—respectfully submits this motion for leave to file an amicus brief in this case in support of Federal Defendants' Motion for Partial Stay Pending Appeal, ECF No. 131. Recognizing that the timeline is short, the EIC is prepared to submit its amicus brief within 24 hours of the Court granting this motion.

Amici did not expect to have any need to address this Court *regardless* of how the Court resolved the dispute among the parties. Until the Court's recent order ("Order"), ECF No. 130, Amici (and others) reasonably understood that no activities outside the specific activities associated with the project at issue in this litigation would be immediately affected—indeed, the opposite was true, and public statements from the Court and parties indicated that no injunctive or similar relief would transcend the specific facts of the case. Amici hope that the Court will clarify that this understanding remains correct. However, as illustrated by new litigation which invokes this Court's ruling and seeks to apply it more broadly,[1] Amici and many others now confront a legal landscape that appears very different in light of the Order. Federal Defendants' pending

---

[1] *See, e.g., Sierra Club v. U.S. Army Corps of Eng'rs, et al.*, Case No. 1:20-cv-460 (W.D. Tex.).

motion seeks to stay the portions of the Order that vacate Nationwide Permit 12 ("NWP 12") and impose a related nationwide injunction.

The EIC proposes to submit an amicus brief that identifies concrete actual harms already caused by broad readings of the Order to an array of industries that serve the public. These consequences will proliferate absent the partial stay sought by the Corps. The very fact that Amici feel the need to respectfully address the Court at all illustrates the Order's broad reach and justifies those newly affected, like Amici, in presenting their position to the Court.[2]

## BACKGROUND

NWP 12 authorizes discharges of dredged or fill material into waters of the United States necessary for the construction, maintenance, repair, and removal of utility lines. The Court has heard a substantial amount about oil and gas pipelines, but NWP 12 also reaches water lines, wastewater pipelines, transmission lines, telecommunications cables, and associated facilities. This critically important permitting tool makes manageable the otherwise unwieldy regulatory approval process

---

[2] Counsel has inquired of all parties whether they object to EIC filing an amicus brief. No party has opposed EIC filing an amicus brief. Federal Defendants have stated that they do not oppose the filing of the amicus brief so long as it does not disrupt the Court's ability to rule on the stay motion by no later than May 11; EIC does not intend to disrupt the agreed schedule and for that reason will submit its brief promptly upon the Court's order granting leave. Plaintiffs have taken no position. The other parties have indicated that they have no objection to EIC filing an amicus brief.

necessary for the construction of new, and continued operation of existing, essential energy, water, and wastewater infrastructure projects.

On April 15, 2020, in response to Plaintiffs' lawsuit challenging targeted agency actions related to the Keystone XL Pipeline, this Court concluded that the U.S. Army Corps of Engineers ("Corps") unlawfully adopted NWP 12 by not complying with the Endangered Species Act ("ESA") and remanded the permit to the Corps. Although Plaintiffs did not request such relief and the parties did not separately brief issues concerning remedy, the Court's Order went further and (i) vacated NWP 12, and (ii) enjoined the Corps from authorizing any dredge or fill activities under the permit. Significantly, the Order already has impaired the ability of providers of electricity, water, and other essential services to maintain and repair essential infrastructure and has jeopardized the continued viability of pending projects by imposing regulatory uncertainty and unforeseen delays and costs arising from the prospect of having to procure individual Clean Water Act ("CWA") Section 404 permits.[3] The Corps has asked the Court to stay, pending appeal, these portions of the Order.

## ARGUMENT

The EIC respectfully requests permission to file an amicus brief that concisely explains how the Order—or how the Order has been understood and used by some parties—already has impaired, and threatens to further impair, the ability of entities like

---

[3] NWP 12 also authorizes work under Section 10 of the Rivers and Harbors Act of 1899 in appropriate circumstances.

the EIC's members to provide critical energy, water, and wastewater infrastructure and service to the American public. This up-to-date information based on company-specific experience is not only "desirable and relevant"—it is essential to the Court's ability to fully understand the breadth of the impacts the Order is having across the country. Accordingly, the EIC's proposed amicus brief could only assist the Court by providing context that previously has not been presented.

## I.    The EIC has a strong interest in the Court's decision on whether to partially stay the Order.

The EIC's members are companies that develop, own, operate, and maintain infrastructure that provides essential power, water, and wastewater services to the public, including reliable electricity, natural gas, and water for consumption in homes, businesses, courthouses, churches, and every other venue that uses such resources. EIC members' ability to reliably provide these services requires them to regularly develop new infrastructure and to vigilantly maintain and repair existing infrastructure in a timely fashion. EIC's members rely heavily on the regulatory streamlining provided by NWP 12, which is an invaluable means for safely accomplishing these critically important ends without significant delay, cost, or public inconvenience.

Without NWP 12, EIC members could be required to obtain individual permits for many new projects and certain maintenance activities. This is no small endeavor. Even 15 years ago, the Supreme Court noted, the average applicant for an individual CWA Section 404 permit "spends 788 days and $271,596 in completing the process."

