PRERAK SHAH
JEAN E. WILLIAMS
Deputy Assistant Attorneys General

BENJAMIN J. GRILLOT
BRIDGET KENNEDY MCNEIL
KRISTOFOR R. SWANSON
Environment & Natural Resources Division
U.S. Department of Justice

[contact information in signature block]
*Attorneys for Federal Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| **Northern Plains Resource Council**, et al., | Case No. 4:19-cv-44-BMM |
| Plaintiffs, | |
| v. | |
| **U.S. Army Corps of Engineers**, et al., | **Federal Defendants' Reply in Support of Partial Stay Pending Appeal** |
| Defendants, | |
| and | |
| **TransCanada Keystone Pipeline, LP**, et al., | |
| Defendant-Intervenors. | |

## INTRODUCTION

Plaintiffs do not even attempt to justify the overbroad and unrequested remedies in Paragraphs 5 and 6 of the Court's April 15 Order.  For that reason alone, Paragraphs 5 and 6 should be stayed pending appeal.

Instead, Plaintiffs largely use their response to request an entirely new and different remedy: partial vacatur with respect to new oil and gas pipeline construction nationwide.  Essentially, Plaintiffs have filed a brand new lawsuit— with new purported evidence, new targeted projects, new alleged injuries, and new requested relief—masquerading as an opposition to a motion for stay pending appeal.  The Court should reject such litigation alchemy.[1]

First, this is a belated and improper attempt (after a summary judgment ruling) to amend the complaint and retroactively bolster Plaintiffs' standing declarations to implicate projects and alleged harms that Plaintiffs nowhere raised in this case.  Accepting Plaintiffs' proposal would award remedies that Plaintiffs did not request and in fact waived; attempt to relieve alleged injuries that Plaintiffs did not assert; and call into question projects for which no party, project proponent,

---

[1] Plaintiffs' newly requested partial vacatur and injunction have different scopes. There does not appear to be any reason for the divergence.  Whatever the Court expects from the Corps in advance of any final judgment should be set forth in an injunction.  And making the two forms of relief coextensive avoids unnecessary confusion for the public and regulated community.

or interested member of the public had any notice or opportunity to object.  Fed.
Defs.' Mot. 9–11, 14–15, ECF No. 131.

Second, Plaintiffs' request for a modified remedy has nothing to do with the
motion before the Court.  Federal Defendants have moved for a partial stay
pending appeal of the *existing* Order.[2]  Questions of what other hypothetical
remedies a court could have issued are not relevant to the present motion.  It is the
*existing* Order that would be subject to any appeal and for which a stay pending
that appeal is necessary.

All Parties appear to agree that Paragraphs 5 and 6 in the April 15 Order are,
at a minimum, overbroad.  Rather than directly issuing some new remedy that also
was never briefed or sought in this case, the proper course is to simply vacate (or
stay) Paragraphs 5 and 6 of the Order.  Parties are accountable for the arguments
and relief they seek; and courts resolve disputes the parties present.  Just as this
Court should not have issued a global injunction and vacatur that Plaintiffs did not
seek and in fact disclaimed, Plaintiffs should not be permitted now to use a
response to a motion to stay as a means to seek new remedies, and enjoin new
projects, that they never previously raised in this case. This is not how litigation
works.

---

[2] Plaintiffs are incorrect that Federal Defendants have moved for reconsideration or
to modify the injunction.  *See* Pls.' Resp. 1 & n.1, ECF No. 144.  Acknowledging
the possibility that the Court did not intend the broad remedy, we simply noted the
Court's inherent authority to revise any interlocutory order.

The Court's current remedy is set forth in the April 15 Order.  For the reasons set forth in our motion and below, Paragraphs 5 and 6 of that Order should be stayed in their entirety pending appeal, or, at the very least, stayed with respect to everything other than Keystone XL.

