William W. Mercer  
Brianne McClafferty  
HOLLAND & HART LLP  
401 North 31st Street, Suite 1500  
Billings, MT  59101  
(406) 252-2166  
wwmercer@hollandhart.com  
bcmclafferty@hollandhart.com  

Deidre G. Duncan (*Pro hac vice*)  
Karma B. Brown (*Pro hac vice*)  
HUNTON ANDREWS KURTH LLP  
2200 Pennsylvania Avenue, NW  
Washington, DC  20037  
(202) 955-1500  
dduncan@HuntonAK.com  
kbbrown@HuntonAK.com  

*Counsel for Defendant-Intervenors American Gas Association, American Petroleum Institute, Association of Oil Pipe Lines, Interstate Natural Gas Association of America, and National Rural Electric Cooperative Association*

**IN THE UNITED STATES DISTRICT COURT  
FOR THE DISTRICT OF MONTANA  
GREAT FALLS DIVISION**

| | |
|---|---|
| NORTHERN PLAINS RESOURCE COUNCIL, et al.,<br>    Plaintiffs,<br><br>    v.<br><br>U.S. ARMY CORPS OF ENGINEERS, et al.,<br>    Defendants, and<br><br>THE STATE OF MONTANA, TRANSCANADA KEYSTONE PIPELINE, LP, TC ENERGY CORPORATION, AMERICAN GAS ASSOCIATION, AMERICAN PETROLEUM INSTITUTE, ASSOCIATION OF OIL PIPE LINES, INTERSTATE NATURAL GAS ASSOCIATION OF AMERICA, and NATIONAL RURAL ELECTRIC COOPERATIVE ASSOCIATION,<br>    Defendant-Intervenors. | Case No. CV-19-44-GF-BMM<br><br>**NWP 12 COALITION'S REPLY IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR PARTIAL STAY PENDING APPEAL** |

# Table of Contents

I. There is Broad Accord that the Court's Order Is Overbroad and Relief Is Warranted. ...................................................................................1

    A. All Parties Agree the Court's Current Order Goes Too Far. ................2

    B. There Is No Rational Basis for Plaintiffs' "Fix."..................................4

    C. Plaintiffs Lack Standing. ......................................................................6

    D. Plaintiffs' Proposed Narrowing of the Vacatur Fails to Address the Real and Significant Harms and Regulatory Uncertainty Created by the Order. .........................................................9

    E. Vacatur of NWP 12 Is Not Warranted Under these Circumstances. ....................................................................................11

II. Conclusion. ...............................................................................................13

Certificate of Compliance

Certificate of Service

I.   **There is Broad Accord that the Court's Order Is Overbroad and Relief Is Warranted.**

The NWP 12 Coalition strongly supports the Federal Defendants' motion for partial stay of the Court's extraordinary order pending appeal. (Doc. 131). For the reasons explained in our memorandum, a stay of the Court's order pending appeal is warranted because the NWP 12 Coalition, its members, and the public will unnecessarily suffer significant and irreparable harm from vacatur of Nationwide Permit 12 ("NWP 12").[1] (Doc. 138).

The Federal Defendants are likely to prevail on appeal. The Court erred by: (1) providing relief Plaintiffs did not request and in contradiction to representations by the Court that NWP 12 would remain available to Defendants and others; (2) abusing its discretion in vacating NWP 12, despite the significant disruption and serious and irremediable harms that will result; and (3) issuing broad, nationwide injunctive relief that exceeds the specific harms shown by Plaintiffs, enjoins thousands of projects across the country that are necessary to ensure safe and reliable access to energy, and thus is contrary to the public interest.

---

[1] The NWP 12 Coalition includes the American Gas Association ("AGA"), American Petroleum Institute ("API"), Association of Oil Pipe Lines ("AOPL"), Interstate Natural Gas Association of America ("INGAA"), and National Rural Electric Cooperative Association ("NRECA") (collectively, the "NWP 12 Coalition" or "Coalition").

Plaintiffs admit the overbreadth of the Court's remedy and propose to narrow it to cure the overreach. (Doc. 144 at 1-2). The NWP 12 Coalition agrees that relief is warranted, but Plaintiffs' novel remedy has no basis in the record. Instead, consistent with Plaintiffs' Complaint and repeated representations during the litigation, NWP 12 should remain in place and be remanded to the Corps. (*See, e.g.,* Doc. 50 at 3; Doc. 36 at 87-88).