4

*See Rapanos v. United States*, 547 U.S. 715, 721 (2006) (plurality op.) (adding that over "$1.7 billion is spent each year by the private and public sectors obtaining wetlands permits"). Delays of this magnitude threaten to stifle new project development and, in some cases, would prevent EIC members from being able to take timely action necessary to maintain or repair energy, water, and wastewater infrastructure in wetlands or in (or in close proximity to) other jurisdictional waters in preparation for, or as a result of, natural disasters like wildfires, hurricanes, and floods.

Furthermore, although the Order would allow the Corps to reissue NWP 12 after completing the consultation process under the ESA, that process could take many months. Attempting to identify individual impacts on ESA-listed species and critical habitat across the country arising from NWP 12, as opposed to doing so on a project-specific basis, would be a significant undertaking, as the U.S. Fish and Wildlife Service and the National Marine Fisheries Service regularly list new species and designate new critical habitat. In the interim, EIC members and other similarly situated businesses providing essential services to the public may have to procure individual CWA Section 404 permits or redesign projects.

For these and other reasons, the EIC has a strong interest in the Court's decision on whether to partially stay the Order pending appeal, supporting its participation as an amicus. *See* Local Rule 7.5(b)(2)(C).

## II.    The EIC's proposed amicus brief is desirable and relevant.

In deciding whether to grant leave to file an amicus brief, courts typically consider whether the proposed amicus brief would be "useful." *See, e.g., Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 846 (D.D.C. 1996); *cf.* Local Rule 7.5(b)(2)(C)-(D) (requiring proposed amici curiae to explain why the proposed amicus brief "is desirable and relevant, including why the parties cannot adequately address the matter").

To help the Court assess the stay factors of public interest and irreparable harm, the proposed amicus brief would provide real-world, company-specific examples of how the Order presently harms EIC members and their ability to provide essential energy, water, and wastewater services to the public.  For example, the amicus brief would provide information about how the Order has:

- Created circumstances that will prevent certain EIC members from complying with mandatory timelines for projects that, in turn, will make these members subject to enforcement actions;

- Impeded the ability of certain EIC members to complete projects deemed necessary for grid reliability in a timely manner;

- Jeopardized the ability of certain members to construct new sources of renewable energy on a schedule consistent with state renewable energy mandates;

- Delayed long-planned projects to replace, rehabilitate, and develop essential power, water, and wastewater infrastructure, and put the jobs associated with these projects at risk;

- Undermined regulatory certainty with respect to authorizations via NWP 12 that predate the Court's order; and

- Significantly postponed EIC members' ability to recover costs expended on projects that no longer can be completed in a timely manner.

The proposed amicus brief would provide unique information regarding the actual impacts that the Order is having on EIC members and the essential services they provide to the public. Notably, this information addresses a broader range of impacts than the Court has seen thus far, including impacts on water and wastewater infrastructure projects and services. The EIC's amicus brief would be useful by providing new and important information to the Court that the parties have not presented.

## III.   The EIC's request to file an amicus brief is timely.

Considering the unique circumstances of this case and the scope of the EIC's proposed participation, the amicus brief would be timely—indeed, until the Order was released and the Corps filed its motion for a partial stay, EIC members could not reasonably have known to file it sooner. Rather than broad, nationwide relief barring use of NWP 12, Plaintiffs' original and amended complaints requested narrow, project-specific relief with respect to vacatur and injunctions. ECF Nos. 1, Prayer for Relief;

36, Prayer for Relief.  Removing any conceivable doubt, Plaintiffs subsequently and unequivocally confirmed that they were not seeking to have NWP vacated or "broadly enjoined," but only "narrowly tailored relief to ensure adequate environmental review of oil pipelines, especially Keystone XL." *See* ECF No. 50 at 3.  The Court, too, appeared to understand this, finding that "[t]he action's disposition as currently pled by Plaintiffs proves unlikely to impede or impair [interested person's] abilities to rely on NWP 12," as "Plaintiffs do not ask the Court to vacate NWP 12 . . . . [and they] could still prospectively rely on the permit until it expires on its own terms in March 2022, even if Plaintiffs prevail on the merits." ECF No. 59 at 4-5.

Based on the relief Plaintiffs requested, their subsequent consistent statements, and past Court findings, EIC members reasonably did not seek to participate as amici before the Court issued the Order.  Moreover, it was not clear what steps the Corps would take to address the scope of the Order until it filed its motion for partial stay. The EIC has since diligently acted to protect its interests by coalescing and preparing this filing.

The EIC's proposed amicus brief also would not prejudice the parties or delay the remaining proceedings before the Court.  Understanding the expedited briefing schedule, the EIC proposes to file one short amicus brief that addresses the harms caused by the Order within one day of the Court's permission.  The limited length and purely informational nature of the amicus brief would not deprive any party of a meaningful opportunity to respond or delay these proceedings.