**ARGUMENT**

When Plaintiffs finally turn to the motion to stay, they largely do not dispute that the remedies, as they stand, were improper and will not survive appeal. Plaintiffs have not disputed that the relief includes remedies that Plaintiffs and the Court had explicitly disavowed, or that the Court had not conducted the analysis required to justify their imposition.  Plaintiffs have not attempted to support the current remedies, and they do not address the case law explaining why Paragraphs 5 and 6 in the April 15 Order were an abuse of discretion.  *See* Fed. Defs.' Mot. 10, 13, 14–15.  Plaintiffs instead analyze the factors for a stay pending appeal in comparison to some hypothetical order that the Court has not issued and that Plaintiffs did not seek.

## I.     Federal Defendants Are Likely to Succeed on Their Appeal.

First, Plaintiffs do not advance any argument to show that the broad vacatur ordered here is appropriate under the factors in *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993).  Initially, there was no basis for that remedy because Plaintiffs explicitly disclaimed it, this Court previously recognized that Plaintiffs did not seek vacatur of Nationwide Permit 12,

4

and the Corps had no notice of this possible remedy.  Plaintiffs have no persuasive response.

Indeed, Plaintiffs unquestionably waived any claim for injunctive relief or vacatur of Nationwide Permit 12 extending beyond Keystone XL.  The Ninth Circuit has made clear that a "plaintiff may waive a claim for injunctive relief by failing to argue its merits at summary judgment."  *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017).  Here, Plaintiffs did not merely fail to argue in favor of these remedies; they repeatedly and explicitly made clear that they were not seeking them.

Putting that aside, Plaintiffs do not suggest that the Court properly weighed (or considered) the factors required to obtain permanent injunctive relief.  Instead, Plaintiffs fall back on much more general arguments that vacatur is the default remedy.  Plaintiffs are incorrect in arguing that the Court's remedy will survive appeal because the Administrative Procedure Act authorizes district courts to "set aside" agency action, because district courts often enjoin agency activities during the pendency of a remand to prevent environmental harm, and because vacatur would further the ESA's purpose.  Pls.' Resp. 9.

Vacatur is "clearly a form of equitable relief that the Court may award, withhold, and craft to fit the circumstances of the case before it."  *Sierra Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100, 1106 (E.D. Cal. 2013).  And the vacatur assessment is not limited to situations where it is necessary to avoid environmental

harm, but based on a broader examination of the equities.  *See Cal. Cmtys. Against Toxics v. U.S. EPA*, 688 F.3d 989 (9th Cir. 2012).  The Ninth Circuit considers "competing claims of injury . . . and the effect on each party [and third parties] of the granting or withholding of the requested relief," *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995) (quotations omitted), "the possibility of undesirable consequences which we cannot now predict that might result from invalidation of [the unlawful decisions]," *W. Oil & Gas Ass'n v. U.S. EPA*, 633 F.2d 803, 813 (9th Cir. 1980), and a "desire to avoid thwarting in an unnecessary way the operation of [a statute] during the time the deliberative process is reenacted" *Id*.  The fact that the Court identified an ESA violation does not change the analysis.  Courts routinely engage in the *Allied-Signal* evaluation, even in ESA cases.  *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995); *All. for the Wild Rockies v. Savage*, 375 F. Supp. 3d 1152, 1155 (D. Mont. 2019) (rejecting argument that the policy underlying the ESA requires vacatur).

Plaintiffs claim the broader remedies ordered here are justified because Counts One, Two, and Four were challenges to the issuance of Nationwide Permit 12, rather than to verifications related to Keystone XL.  Pls.' Resp. 21–22.  This misses the point.  Despite challenging the Permit's issuance, Plaintiffs requested relief as to (and alleged harms emanating from) only Keystone XL.  Plaintiffs' post-decision effort to submit facts supporting broader relief only underscores the error in the April 15 Order.  And such belated factual submissions are not a basis

on which the Court's existing remedy order could be upheld on appeal.  *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 894 (1990) (district court acted properly in declining to admit standing affidavits proffered only for the first time after close of summary judgment briefing).[3]