The Coalition submits this reply to address five points.

**A.     All Parties Agree the Court's Current Order Goes Too Far.**

Plaintiffs acknowledge the order is overbroad. (Doc. 144 at 1-2). Plaintiffs go to great lengths to argue that the Court had discretion to award relief they explicitly disavowed.[2] (*Id.* at 8-10, 21). But, at the same time, they concede that narrowing is necessary to avoid great harm to the public at large. (*Id.* at 9 ("propos[ing] [to] narrow[] the scope of the vacatur and injunction to minimize … disruption.")). Indeed, in contending that the public interest does not require a stay, Plaintiffs' *sole* argument is that their proposed narrowing of the Court's order would "avoid[] any associated harms to the public." (*Id.* at 39).

Notably, during summary judgment briefing, Plaintiffs specifically stated that they did not seek to "have NWP 12 broadly enjoined [because] … this case …

---

[2] Plaintiffs did not seek to vacate NWP 12, but rather sought vacatur and injunctive relief only as to Keystone XL approvals. (Doc 52 at 2; Doc. 50 at 3; Doc. 36 at 87-88).

is *not meant to affect other uses of NWP 12 that provide a public benefit and would have only minimal environmental impacts*." (Doc. 107 at 56-57) (emphasis added). Rather, Plaintiffs sought only "declaratory relief and a remand as to NWP 12 itself." (Doc. 52 at 2).

So, remarkably, all parties are now on record acknowledging the significant harms that will result from vacatur of NWP 12, which far outweigh any unsubstantiated harms to species that might result from the Corps' perceived failure to undertake programmatic consultation when reissuing NWP 12. General Condition ("GC") 18 prohibits any action that "might affect" listed species or designated critical habitat and ensures appropriate consultation under the Endangered Species Act ("ESA") occurs on a project-specific basis. If, as the Court found, the protections already in place under the NWPs are insufficient under Section 7 of the ESA, the incremental harm to species that programmatic consultation would prevent is entirely speculative. The harm to the public that results from vacatur of NWP 12, by contrast, is real, as acknowledged by all parties.

All parties thus concur that relief from the Court's order is necessary. The only dispute is how far that relief must go. The Federal Defendants seek a stay of the Court's order pending appeal, and the NWP 12 Coalition concurs in that request. But if the Court reconsiders its remedy to conform to Plaintiffs' original

request, remand of NWP 12 without vacatur is the appropriate remedy under the circumstances.

## B. There Is No Rational Basis for Plaintiffs' "Fix."

Plaintiffs propose their own solution to remediate the Court's far-reaching order, purporting to dictate which "utility line activities" authorized by NWP 12 are permissible, and which are not. But Plaintiffs never sought this relief, lack standing to seek it, and there is no record support to justify Plaintiffs' arbitrary distinction. Indeed, Plaintiffs' proposed "solution" only accentuates the problems with the Court's order.

NWP 12 authorizes a category of "utility line activities" that meet Clean Water Act ("CWA") § 404(e)'s "minimal adverse environmental effects" standard. Since 1977, NWP 12 has provided authorization for minor discharges of dredged or fill material associated with "the construction, maintenance, repair, and removal of utility lines and associated facilities in waters of the United States." 82 Fed. Reg. 1860, 1985-86 (Jan. 6, 2017). "Utility line" is defined to include electric, telephone, internet, radio, and television cables, lines, and wires, as well as oil or gas pipelines. *Id.* at 1985.

Plaintiffs proffer that the Court could impose "a partial vacatur that applies to the construction of new oil and gas pipelines," but leaves in place use of NWP 12 for "non-pipeline construction activities as well as routine maintenance,

4

inspection, and repair activities." (Doc. 144 at 2). Plaintiffs' proposed parsing of this approved category of "utility line" activities suggests that some NWP 12-authorized activities are okay, while others are not. But Plaintiffs never sought this relief and, even if they had, there is no record to support it.

Plaintiffs attempt to distinguish between construction of "major oil and gas pipelines," which they claim pose "severe" risks to species, and other activities authorized by NWP 12, including construction of non-fossil fuel pipelines and utility lines, which they claim "may pose less risk to species." (*Id.* at 13, 14, 15). But Plaintiffs have not explained (nor could they based on the record before the Court) why "[p]rogrammatic consultation is needed to ensure that oil and gas pipelines … will not cause cumulative adverse effects to listed species" (*id.* at 38-39), but other activities authorized by NWP 12 do not raise this concern.