8

## CONCLUSION

Based on the foregoing, and considering that courts "err on the side of granting leave," *Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 133 (3d Cir. 2002), the EIC respectfully requests that the Court grant its motion for leave to file an amicus brief.

DATED this 5th day of May, 2020.

BROWNING, KALECZYC, BERRY & HOVEN, P.C.


By /s/ *Brian P. Thompson*
    Brian P. Thompson

      -AND-

    Thomas Jackson (*pro hac vice* application forthcoming)
    BAKER BOTTS L.L.P.

    *Counsel for Amicus Curiae Essential Infrastructure Coalition*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I certify that **UNOPPOSED MOTION FOR LEAVE FOR ESSENTIAL INFRASTRUCTURE COALITION TO FILE AN AMICUS BRIEF PURSUANT TO LOCAL RULE 7.5**, is double spaced, is a proportionately spaced 14 point typeface, and contains 1,990 words.

*Brian P. Thompson*
Brian P. Thompson

# CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of May, 2020, a true copy of the foregoing was served by e-mail and first-class mail, postage prepaid to the following parties:

### *Counsel for Plaintiffs*:

1.  Doug Hayes
    Eric Huber
    Sierra Club Environmental Law Program
    1650 38th Street, Suite 102W
    Boulder, CO 80301
    doug.hayes@sierraclub.org
    eric.huber@sierraclub.org
    *Attorneys for Sierra Club and*
    *Northern Plains Resource Council*

2.  Jaclyn H. Prange
    Cecilia D. Segal
    Natural Resources Defense Council
    111 Sutter Street, Floor 21
    San Francisco, CA 94104
    jprange@nrdc.org
    csegal@nrdc.org
    *Attorneys for Bold Alliance and*
    *Natural Resources Defense Council*

3.  Jared Margolis
    Amy R. Atwood
    Center for Biological Diversity
    P.O. Box 11374
    Portland, OR 97211
    jmargolis@biologicaldiversity.org
    atwood@biologicaldiversity.org
    *Attorneys for Center for Biological*
    *Diversity and Friends of the Earth*

4.      Timothy M. Bechtold
        Bechtold Law Firm, PLLC
        P.O. Box 7051
        Missoula, MT 59807
        tim@bechtoldlaw.net
        *Attorney for all Plaintiffs*

**Counsel for Federal Defendants:**

5.      Benjamin J. Grillot
        Environmental Defense Section
        P.O. Box 7611
        Washington, DC 20044-7611
        benjamin.grillot@usdoj.gov

6.      Kristofor R. Swanson
        Senior Attorney, Natural Resources Section
        P.O. Box 7611
        Washington, DC 20044-7611
        kristofor.swanson@usdoj.gov

7.      Bridget Kennedy McNeil
        Senior Trial Attorney
        Wildlife & Marine Resources Section
        999 18th Street, South Terrace
        Suite 370
        Denver, CO 80202
        bridget.mcneil@usdoj.gov

8.      Mark Steger Smith
        U.S. Attorney's Office – Billings
        2601 Second Avenue North
        Suite 3200
        Billings, MT 59101
        mark.smith3@usdoj.gov

***Counsel for Defendants TransCanada Keystone Pipeline LP and TC
Energy Corporation:***

9.      Peter R. Steenland, Jr.
        Peter C. Whitfield
        Sidley Austin LLP
        1501 K Street, N.W.
        Washington, D.C. 20005
        psteenland@sidley.com
        pwhitfield@sidley.com

10.     Jeffery J. Oven
        Mark L. Stermitz
        Jeffrey M. Roth
        CROWLEY FLECK PLLP
        490 North 31st Street, Ste. 500
        P.O. Box 2529
        Billings, MT 59103-2529
        joven@crowleyfleck.com
        mstermitz@crowleyfleck.com
        jroth@crowleyfleck.com

***Counsel for Defendant-Intervenor State of Montana:***

11.     Timothy C. Fox
        Robert Thomas Cameron
        Montana Attorney General
        215 N. Sanders
        P.O. Box 201401
        Helena, MT 59620-1401
        edoj@mt.gov
        rob.cameron@mt.gov

12.     Jeremiah R. Langston
        Montana Attorney General
        PO Box 201401
        215 North Sanders
        Helena, MT 59620-1401
        jeremiah.langston@mt.gov

13

***Counsel for Defendant-Intervenors American Gas Association, American Petroleum Institute, Association of Oil Pipe Lines, Interstate Natural Gas Association of America, and National Rural Electric Cooperative Association:***

13.    William W. Mercer
       Brianne McClafferty
       Holland & Hart LLP
       401 North 31st Street, Suite 1500
       Billings, MT 59101
       wwmercer@hollandhart.com
       bcmcclafferty@hollandhart.com

14.    Deidre G. Duncan
       Karma B. Brown
       Hunton Andrews Kurth LLP
       2200 Pennsylvania Avenue, NW
       Washington, DC 20037
       dduncan@HuntonAK.com
       kbbrown@HuntonAK.com


            */s/ Brian P. Thompson*
       BROWNING, KALECZYC, BERRY & HOVEN, P.C.