Plaintiffs also argue that the Order can be sustained because the Amended Complaint requested "other relief" that the Court may deem appropriate and that Rule 54(c) does not limit relief to that requested in the complaint.  Pls.' Opp. at 22. But, as the Supreme Court unanimously reaffirmed this very week, the American legal system is designed on the premise that parties "know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *U.S. v. Sineneng-Smith,* No. 19-67, 2020 WL 2200834, *4 (S. Ct. May 7, 2020). Rule 54(c) simply does not apply when a court grants relief not requested and of which the opposing party has no notice, thereby prejudicing that party.  *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424 (1975); *see Rental Dev. Corp. v. Lavery*, 304 F.2d 839, 842 (9th Cir. 1962) (If "the failure to ask for particular relief

---

[3] Even if the newly raised projects were relevant to the present motion, Plaintiffs are still seeking to justify, via only a handful of projects, a nationwide remedy. Plaintiffs, however, fail to inform the Court that many of these pipelines are already the subject of ongoing litigation in other courts—Dakota Access (D.D.C.), Enbridge (6th Cir.), Mountain Valley (4th Cir.), Atlantic Coast (4th Cir.), and Permian (W.D. Tex.)—including cases brought by some of the Plaintiffs here. Thus, Plaintiffs' new effort to seek this Court's aid in their opposition to those projects risks dragging the Court into separate litigation.  And, in any event, the declarations fall well short of demonstrating standing for a nationwide injunction, let alone any of the specific pipeline projects mentioned in the declarations.

substantially prejudiced the opposing party, Rule 54(c) does not sanction the granting of relief not prayed for in the pleadings.").

Here, not only did Plaintiffs fail to request the relief granted, their complaint made affirmative representations about the limitation of their requested relief—affirmations they repeated throughout the litigation and that the Court acknowledged. *See* Am. Compl. 88, ECF No. 36; Pls.' Resp. to Montana Mot. to Intervene 3, ECF No. 50; Pls.' Reply in Supp. of Partial Summ. J. 56–57, ECF No. 107; Nov. 7, 2019, Order 4–5, ECF No. 59.  As the various Defendants explained in their memoranda, this lack of notice prejudiced not only the Corps, but also TC Energy, the State of Montana, and members of the Coalition.  In addition, parties that were affected by the Order chose not to seek intervention or to participate as amicus in the litigation based on these express representations.  *See* EIC's Mot. for Leave to File an Amicus Brief 1–2, ECF No. 141.

Plaintiffs also claim that vacatur was not in error because the parties have now been able to present arguments and evidence. Pls.' Resp. 21–22.  But a motion for stay pending appeal is not the forum for restructuring litigation to assert new—and in many cases waived—arguments and claims of relief.  The issue presented by Federal Defendants' motion to stay pending appeal is not whether a court *could have* vacated the permit or broadly enjoined the Corps—had it had

such evidence before it.[4]  Rather, the issue is whether the *remedy already granted here* was an abuse of discretion.  *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1101 (9th Cir. 2014) (equitable relief, such as vacatur, reviewed for abuse of discretion). The Court did not analyze the need to vacate or enjoin under the facts of this case, nor did it undertake any equitable analysis as to the appropriate scope of either remedy.  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 158 (2010) ("It is not enough for a court considering a request for injunctive relief to ask whether there is a good reason why an injunction should *not* issue; rather, a court must determine that an injunction *should* issue" based on the relevant factors).

Finally, the Corps is likely to succeed on its appeal of the Court's ESA determination.  Plaintiffs' arguments in response do not change that result, mainly because they highlight some of the very errors in the Court's ruling.  Plaintiffs claim that the Court properly relied on the Corps' own findings of impacts to species, Pls.' Resp. 5, but the generalized ecosystem impacts cited by the Court are not evidence that Nationwide Permit 12 authorizes discharges that "may affect" protected species.  By the plain language of the Permit and applicable regulations, no party may use Nationwide Permit 12 if protected species or habitat "might be affected or is in the vicinity of the project" unless the district engineer notifies the

---

[4] We do not concede that the belated evidence Plaintiffs submit would provide an adequate evidentiary record for the relief they now seek.  In addition, even Plaintiffs' proposed modification to vacatur and the injunction would still inappropriately harm the public and project proponents, who still would have had no notice or opportunity to intervene or otherwise object to the relief.

party that the ESA requirements have been satisfied.  82 Fed. Reg. 1,860, 1,957, 1,999–2,000 (Jan. 6, 2017); 33 C.F.R. § 330.4(f).