Plaintiffs' distinctions are without basis and inconsistent on their face. For example, Plaintiffs contend that "the construction of major oil and gas pipelines like Keystone XL – … not only pose a grave risk of oil spills but also affect numerous waterbodies." (*Id.* at 13). Clearly, *gas* pipelines do not pose a risk of *oil* spills, and the substance of what a linear project transports or transmits does not change the nature of the temporary impacts associated with constructing it. There is no support, in the record or otherwise, to justify Plaintiffs' asserted difference in impacts from these activities.

### C. Plaintiffs Lack Standing.

Plaintiffs never established standing to justify vacatur of NWP 12 and the nationwide injunction. *See WildEarth Guardians v. Jewell*, 738 F.3d 298 (D.C. Cir. 2013) (Plaintiffs bear the burden of showing they are entitled to relief). Indeed, this is not surprising. Consistent with the remedy Plaintiffs sought, which was limited to vacatur and injunctive relief as to the Keystone XL project, Plaintiffs' standing declarations focused on their members' purported harm from construction of the Keystone XL project. Notably, even now, "Plaintiffs agree that their challenge *focused* on the Corps' use of NWP 12 'to approve massive oil pipelines like Keystone XL' as particularly harmful." (*Id.* at 25) (emphasis in original).

In light of their failure to demonstrate harm, Plaintiffs now take three tacks. First, Plaintiffs attempt to draw an artificial distinction between nationwide vacatur of NWP 12 and a nationwide injunction with the same effect. They then incorrectly contend that they need not establish standing for nationwide vacatur of NWP 12, while implicitly conceding that the record includes only alleged harms sufficient to justify a narrow injunction relating to Keystone XL. Plaintiffs never explain the distinction between the two remedies, because there is none. As the Federal Defendants explain, standing is not dispensed in gross, even for vacatur of rules under the APA.

Second, they attempt to remediate the Court's overbroad order by suggesting, without record support, that partial vacatur of NWP 12, limited to construction of new oil and gas pipelines, would "redress[] the particular harms to listed species set forth in Plaintiffs' summary judgment briefs." (*Id.* at 16). Yet Plaintiffs' proposed remedy is still overbroad because it would impact every oil and gas pipeline constructed in the country.

Third, in a belated and untimely effort to establish standing for the broad vacatur of NWP 12 and injunctive relief awarded by the Court, which – of course – they did not seek, Plaintiffs filed 15 outside-the-record declarations. (*Id.* at 26; Docs. 144-1 to 144-15). These post-hoc declarations posit injuries to species and waters from use of NWP 12 for proposed projects not in the record, not before the Court, and well outside the Court's jurisdiction.[3] Certain declarants cite projects

---

[3] Plaintiffs argue that Intervenors' "speculative assertions 'do[] not constitute irreparable injury,'" (Doc. 144 at 35 (citations omitted)), but the same can readily be said of Plaintiffs' speculative assertions of harm from proposed projects that might rely on NWP 12, which are not part of the administrative record for reissuance of NWP 12. *See, e.g.,* Adams Decl. ¶ 5 (Doc. 144-1) ("The pipeline *could* also contaminate the drinking water supply….") (emphasis added); Devine Decl. ¶ 8 (Doc. 144-4) ("construction of oil and gas pipelines under NWP 12 *could* negatively affect these waterways") (emphasis added); Dreher Decl ¶ 3 (Doc. 144-5) ("We are worried that [contamination] *could* happen to our well….") (emphasis added); Reed Decl. ¶ 7 (Doc. 144-13) (relying on "map showing numerous oil and gas pipelines *proposed* for transporting product across Texas," and asserting these proposals "would involve hundreds of water crossings and *potential* impacts to threatened and endangered species ….") (emphases added); Shaunesey Decl. ¶ 9 (Doc. 144-15) (expressing concern with pipeline's "*potential* impacts on Virginia's environment and on wildlife, including endangered and other sensitive species.")

that already have been adjudicated by other courts; other declarants cite projects subject to current challenges, which could be undermined by this Court's order; and yet other declarants cite projects that, if challenged, are subject to exclusive jurisdiction in the Courts of Appeals pursuant to the Natural Gas Act. 15 U.S.C. § 717r(d)(1). The proponents of these projects, and the members of the public the projects will serve, are not parties to the case and thus cannot respond to Plaintiffs' asserted harms and the accuracy of those claims, nor can they explain the benefits of the projects or the disruption an overbroad remedy might cause them. Moreover, these assertions of harm are not relevant.