Plaintiffs also emphasize the Court's reliance on stray statements made by FWS and NMFS in a 2015 revision to the Section 7(a)(2) consultation regulations. Pls.' Resp. 5.  This generalized statement provides no evidence to support a finding that the 2017 Nationwide Permit 12 "may affect" protected species or habitat; as the wildlife agencies recognized, Section 7 consultation is not required "for a framework programmatic action that has no effect on listed species or critical habitat."  80 Fed. Reg. 26,832, 26,835 (May 11, 2015).  Thus, any reliance on these statements is circular, as the key determination is whether the specific action has an "effect"—a determination that the Corps reasonably made here in the negative. Next, Plaintiffs highlight the Court's dismissal of General Condition 18.  Pls.' Opp at 5–6.  Not only was the Court incorrect in holding this condition delegates the Corps' ESA obligations to permittees, *see* Fed. Defs.' Mot. in Supp. Of Partial Summ. J. 33 n.11, ECF No. 86, but the Court ignored the other elements on which the Corps relied to support the "no effect" determination.  Fed. Defs.' Reply 16–17, ECF No. 110 (regional conditions, regional programmatic consultations, standard local operating procedures for protected species and areas, and measures from the NMFS 2014 biological opinion). For these reasons and others, the Corps is likely to prevail on the appeal of the Court's ESA ruling.

## II.     The Corps and the Public Interest Will be Harmed Absent a Stay.

Plaintiffs have also presented nothing to undercut the extreme harm to the Corps and the public interest.  *See* Pls.' Resp. 33–37.  To the contrary, Plaintiffs' request for a modified remedy implicitly acknowledges the severity of that harm. As to the Corps, Plaintiffs' only rebuttal is that the time and money needed to undertake individual permits reviews cannot amount to harm because the Corps would simply be complying with the ESA.  *See* Pls.' Resp. 33.  But Plaintiffs miss the point.  The harm arises, in part, because the Court's Order implicates *every* potential use of Nationwide Permit 12 pending an ESA programmatic consultation, regardless of whether a project could have any potential implications for listed species or habitat.

Plaintiffs' argument on harms to the public interest is similarly flawed.  *See* Pls.' Resp. 39–40.  Rather than deal with the implications of the Court's remedy, Plaintiffs posit that the harms are overstated because the Court should issue a different remedy.  *See id.*  But that argument has nothing to do with the *existing* Order.  A stay of the existing vacatur and injunction are necessary because they far overstep what was at issue in this case, thereby implicating thousands of utility line projects.  And Plaintiffs have simply ignored our argument that the breadth of the Order is contrary to the congressional intent underlying Section 404(e) of the Clean Water Act.  *See* Fed. Defs.' Mot. 17–18, 20.

Plaintiffs cannot overcome these harms with a suggestion that the harms can be lessened by limiting any stay to things other than construction of new oil and gas pipelines.  *See* Pls.' Resp. 4.  For one, the suggestion makes little sense, as discharges have the same potential ecosystem impacts, regardless of the ultimate purpose of the project.  More importantly, Plaintiffs have not seriously attempted to defend the existing Order's scope.  *See* Pls.' Resp. 8–9.  But it is the existing Order that is presently subject to appeal.  Thus, because no party has argued that the existing Order is justified, a stay in the nature of what Plaintiffs propose would simply temporarily keep in place portions of a remedy that no party appears ready to defend before the Ninth Circuit.  Further, by requesting a stay for anything other than new oil and gas pipelines, Plaintiffs are actually acknowledging that the broad harms caused by the vacatur and injunction are significant.  If they were not, there would be no reason for a stay as to those activities.