Declarations submitted during briefing on a motion to stay cannot and do not retroactively cure Plaintiffs' lack of standing for the broad relief awarded. *See Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1035-56 (D.C. Cir. 1988) ("the obligation of this Court is to look at the record before the District Court at the time it granted the motion [for summary judgment], not at some later point"); *Summers v. Earth Island Inst.*, 555 U.S. 488, 495 n.*, 508 (2009) (declining to consider standing affidavits submitted after decision as part of opposition to a motion to

---

(emphasis added). *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (holding that standing must be based on an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical") (internal quotation marks omitted); *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (holding that standing must be based on "imminent injury on account of the defendant's conduct," and cannot be based on "speculation or 'subjective apprehension' about future harm").

8

stay). As a result, even if they had requested it, Plaintiffs did not establish standing to receive the broad remedies the Court issued. Plaintiffs' belated declarations do nothing more than confirm the overbreadth of the order.

    **D.    Plaintiffs' Proposed Narrowing of the Vacatur Fails to Address the Real and Significant Harms and Regulatory Uncertainty Created by the Order.**

The NWP 12 Coalition has explained, through detailed affidavits from each of its members, the immediate and irreparable injuries the Coalition, its members, and the public will suffer from vacatur of NWP 12. (Doc. 138 at 5-18). The Coalition relies upon NWP 12 for a wide range of authorized utility line activities, including maintenance, repair, and construction projects across the country. All of these activities are necessary to ensure the continued safe, reliable, and affordable delivery of energy, water, telecommunications, and other basic necessities to U.S. consumers. The delay and expense resulting from the unavailability of NWP 12 harm not only the Coalition's members, but the public at large and our nation's economy, energy security, energy diversity, and ability to respond to the current pandemic.

For example, vacatur of NWP 12 will cause immediate and serious delays for new natural gas transmission pipeline projects and gas distribution main replacement work, which threatens the ability of AGA members to provide safe and reliable natural gas to customers, including hospitals, COVID-19 essential

9

business, U.S. military bases, in new and growing markets. *See* Murray Aff. ¶¶ 10, 16 (Doc. 138-2). INGAA members, likewise, explained that vacatur of NWP 12 will delay critical and time-sensitive new natural gas pipeline construction such that projects may miss the limited construction windows imposed by FERC, the U.S. Fish and Wildlife Service, state agencies and others. *See* Dreskin Aff. ¶¶ 14, 26, 27 (Doc. 138-3). Such delays threaten the reliability of our nation's natural gas pipeline system and significantly harm the Coalition's members' ability to meet the growing energy needs of customers. (*Id.*). AOPL members explained that vacatur of NWP 12 will cause significant permitting delays for the construction of new pipeline projects that are necessary to meet the growing energy demand and enhance our Nation's energy security, and to ensure the integrity and safety of their pipelines. *See* Black Aff. ¶¶ 6, 12, 13, 18 (Doc. 138-1). And, an API member that recently entered into a five-year contract requiring construction of a new pipeline to deliver propylene to a customer under a set delivery date, in reliance on the availability of NWP 12, stands to be in breach of contract and lose significant business opportunities if NWP 12 is unavailable. *See* Rorick Aff. ¶ 16 (Doc. 138-5).

Plaintiffs point to the existence of individual permits as an alternative means to authorize new construction of oil and gas pipelines. But the potential availability of individual permits at some undetermined time in the future does not

ameliorate the harms caused by vacatur of NWP 12.  Permitting delays, for example, will cause significant delays in a project schedule, resulting in "commercial harm to the company, its shippers, the affected downstream customer, and, ultimately, the broader economy." Rorick Aff. ¶ 15 (Doc. 138-5).  Moreover, permitting delays that cause a project to suspend construction activities will result in millions of dollars of unrecoverable additional construction costs because, among other things, contractors must be reimbursed for time and material costs for labor, equipment, materials, and subcontractors.  Black Aff. ¶ 16 (Doc. 138-1).