## III.   The Balance of the Harms Weighs in Favor of a Stay.

The balance of harms weighs heavily in favor of a stay.  The harms Plaintiffs alleged in this case were limited to the Keystone XL pipeline.  Plaintiffs now argue for nationwide relief because they oppose other pipeline projects that were relying (or intending to rely) upon Nationwide Permit 12.  Pls.' Resp. 26–27.  Whether those projects proceed, however, has no impact whatsoever on the specific injuries Plaintiffs sought to remedy *in this case*.  Am. Compl. at 88.

12

Further, even if the Court could consider these newly cited harms for purposes of the stay motion, it would not change the ultimate conclusion. As we have explained, the harms to the Corps and the public interest are significant, while Plaintiffs' harms—even those they now attempt to establish—focus on only a handful of projects. Those interests cannot outweigh the extremely disruptive impacts on the Corps and the thousands of other private and governmental projects not before the Court.[5]  *See* EIC Amicus Curiae Brief, ECF No. 147. Rather than address the clear imbalance of harms, Plaintiffs attempt to distort the analysis by again using their newly requested relief as the counterweight. Pls.' Resp. 39–40. But it is the *existing* Order that is presently be subject to appeal. And it is therefore the balancing of harms associated with *that* Order that is relevant for purposes of any stay. Accordingly, Plaintiffs' interest in a handful of projects does not outweigh the significant harms to the Corps and the public interest.

In any event—and even as to the newly identified projects—Plaintiffs have not explained how their interests would be harmed during the pendency of any appeal. They have therefore failed to make a sufficient showing of harm for purposes of the present motion. *See Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1125 (9th Cir. 2008) (relative hardship analyzed within

---

[5] If Plaintiffs believe Corps Nationwide Permit 12 authorizations related to those other projects are unlawful, they are free to make those claims in the appropriate court. Indeed, Plaintiffs have already started to do so. *See* Complaint, *Sierra Club v. U.S. Army Corps*, No. 20-cv-460 (W.D. Tex. April 30, 2020).

temporal component of the appeal process).  And TC Energy has already explained

why a stay of the Court's Order with respect to Keystone XL will not harm

Plaintiffs' interest.

Accordingly, Paragraphs 5 and 6 of the April 15 Order should be stayed in

their entirety pending appeal.

Date:  May 8, 2020

MARK STEGER SMITH
Assistant U.S. Attorney
Office of the United States Attorney
2601 Second Ave. North, Suite 3200
Billings, MT 59101
Tel: (406) 247-4667
Fax: (406) 657-6058
mark.smith3@usdoj.gov

PRERAK SHAH
JEAN E. WILLIAMS
Deputy Assistant Attorneys General

____*s/ Kristofer Swanson*____
KRISTOFOR R. SWANSON
(Colo. Bar No. 39378)
Senior Attorney
Natural Resources Section
Envt. & Natural Resources Div.
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0248
Fax: (202) 305-0506
kristofor.swanson@usdoj.gov

*s/ Benjamin Grillot*_____
BENJAMIN J. GRILLOT
(D.C. Bar No. 982114)
Environmental Defense Section
Envt. & Natural Resources Div.
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0303

Fax: (202) 305-0506
benjamin.grillot@usdoj.gov

__/s/ Bridget K. McNeil__
BRIDGET KENNEDY MCNEIL
Senior Trial Attorney
Wildlife & Marine Resources Section
Envt. & Natural Resources Div.
U.S. Department of Justice
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
303-844-1484
bridget.mcneil@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rules 7.1(d)(2)(E), the above motion is proportionately spaced, has a typeface of 14 points, and contains 3,237 words, excluding the caption, signature blocks, and certificates of service and compliance.

*Bridget McNeil*
Bridget Kennedy McNeil

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2020, I filed the above pleading with the Court's electronic case management system, which caused notice to be sent to all parties.

*Bridget McNeil*
Bridget Kennedy McNeil