Plaintiffs' attempt to narrow the vacatur of NWP 12 does not and cannot cure the loss of streamlined CWA authorization caused by the order, which impairs the Coalition's members' ability to meet their public service obligations to provide energy that is essential to our nation's security, public health and safety, economic viability, and way of life.

### E.     Vacatur of NWP 12 Is Not Warranted Under these Circumstances.

Although the NWP 12 Coalition does not agree with the Court's determination that programmatic consultation is required, if the Court reconsiders its order, any remedy imposed should be limited to remand without vacatur.  The Court abused its discretion in vacating NWP 12. (Doc. 131 at 10-11; Doc. 138 at 18-23).  As explained in the NWP 12 Coalition's memorandum, if a court finds an agency action unlawful, it should remand the matter to the agency for further

action. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Vacatur of NWP 12 was not warranted here because "[w]hether agency action should be vacated depends on how serious the agency's errors are 'and the disruptive consequences….'" *Cal. Cmtys. Against Toxics v. U.S. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (per curiam).

The Federal Defendants have explained that the error identified by the Court is not serious enough to require vacatur. (Doc. 131 at 11-12). The Court held that programmatic consultation is required. While the Coalition does not concede that is correct, the Services' regulations confirm that "Section 7 of the [ESA] provides significant flexibility for Federal agency compliance…." 84 Fed. Reg. 44,976, 44,996 (Aug. 27, 2019). Indeed, for "a collection of agency actions that would otherwise be subject to individual consultation[s]," such as the NWPs, "programmatic consultation would be considered an optional form of section 7 compliance." *Id*. Ultimately, "programmatic consultations are flexible consultation tools that may be developed based on the circumstances of the proposed action." *Id*. at 45,001. The Corps' perceived failure to undertake voluntary programmatic consultation results in no harm to species. Either activities authorized by NWP 12 have no effect on species or designated critical habitat, or they undergo the appropriate consultation process under GC 18.

Moreover, as to the equities, vacatur of NWP 12 is extremely disruptive to the Corps, NWP 12 Coalition and its members, and the public at large. The Order impacts the use of NWP 12 for any utility line project across the country, including those that have nothing to do with the ESA. *See* Moyer Decl. ¶ 6 (Doc. 131-1). Either projects have no effect on species, or they have undergone the appropriate consultation process under GC 18. Therefore, there is no evidence of *any* harm to *any* species.

Under the circumstances, balancing the harms, the injuries to the public and the Corps from the broad remedy entered by the Court are significant and extend nationwide and across numerous industries (many of which are not before the Court). Plaintiffs' alleged harms, on the other hand, relate to a specific project (Keystone XL) that has not yet been authorized by the Corps. Accordingly, the vacatur of NWP 12 is not warranted, is contrary to the public interest, and amounts to an abuse of discretion.

## II.   Conclusion.

The NWP 12 Coalition respectfully requests the Court grant the Federal Defendants' Motion for Partial Stay Pending Appeal.

Date:  May 8, 2020                                   Respectfully submitted,

                                                                    */s/ Karma B. Brown*
                                                                    Deidre G. Duncan (*Pro hac vice*)
                                                                    Karma B. Brown (*Pro hac vice*)
                                                                    HUNTON ANDREWS KURTH LLP

2200 Pennsylvania Avenue, NW
Washington, DC  20037
(202) 955-1500
dduncan@HuntonAK.com
kbbrown@HuntonAK.com

*/s/ Brianne C. McClafferty*
William W. Mercer
Brianne McClafferty
HOLLAND & HART LLP
401 North 31st Street, Suite 1500
Billings, MT  59101
(406) 252-2166
wwmercer@hollandhart.com
bcmcclafferty@hollandhart.com

*Counsel for Defendant-Intervenors American Gas Association, American Petroleum Institute, Association of Oil Pipe Lines, Interstate Natural Gas Association of America, and National Rural Electric Cooperative Association*

14

## Certificate of Compliance

I certify that this NWP 12 Coalition's Reply in Support of Federal Defendants' Motion for Partial Stay Pending Appeal complies with the requirements of Local Rule 7.1(d)(2)(B) and contains 3,112 words, excluding the parts exempted by Local Rule 7.1(d)(2)(E), according to the word count calculated by Microsoft Word 2016.

*/s/ Karma B. Brown*

## Certificate of Service

I hereby certify that on May 8, 2020, I filed the above pleading with the Court's electronic case management system, which caused notice to be sent to counsel for all parties.

/s/ Karma B. Brown